IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES SPRINGER,

    Plaintiff,

v.                                                                         No. 1:23-cv-00499-MIS-JMR

SEVENTH JUDICIAL DISTRICT COURT
MERCEDES MURPHY,
SHANNON MURDOCK-POFF,
JASON JONES, and SUSAN ROSSIGNOL,

    Defendants.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF FOR CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C.A. § VIOLATION S OF RIGHTS PROTECTED BY THE NEW MEXICO CIVIL RIGHTS ACT; EMERGENCY REQUEST FOR A TEMPORARY RESTRAINING ORDER; REQUEST FOR PRELIMINARY INJUNCTION, <u>PERMANENT INJUNCTIVE RELIEF AND DAMAGES</u>**

    COMES NOW Defendants Seventh Judicial District Court, Mercedes Murphy, Shannon-Murdock-Poff, Jason Jones, and Suan Rossignol (collectively hereinafter "Defendants"), by and through their counsel of record, Garcia Law Group, LLC (Bryan C. Garcia, Rodney L. Gabaldon, and Jade Delfin), and hereby submit their response to Plaintiff's Complaint for Declaratory Judgment and Injunctive Relief for Civil Rights Violations Under 42 U.S.C.A. § Violation s of Rights Protected by the New Mexico Civil Rights Act; Emergency Request for a Temporary Restraining Order; Request for Preliminary Injunction, Permanent Injunctive Relief and Damages (hereinafter "Complaint"):

**INTRODUCTION**

    James Springer (hereinafter "Plaintiff") seeks an injunction barring Defendants from limiting Plaintiff's presence in the Seventh Judicial District Courthouses to his own matters or

specific court business, and with an law enforcement escort. Plaintiff's entire case is based on the premise that Defendants are violating his First Amendment and due process rights. Plaintiff argues from a faulty premise. First, Plaintiff does not meet the legal requirements for an injunction. Second, the restrictions on Plaintiff's access to the court are content neutral and reasonable in light of the disruption his refusal to follow court rules has caused to official court business. Finally, Plaintiff's acts10 of spoliation have negatively impacted Defendants' ability to respond to his Complaint. Defendant reserves argument concerning immunity and the Pullman doctrine for future motions practice. Defendant respectfully requests that this Court deny Plaintiff's Complaint.

## FACTUAL BACKGROUND

On or about January 27, 2023, Plaintiff entered a courtroom at the Seventh Judicial District Court to observe a hearing before Hearing Officer Gordon Bennett (hearinafter "H.O. Bennett"). See James Freeman, *Sheriff And Deputies Stand Up Against Bad New Mexico Judiciary - Gordon Bennett,* YouTube (February 20, 2023)[1], which is attached hereto as **Exhibit A.** During this time, the State of New Mexico had a mask mandate in effect for its courtrooms. However, when HO Bennett asked Plaintiff to put on a mask, Plaintiff refused. *Id*. At 4:04-5:20. H.O Bennett went off the record and left the courtroom to ask for assistance from law enforcement. *Id* at 5:20-6:45.

Upon H.O. Bennett's return to the courtroom, he asked Plaintiff to identity himself. Below is an excerpt of the their conversation.

H.O. Bennett: What's your name?

Plaintiff: I didn't give it, I'm sorry.

H.O. Bennett: [inaudible]

---

[1] https://www.youtube.com/watch?v=KZ-EhXuOZNM

Plaintiff: Just trying to specate a public hearing, nothing more, nothing less.

H.O. Bennett: I can appreciate that you're here to specate and I can appreciate that this is a public hearing, but you're not going to violate the rules.

Plaintiff: Which rules are those?

H.O. Bennett: Put a mask on.

Plaintiff: Oh, you want me to put a mask on. Tell you what, if you threaten me with arrest, I'll just leave.

H.O. Bennett: I'm not threatening anything. I'm just telling you that if you do not abide by the rules of my courtroom, you will leave. If you choose not to leave of your own accord, you will be escorted.

Plaintiff: Would I be arrested or charged with anything?

H.O. Bennett: Well, if you continue this, I may charge you with contempt.

Plaintiff: Okay, so there's a threat of arrest then if I don't do what you say right now.

H.O. Bennett: Would you happen to have your phone out now recording this?

Plaintiff: I mean, if there's a threat of arrest, I'll just leave.

H.O. Bennett: Are you recording this conversation?

Plaintiff: The Court is. There's a camera there.

H.O. Bennett: You're right, The Court is. By statue and rule, I am allowed, I am required to record. Well, by statute.

Plaintiff: Tell you what, son. I'll just get a bigger team and we'll come back, sweetheart. All right. We'll be back.

*Id.* at 6:45-8:27. See also James Freeman, Caught In A Bald Faced Lie By A Camera In His Own Court Room - Dishonorable Gordon Bennett, YouTube (February 16, 2023)[2], which is attached hereto as **Exhibit B**.

Sometime thereafter, Plaintiff asked the Torrance County Sheriff's Office (hereinafter "TCSO") whether they would be enforcing the mask mandate. The sheriff stated, ""We're not going to enforce a mask mandate in the courtroom or anywhere else, okay." *Id.* at 0:01-0:15.

Court staff were harassed and threatened after this incident. On February 28, 2023, the Seventh Judicial Court entered an Administrative Order (hereinafter "Order") in the interest of the safety and security of its Judges, Special Commissioners, Hearing Officers, and other Court personnel. See generally Administrative Order entered February 28, 2023, a copy of which is attached to Plaintiff's Complaint as Exhibit 1, and is incorporated herein by reference. The Order further explains that Plaintiff is an obstinate visitor, is banned from the Torrance County District Court unless appearing for a hearing or having specific Court business, and must be escorted by the Torrance County Sheriff's Office while in the building. *Id.* When Plaintiff sought to harass court staff at the courthouses in the Seventh Judicial District, the Court amended the Order to include the courthouses in Torrance County, Catron County, Soccoro County, and Sierra County. See generally Amended Administrative Order entered March 23, 2023, a copy of which is attached to Plaintiff's Complaint as Exhibit 3, and is incorporated herein by reference.

Plaintiff refused again to comply with Court orders. When a Torrance County court clerk asked Plaintiff where his law enforcement was during one of his visits, Plaintiff responded with hostility.

---

[2] https://www.youtube.com/watch?v=uuUvl-P2WLo&list=PLEHv5tmOgVtWcbMJjIl2psTeZSGZsMRs0

Clerk: Where is your escort?

Plaintiff: My escort?

Clerk: Yes. By Court Order, you are required to be escorted by law enforcement.

Plaintiff: An escort?

Clerk: Yes, sir.

Plaintiff: I don't know if you're aware but prostitution is illegal in New Mexico. I don't know if you're trying to solicit me right now but I don't appreciate it. As a matter of fact, I think I'll head over to the Sheriff's Department right now and let them know that you're trying to solicit me. Is that what you're doing? Are you trying to be my escort?

<u>See</u> James Freeman, Court Clerk Tries to Force an Escort on Me, YouTube (May 28, 2023)[3], which is attached hereto as **Exhibit C**.

Due to Plaintiff's continued refusal to follow Court orders, the Seventh Judicial District Court sent Plaintiff a Notice of Order to Show Cause Hearing, filed June 7, 2023. On June 9, 2023, Plaintiff filed his Complaint for Declaratory Judgment and Injunctive Relief for Civil Rights Violations Under 42 U.S.C.A. § Violation s of Rights Protected by the New Mexico Civil Rights Act; Emergency Request for a Temporary Restraining Order; Request for Preliminary Injunction, Permanent Injunctive Relief and Damages (hereinafter "Complaint"). [Doc. 1]. Defendants Seventh Judicial District Court, Mercedes Murphy (hereinafter "Judge Murphy"), and Shannon Murdock-Poff (hereinafter "Judge Murdock-Poff") recused themselves from the state court proceedings and the matter is pending in the Thirteenth Judicial District Court.

---

[3] https://www.youtube.com/shorts/HAh-9kQpq6A

On August 29, 2023, counsel for Defendants served Plaintiff's counsel a preservation letter asking Plaintiff to preserve all evidence related to this matter. A copy of the Preservation Letter is attached hereto as **Exhibit D.** The following day, Plaintiff admitted that he deleted some evidence:

> They also sent something to my attorneys saying that they want me to preserve all of my journalistic materials for them so that they can come and take those material from me. They've said that they need me to preserve all my journalist materials because they intend to come and try to bully me and take those journalist materials from me, including any conversations, private conversations, that I've had with confidential informants because they know that there are people not just within their police departments and their legislature but within the judicial system in New Mexico that are giving me information. They know it. *It doesn't matter because I delete it all* as soon as it's read but they know and they're trying to bully anybody who would be giving me information.

See James Freeman, I'm suing the Court for rights violations, but they just gave me the offer of a lifetime, YouTube (August 30, 2023)[4], which is attached hereto as **Exhibit E**. (Emphasis added).

## STANDARD OF REVIEW

Because "a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991). As such, the party requesting a preliminary injunction under Fed. R. Civ. P. 65 must establish: "(1) he . . . will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits.

---

[4] https://www.youtube.com/watch?v=Jn1lb58AFdA

*Schrier v. Univ. of Co.*, 427 F.3d 1253, 1258 (10th Cir. 2005). In relation to the case at hand, it is clear that none of these factors are met.

## LEGAL ARGUMENT

**I.     PLAINTIFFS' PETITION, AS A MATTER OF LAW, FAILS TO MEET THE NECESSARY REQUIREMENTS OF A PRELIMINARY INJUNCTION**

***a.     Plaintiffs' claim provides no suggestion that Plaintiffs will suffer irreparable injury unless the injunction is granted,***

"The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). Preliminary injunctive relief does not remedy "past harm but . . . protect[s] plaintiffs from irreparable injury that will surely result" without the injunction. *Schrier*, 427 F.3d at 1267.

Plaintiff has not identified the irreparable harm he faces. Instead, he points to broadly to the First Amendment, as if alleging constitutional violations is sufficient grounds for an injunction. In fact, an "[i]njunction is not matter of right, but it may be granted only in sound discretion of court when remedy at law is not adequate."  *State ex rel. State Tax Commission v. First Judicial Dist. Court*, 1961, 69 N.M. 295, 366 P.2d 143. Here, Plaintiff exhibits no concern for the disruption his refusal to follow court rules and orders has caused. Further, the Court's definition of "irreparable injury" clearly does not coincide with the facts of this case. In fact, Plaintiffs petition lacks, in its entirety, any claim suggesting that an "irreparable harm" has occurred or is likely to occur.

***b. Plaintiffs' claims provide no suggestion the threatened injury outweighs any damage the injunction might cause the Defendants.***

Allowing the Plaintiff to disregard court rules and disrupt court proceedings would create much more harm to the Defendants than to Plaintiff. Indeed, Plaintiff has made it clear that he will not follow court rules. <u>See generally</u>, Exhibits A, B, C, and E. Further, Defendants face the complicity of the Torrance County Sheriff's Office and Estancia Police Department in their refusal to enforce court rules and orders as it pertains to Plaintiff. Without a means to enforce the court rules and order, and given Plaintiff's disruption, Defendants would be highly prejudiced if Plaintiff's injunction were granted. Further, such an injunction would permit Plaintiff to harass court staff and disrupt court business with impunity.

**c.    *Issuance of the injunction will be adverse to the public's interest***

It is widely accepted that an individual has the right to bring a lawsuit against an opposing party who he believes has done him wrong. If the Court grants an injunction in this matter it will improperly suggest that any individual with a cell phone and/or camera who cannot bring it into the courthouse has automatically suffered "irreparable injury." Such a standard would obviously be adverse to the public's interest and severely hinder the Courts ability to administer justice. The effect of federal court intervention in state courthouse conduct would be to impose administrative oversight burdens on state courts, and curtail severely curtail the state courts' ability to ensure the safety and well-being of its staff and the public visiting the courthouse.

**d.    *Plaintiffs' claims fail to provide a substantial likelihood that plaintiff will prevail on the merits.***

The facts of this case clearly do not justify the issuance of a restraining order. Plaintiff has contemptuously disregarded the court rules and orders, harassed court staff, and disrupted court business. Further, Plaintiff has deleted evidence relevant to this matter. It is evident that Plaintiff

has little to no regard for the judicial system, whether it be others' cases or his own. As such, the issuance of a restraining order would be a waste of judicial resources and does not warrant an injunction for Plaintiff.

## II.     RESTRICTION OF ACCESS WAS REASONABLE

### a.     *Plaintiff refused and continues to refuse to comply with Court rules of conduct.*

Plaintiff contends that Defendants' Order is unconstitutional because it impermissibly abridges the First Amendment. However, Plaintiff fails to appreciate that while court hearings are open to the public, the court has rules. Specifically, the New Mexico Courts has promulgated the following rules as relevant to this matter:

**Video or Audio Recording Devices**

No photographic or audio-visual equipment of any type including cameras, video or audio recorders or players are allowed *without prior court approval*.

**Cell Phones**

*No person other than members of the judiciary, attorneys, peace officers, and Court staff shall be allowed to carry a cell phone into the courtroom.*

*All cell phones must be turned off before entering a courtroom.*

Any cell phone that rings or makes any audible sounds in a courtroom may be confiscated and held by security, a bailiff or any member of a District Judge's staff. The cell phone will be returned upon payment of $25.00 to the District Court Clerk. A district Judge may impose additional sanctions for repeated offenses by the same person, including, but not limited to, increasingly severe monetary penalties.

**Disruptive Behavior**

*Disruptive behavior will not be tolerated*. Security staff may remove offenders from the building and judges may hold violators in contempt of court.

New Mexico Courts, *Courtroom Conduct, Security, and Attire*, https://www.nmcourts.gov/ccsa/ (last visited September 5, 2023). (Emphasis added).

In addition to the rules for courtroom conduct listed above, during the January 27, 2023 incident, the State of New Mexico had a mask mandate for its courtrooms in for. See Supreme Court of the State of New Mexico, *In the Matter of the Amendment of the New Mexico Judiciary Public Health Emergency Protocols for the Safe and Effective Administration of the New Mexico Judiciary During the COVID-19 Public Health Emergency*, Order No. 21-8500-015, available at https://www.nmcourts.gov/wp-content/uploads/2021/06/Order-No_-21-8500-015-and-Amended-PHE-Protocols-29-Jun 21.pdf#:~:text=NEW%20MEXICO%20JUDICIARY%20PUBLIC%20HEALTH%20EMERGENCY%20PROTOCOLS%20EMERGENCY,Face%20Mask%20Requirements.%20On-Site%20Employees%20and%20Telework%20Procedures. This mandate remained in force until March 31, 2023. See Supreme Court of the State of New Mexico, *In the Matter of Rescinding Order No. 22-8500-037 and the New Mexico Judiciary's Emergency Court Protocols Nos. 1, 2, and 3*, Order No. 23-8500-010, available at https://firstdistrictcourt.nmcourts.gov/wp-content/uploads/sites/4/2023/04/Order-No.-23-8500-010-In-the-Matter-of-Rescinding-Order-No.-22-8500-037-and-the-New-Mexico-Judiciarys-Emergency-Protocols-Nos.-12-and-3-3.31.23.pdf.

Nonetheless, Plaintiff refused to comply with the court rules or the mask mandate. Plaintiff did not get court approval for video or audio recording. Plaintiff brought a cell phone into the courtroom and did not turn it off. Plaintiff was disruptive during a court proceeding. Plaintiff did not wear mask into the courtroom and, when asked to do so, refused. See generally, Exhibits A, B, C, and E. Even after leaving the courtroom on January 27, 2023, Plaintiff sought to return to the

Seventh Judicial District courts without following any of the above stated rules, and documented his noncompliance on his YouTube channel. In light of such persistent disregard for court conduct, Defendants' Order was a reasonable restriction to ensure the safety of court staff as well as the administration of justice.

B.   *The courthouse is not a traditional public forum.*

In examining restrictions on these government institutions, the Supreme Court has held that the government may exclude peaceful assembly or access which interferes with the function of the institution. See *Adderley v. Florida*, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966); *Greer v. Spock*, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976); *U.S. Postal Service v. Greenburgh Civic Assns.*, 453 U.S. 114, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981). In examining such restrictions the Supreme Court has used an analysis based on the place in question: Is it a traditional public forum? Under this lens, the Supreme Court found that restriction of access was reasonable for the jail (*Adderley*), the military base (*Greer*), and the letter boxes (*Greenburgh*) because they were not public forums.

The fact that the public is generally allowed access does not transform a place owned or operated by the government into a public forum. The test here is not whether the courthouse is appropriate for video recordings, but whether the character of the place is appropriate for the expression of views and ideas generally. The jail grounds in *Adderley* may have been an appropriate place to assemble to protest the arrest of students, racial segregation, and segregation at the jail, but that did not make it a public forum. Conversely, streets and parks are traditional public forums. See *Hague v. C.I.O.*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).

The Seventh Judicial District courthouse, is more similar to the jail considered in *Adderley*, the military base considered in *Greer*, and the letter boxes considered in *Greenburgh*. In examining

restrictions on these government institutions, the Supreme Court has held that the government may exclude peaceful assembly or access which interferes with the function of the institution. In this context, the restriction need only be reasonable and content-neutral. *Adderley; Greer; Greenburgh*.

*Adderley* held that the government may, in non-public forum situations, reasonably limit access to government places. *Adderley v. Florida*, 385 U.S. 39, 48, 87 S. Ct. 242, 247 (1966) ("The United States Constitution does not forbid a State to control the use of its own property for its own lawful nondiscriminatory purpose.") Here, the Seventh Judicial District Court's restriction, an Order limiting Plaintiff's cases to the courthouses for his own hearings or official court business, and with a law enforcement escort, is reasonable. "The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Id*. at 47. The restriction is content-neutral, as its purpose is to ensure the compliance with rules for court conduct.. Even now, Plaitiff refuses to follow court rules of conduct. See Exhibit E.

Further, in imposing the restriction, the Seventh Judicial District was ensuring the safety of its court staff, who have been needlessly harassed. The Torrance County District Court had to go on lockdown due the threats to its staff. Defendants were and are protecting its courtrooms, staff, and litigants. Nonetheless, Plaintiff makes light of the seriousness of his conduct and persists in his harassment. Accordingly, the restrictions on Plaintiff are reasonable.

**c.      *Plaintiff is not a member of the press, and even if he were, the First Amendment does not grant him a special right of access to gather information, above and beyond that of the public.***

Plaintiff asserts that he is a member of the press and therefore the Order offends the First Amendment. He argues that his right to gather news was impermissibly abridged. Defendants note that Plaintiff has not held himself out as member of the press to court staff nor followed the

procedures promulgated by the New Mexico Courts for the press. Notably, at the January 27, 2023 hearing, Plaintiff snuck in his cell phone to video record without court approval and refused to identify himself when asked by an officer of the court.

There can be no doubt that freedom of the press is extremely important and necessary in our democratic form of government. Freedom of the press necessarily involves two things, acquisition of information and dissemination of information. See Note, 87 The Rights of The Public And the Press To Gather Information, Harv.L.Rev. 1505 (1974). Freedom of the press is a very broad concept. Here is a narrow issue: the right of access by the press or public to an area controlled by the government for an indeterminate purpose.

The Supreme Court has rejected the argument that the First Amendment requires that members of the press be given special access to areas, controlled by the government. *In Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), members of the press sought to strike down, on First Amendment grounds, a California Department of Corrections Manual provision which provided that press and other media interviews with specific individual inmates will not be permitted. In holding that the First Amendment does not require that members of the press have a special right of access to gather information, above and beyond that of the public generally, the court examined the governmental interest behind the regulation and the right of access allowed to the prison. The court noted that the regulation was not part of an attempt to conceal conditions in the prison or to frustrate the ability of the press to report those conditions. As above discussed, the Defendants' restriction is aimed at protecting its operation, staff, and litigants, not at concealing the judicial system.

### III.    PLAINTIFF'S SPOLICATION OF EVIDENCE MALICIOUSLY IMPEDES DEFENANTS' ABILITY TO DEFEND AND LITIGATE THIS MATTER.

While the duty to preserve evidence is often triggered by the filing of a lawsuit, this duty may arise earlier if a party knows or should have known that the material may be relevant to future litigation. *OTO Software, Inc.*, 2010 U.S. Dist. LEXIS 101516, 2010 WL 3842434, at *7 (*citing Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (the obligation to preserve evidence arises when a party should have known) *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000)). In determining whether a party's duty to preserve has been triggered, courts evaluate facts such as the likelihood that a certain kind of incident will result in litigation. Ultimately, a party's duty to preserve arises when it has notice that the documents might be relevant to a reasonably-defined future litigation.

The court's decision as to when a party was on notice must be guided by the particular facts of each case. *Cache La Poudre*, 244 F.R.D. at 621. Once it is established that a party's duty to preserve has been triggered, the inquiry into whether a party has honored its obligation to preserve evidence turns on reasonableness, which must be considered in the context of whether "what was done or not done was *proportional* to that case and consistent with clearly established applicable standards." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010) (emphasis in original).

Here, Plaintiff had sufficient notice of potential litigation because he is the party who initiated this lawsuit. Therefore, he should have ensured the maintenance of his raw videos, edited videos, notes, and other potential evidence. Defendants listed evidence Plaintiff should preserve. However, Plaintiff publicly admits to spoliation the day after his counsel is served a preservation letter. See **Exhibit E at** 14:46. (Emphasis added). The near-immediate timing of Plaintiff's spoliation conduct demonstrates intentionality and further underscores Plaintiff's blatant disregard

for the judicial system. It is difficult for Defendants to adequately gather information and defend this case when Plaintiff engages in such egregious behavior.

## AFFIRMATIVE DEFENSES TO COMPLAINT

### FIRST AFFIRMATIVE DEFENSE

None of the actions described in Plaintiff's Complaint constitute a violation Plaintiff's statutory rights by Defendants.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff has alleged a number of causes of action which fail to state a claim for which relief can be granted.

### THIRD AFFIRMATIVE DEFENSE

Defendants' actions in this case were objectively reasonable under the circumstances and did not violate any of Plaintiff's clearly established constitutional rights, thereby entitling Defendants to qualified immunity.

### FOURTH AFFIRMATIVE DEFENSE

Defendants' actions in this case were in their capacity as judges, thereby entitling them to judicial immunity.

### FIFTH AFFIRMATIVE DEFENSE

Defendants' actions in this case fall within the protection of the 11th Amendment.

### SIXTH AFFIRMATIVE DEFENSE

This Court lacks jurisdiction over this matter.

## SEVENTH AFFIRMATIVE DEFENSE

To the extent that any provision of the New Mexico Tort Claims Act is changed by operation of law, any such changes are not retroactively applicable hereto.

## EIGHTH AFFIRMATIVE DEFENSE

Claims against Defendants are barred by the exclusive remedies available pursuant to the New Mexico Tort Claims Act.

## NINTH AFFIRMATIVE DEFENSE

To the extent applicable, Plaintiff's claims against Defendants are barred in whole or in part by the doctrines of estoppel, laches, waiver and/or unclean hands.

## TENTH AFFIRMATIVE DEFENSE

Defendants are entitled to all protections, rights, benefits, and damages caps conveyed by the New Mexico Tort Claims Act, NMSA 1978 § 41-4-1, *et seq* as set forth in the Act and case law construing same.

## RESERVATION OF RIGHTS

The affirmative defenses set forth herein are preliminary and pled without the benefit of all the facts underlying and pertaining to the Plaintiff's claims. Defendants' Affirmative Defenses may be withdrawn as a result of discovery in the case. Defendants reserve the right to amend their Answer to Plaintiff's Complaint, and to raise such further or additional defenses or counterclaims as may be available upon facts to be developed in discovery and/or applicable substantive law.

## CONCLUSION

**WHEREFORE**, Defendants Seventh Judicial District Court, Mercedes Murphy, Shannon-Murdock-Poff, Jason Jones, and Suan Rossignol request that this Court deny Plaintiff's Complaint for Declaratory Judgment and Injunctive Relief for Civil Rights Violations Under 42 U.S.C.A. § Violation s of Rights Protected by the New Mexico Civil Rights Act; Emergency Request for a Temporary Restraining Order; Request for Preliminary Injunction, Permanent Injunctive Relief and Damages, award Defendants their costs and fees associated with responding to Plaintiffs' Complaint, and grant all other relief this Court deems just and proper.

Respectfully submitted,

**GARCIA LAW GROUP, LLC**

*/s/ Jade Delfin*
Bryan C. Garcia
Rodney L. Gabaldon
Jade Delfin
*Attorneys for Defendants*
6739 Academy Road NE, Suite 200
Albuquerque, NM 87109
(505) 629-1576 / (505) 652-1337 (fax)
bgarcia@garcialawgroupllc.com
rgabaldon@garcialawgroupllc.com
jdelfin@garcialawgroupllc.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CMECF on this the 5th day of September, 2023, which caused service to all counsel of record.

*/s/ Jade Delfin*
Jade Delfin