## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| TAYVIN GALANAKIS,<br><br>          Plaintiff,<br><br>     vs.<br><br>CITY OF NEWTON, IOWA; and ROB BURDESS, NATHAN WINTERS, and CHRISTOPHER WING, individually and in their official capacities with the Newton Police Department,<br><br>          Defendants.<br><br>———————————————<br><br>NATHAN WINTERS and CHRISTOPHER WING,<br><br>          Counterclaim Plaintiffs,<br><br>     vs.<br><br>TAYVIN GALANAKIS,<br><br>          Counterclaim Defendant. | 4:23-cv-00044-SHL-SBJ<br><br><br><br>**ORDER GRANTING MOTION TO DISMISS AMENDED COUNTERCLAIMS III & IV** |

Defendants Nathan Winters and Christopher Wing, both police officers with the City of Newton, Iowa, allege that Plaintiff Tayvin Galanakis filed a false complaint against them when he complained to the mayor and a police lieutenant about how he was treated during a traffic stop. The Court concludes as a matter of law that Winters and Wing have not pled a plausible claim for relief under Iowa Code § 80F.1(13). The Court therefore GRANTS Galanakis's motion to dismiss Counterclaims III and IV.

## I.    BACKGROUND.

Winters and Wing are police officers with the Newton Police Department. (ECF 1-1, ¶¶ 4–5.) Galanakis alleges that they unlawfully arrested him without reasonable suspicion or probable cause in the early morning hours of August 28, 2022. (Id., ¶¶ 9–54.) Galanakis brings state and federal law claims against Winters and Wing, as well as claims against the City of Newton and Chief of Police. (Id., ¶¶ 55–92, 93–116.)

Winters and Wing filed counterclaims against Galanakis, accusing him of publishing "written and oral defamatory statements, making false complaints, and intentionally inflicting emotional distress" upon them. (ECF 3, ¶ 9.) They alleged that the defamatory statements were made on YouTube, Facebook, GoFundMe, and TikTok. (Id., ¶ 12.) Winters and Wing brought claims for defamation (Counts I and II); violations of Iowa Code § 80F.1(13) (Counts III and IV); intentional infliction of emotional distress (Counts V and VI); and invasion of privacy (Counts VII and VIII). Galanakis filed a motion to dismiss all the counterclaims. (ECF 4.)

In an Order dated May 8, 2023, the Court granted in part and denied in part Galanakis's motion to dismiss. *See Galanakis v. City of Newton, Iowa*, No. 4:23-cv-00044-SHL-SBJ, 2023 WL 3479167 (S.D. Iowa May 8, 2023). As relevant here, the Court concluded that Winters and Wing did not state plausible claims under Iowa Code § 80F.1(13) because they did not allege that Galanakis filed a formal complaint with the Newton Police Department. *Id.* at *12–13. The Court therefore dismissed Counterclaims III and IV without prejudice. *Id.* at *13.

On June 1, 2023, Winters and Wing filed an Amended Answer, Affirmative Defenses, Counterclaims and Jury Demand. (ECF 23.) In amended Counterclaims III and IV, Winters and Wing (respectively) allege that Galanakis made formal and false complaints against them in violation of section 80F.1(13). (Id., ¶¶ 52–70.) They include two exhibits in support of their claims. Exhibit E is an email from Galanakis to Newton Mayor Mike Hansen stating: "Hello Mayor, good afternoon. I was told to get in touch with you. I am the victim of officer Winters and Wing's harassment. I'm not sure why I was suggested to talk to you but if you'd like to speak to me I'll be able to either tomorrow or Friday. Just got out of surgery this morning. Have a great day sir!", (ECF 23-4.) Exhibit F is an email from Newton Police Department Lieutenant Ronald Cook to Rob Burdess, Newton Chief of Police, with the subject line "Citizen complaint." (ECF 23-5.) The email informs Chief Burdess that Galanakis came to the police department "to make a complaint against Officer Winters." (Id.) The email then provides a lengthy summary of Galanakis's allegations against Winters, including specific things Winters allegedly said or did. (Id.) Exhibit F also provides the time, date, and location of Galanakis's encounter with Winters and states that Cook gave Galanakis a formal complaint form. (Id.)

Galanakis moves to dismiss amended Counterclaims III and IV for again failing to state a claim. (ECF 24.) He argues that Exhibits E and F are not "complaints" for purposes of section 80F.1(13) because they are not "formal," are not alleged to have triggered an investigation, and

were not determined to contain "false" claims. (ECF 24-1.) Winters and Wing resist, arguing that both Exhibits are "complaints" under the statute. (ECF 26-1.)

## II.     LEGAL STANDARDS.

When ruling on a motion to dismiss, the Court must "accept the well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Meardon v. Register*, 994 F.3d 927, 934 (8th Cir. 2021). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Schriener v. Quicken Loans, Inc*., 774 F.3d 442, 444 (8th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court may draw on its "judicial experience and common sense" in evaluating plausibility. *Id*. at 679. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## III.    LEGAL ANALYSIS.

As detailed in the Court's prior ruling, Iowa has codified a "Peace Officer, Public Safety, and Emergency Personnel Bill of Rights" at Iowa Code chapter 80F. *See Galanakis*, 2023 WL 3479167, at *12. Among its protections, section 80F.1(13) states: "An officer shall have the right to bring a cause of action against any person, group of persons, organization, or corporation for damages arising from the filing of a false complaint against the officer or any other violation of this chapter including but not limited to actual damages, court costs, and reasonable attorney fees." The statute defines a "complaint" as "a formal written allegation signed by the complainant or a signed written statement by an officer receiving an oral complaint stating the complainant's allegation." Iowa Code § 80F.1(1)(b).

In their original Counterclaims III and IV, Winters and Wing did not allege that Galanakis filed a formal complaint against them with the Newton Police Department or any other agency. Rather, as alleged, their claims under section 80F.1(13) revolved around the same social media statements at issue in their defamation claims. (ECF 3, ¶¶ 56–57, 64–65.) The Court held that social media statements do not constitute a "complaint" under the statute, which "on its face, makes clear that a 'formal written allegation' is required, not a social media post or other informal statement." *Galanakis*, 2023 WL 3479167, at *12. The Court instead explained that a "'complaint'

refers to a submission *to the employing agency* that *triggers an internal investigation* into the officer's conduct." *Id.* (emphasis in original). Interpreting section 80F.1 as a whole, "there is no canon of construction that would allow the word 'complaint' to be interpreted as referring to anything other than a formal complaint made directly to the employing agency regarding the officer's performance." *Id.*

In their amended pleading, Winters and Wing assert that the emails from Galanakis to the Mayor (Exhibit E) and Lieutenant Cook to Chief Burdess (Exhibit F), are "complaints" for purposes of section 80F.1(13) and plausibly allege actionable false statements. For reasons explained below, the Court concludes that Exhibit F is plausibly a "complaint," but Exhibit E is not. The Court further concludes that neither Exhibit E nor Exhibit F is "false" as required to maintain a cause of action under section 80F.1(13).

A.   *Exhibit F Can Be Plausibly Interpreted as a "Complaint" for Purposes of Iowa Code § 80F.1(13), but Exhibit E Cannot.*

Galanakis argues that his email to the Mayor (Exhibit E) is not a "complaint" for purposes of section 80F.1(13) because it was not a "'formal written allegation' . . . to the employing agency that trigger[ed] an internal investigation into the officer's conduct." *Galanakis*, 2023 WL 3479167, at *12 (emphasis removed). Galanakis argues, among other things, that: (i) the Mayor is not the "employing agency" for the officers; and (ii) Winters and Wing have not alleged that there was an internal investigation into their conduct. The Court agrees with Galanakis that his informal email to the Mayor is not a "complaint" for purposes of the statute, although it disagrees somewhat with his reasoning.

In its earlier ruling, the Court explained that the proper interpretation of the word "complaint"—including, especially, the statutory requirement that there be a "formal written allegation"—must be considered in the larger context of section 80F.1, which is designed to give protections to law enforcement officers and other government officials when they are investigated for possible misconduct. *See Galanakis*, 2023 WL 3479167, at *12. With this context in mind, the Court concluded there must be a connection between the "complaint" and an internal investigation before a claim will arise under section 80F.1(13). *See id.* The Court did not mean, however, that a claim under section 80F.1(13) will arise only when an internal investigation actually occurs. Such a requirement would read the statute too narrowly, as there might be situations where someone makes a false complaint against a law enforcement officer that does not result in an internal investigation. The better phrasing is that a complaint for purposes of section 80F.1(13) must be

the type of formal submission that is reasonably designed or reasonably likely to trigger an internal investigation. The fact that Winters and Wing have not alleged an actual internal investigation therefore does not *per se* mean there was no "complaint" for purposes of section 80F.1(1)(b).

Similarly, the Court cannot conclude that a written report to the mayor of a city or town is *per se* not a "complaint" for purposes of the statute. Depending on the form and substance—and setting aside First Amendment concerns, which are significant in this context—it is conceivable that a communication to the mayor would qualify as a "formal written allegation" for purposes of section 80F.1(1)(b) and thus be actionable under section 80F.1(13). If, for example, a person completes a formal complaint form like the one used by the Newton Police Department but sends it to the Mayor rather than the Police Department, the "formal written allegation" requirement likely will be satisfied.

Notwithstanding these clarifications, the Court concludes that Galanakis's email to the Mayor (Exhibit E) does not constitute a "complaint" for purposes of section 80F.1(13). While the email is in writing, it is not a "formal written allegation" as required by the statute. *Id.* § 80F.1(1)(b). To the contrary, on its face, the message is decidedly *in*formal, lasting only a few lines and containing no details regarding the offending conduct, such as the date, location, or details of Galanakis's arrest. (ECF 23-4.) The email also contains no request for corrective action and, in fact, reflects Galanakis's ambivalence about whether there is even any need for him to talk to the Mayor. (Id. ("I'm not sure why I was suggested to talk to you but if you'd like to speak to me I'll be able to either tomorrow or Friday.").) On its face, there is no reason to interpret the email as a request for the Mayor to take action against Officer Winters or Officer Wing, much less to believe the Mayor had the authority to do so. Under Newton city ordinances, the Mayor is several steps removed from direct oversight of police officers, with the chain of command instead running through supervisors within the Police Department, followed by the Chief of Police and City Administrator. *See* Newton, Iowa Code of Ordinances[1] §§ 31.034(E), 33.03(A), 30.002. Galanakis's short, informal email to the Mayor therefore was not a "formal written allegation" that was reasonably designed or reasonably likely to "trigger[] an internal investigation into the officer's conduct." *Galanakis*, 2023 WL 3479167, at *12. It follows that it was not a "complaint" for purposes of section 80F.1(13).

---

[1] Available at: https://codelibrary.amlegal.com/codes/newton/latest/newton_ia/0-0-0-1 (last accessed August 31, 2023).

The analysis is different as to Exhibit F. Section 80F.1(1)(b) defines "complaint" to include "a signed written statement by an officer receiving an oral complaint stating the complainant's allegation." Lieutenant Cook's email literally contains the subject line "Citizen complaint" and goes into detail describing Galanakis's allegations against Officer Winters. (ECF 23-5.) Cook's email further states that "Galanakis came to the lobby of the police department and asked to speak with a supervisor because he wanted to make a complaint against Officer Winters." (Id.) Later, it reiterates that "Galanakis said he would like to file a formal complaint." (Id.) It also includes the case number from Galanakis's arrest and says Galanakis "would like to see some sort of discipline." (Id.) Cook's email therefore appears to qualify as a "signed written statement by an officer receiving an oral complaint stating the complainant's allegation." Iowa Code § 80F.1(1)(b).

Galanakis argues otherwise because, in his view, Cook's email is not "signed." Galanakis points out the disparity between Cook's email and the Newton Police Department complaint form, which includes a notary block and other formalities. Winters, by contrast, argues that an email is "signed" for purposes of Iowa law because Iowa Code § 4(39) expressly includes, in the definition of "signature," an "electronic signature" as defined in Uniform Electronic Transactions Act ("UETA"), which Iowa has adopted. *See* Iowa Code § 554D.103(8) ("'Electronic signature' means an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.").

As a threshold matter, the Court rejects Galanakis's suggestion that the definition of "electronic signature" in the UETA only applies to "transactions between parties each of which has agreed to conduct transactions by electronic means." (ECF 28, p. 3.) *See also* Iowa Code § 554D.106(2). In Iowa Code § 4.1(39), the Iowa Legislature broadly adopted the UETA's definition of "electronic signature" for all purposes in the Iowa Code (unless context dictates otherwise):

> **Written—in writing—signature.** The words 'written' and 'in writing' may include any mode of representing words or letters in general use, and include an electronic record as defined in section 554D.103. A signature, when required by law, must be made by the writing or markings of the person whose signature is required. 'Signature' includes an electronic signature as defined in section 554D.103.

The Iowa Supreme Court has given effect to this definition in analogous circumstances. *See State v. Fischer*, 785 N.W.2d 697, 704 (Iowa 2010) (analyzing the "written request" requirement in Iowa Code § 321J.6 according to the definition of "written" in Iowa Code § 4.1). Because there is no

suggestion that the Legislature did not intend this definition of "signature" to apply in the context of section 80F.1(13), the Court will apply it here.

With the threshold question out of the way, the Court agrees with Winters that Cook's signature block and "from" line plausibly constitute a "signature" for purposes of section 80F.1(1)(b). Courts interpreting the UETA have held "that a typed name in an e-mail, an e-mail header, or an e-mail signature block constitutes an electronic signature." *SN4, LLC v. Anchor Bank, fsb*, 848 N.W.2d 559, 568 (Minn. Ct. App. 2014) (citing *Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 296 (7th Cir. 2002)) (concluding that a typed name on an email satisfies the Illinois statute of frauds and the federal Electronic Signatures in Global and National Commerce Act); *Williamson v. Bank of New York Mellon*, 947 F.Supp.2d 704, 710–11 (N.D. Tex. 2013) (concluding that a manually typed name or an automatically generated signature block each qualify as an electronic signature); *Int'l Casings Grp., Inc. v. Premium Standard Farms*, *Inc.*, 358 F. Supp. 2d 863, 873 (W.D. Mo. 2005) (concluding that "a header with the name of the sender" satisfied signature requirement despite no typed name), *amended*, No. 04-1081-CV-W-NKL, 2005 WL 8159075 (W.D. Mo. Apr. 14, 2005)). These cases recognize that a court may conclude "by hitting the send button, [the sender] intended to presently authenticate and adopt the content of the e-mails as their own writing." *Int'l Casings Group, Inc.*, 358 F. Supp. 2d at 873. In other words, an email can satisfy the UETA's requirement for a signature to be "attached or logically associated with" the record at issue and an intent to sign the record.

Here, it at least plausible that Lieutenant Cook intended for his email signature block to serve as confirmation of the authenticity of his statement to his superior officer. The signature block contains Cook's name, title, and contact information, followed by the Newton Police Department seal. (ECF 23-5.) Chief Burdess presumably received the email, as illustrated by the fact that Defendants included Exhibit F as an attachment to their pleading. (Id.) Galanakis does not argue, and there is nothing to suggest, that this internal email between police department employees is not authentic or that Cook did not intend to adopt this writing as his own. The email therefore plausibly satisfies the requirements of a "complaint" for purposes of section 80F.1(13).

This conclusion is unchanged by the statement in the email that Cook "explained the complaint process to [Galanakis] and gave him a citizen complaint form to complete." (ECF 23-5.) Galanakis interprets this to mean Cook did not treat Galanakis's oral communication as the "complaint" itself. Under the plain language of section 80F.1(1)(b), this is not determinative. The

statute defines "complaint" to include "a signed written statement by an officer receiving an oral complaint stating the complainant's allegation." This is exactly what Cook's email is. The email therefore plausibly satisfies the requirements of a "complaint" for purposes of section 80F.1(13), regardless of whether Cook also provided Galanakis with a separate complaint form.

B. *There is No "False Complaint" Giving Rise to a Claim under Section 80F.1(13).*

The mere presence of a "complaint" is not enough to state a claim under section 80F.1(13); the complaint also must be "false." The Court concludes as a matter of law that neither Winters (Count III) nor Wing[2] (Count IV) have stated plausible claims to satisfy the falsity requirement.

There is no Iowa Supreme Court precedent addressing what it means for a complaint to be "false" for purposes of Chapter 80F, nor does the Iowa Code define the words "false" or "false complaint." Nonetheless, the Court is confident the Iowa Supreme Court would apply at least a defamation-type standard to the "false complaint" requirement in section 80F.1(13), as this is how other courts have interpreted similar statutes. For example, as part of its "Law Enforcement Officer Bill of Rights," Florida law permits a law enforcement officer to bring a civil action against an individual "for filing a complaint against the officer which the person knew was false when it was filed." Fla. Stat. § 112.532(3). The Eleventh Circuit has characterized the Florida statute as a libel law. *See Cooper v. Dillion*, 403 F.3d 1208, 1218 (11th Cir. 2005); *see also Mesa v. Rodriguez*, 357 So.2d 711, 713 (Fla. 1978) (interpreting section 112.532(3) to be coextensive with common law libel claims). Likewise, a Minnesota law that "criminalizes knowingly false reports of police misconduct, which are false statements of fact," has been construed by the Minnesota Supreme Court "to punish only 'defamation.'" *State v. Crawley*, 819 N.W. 2d 94, 107, 114 (Minn. 2012). Consistent with these cases, Winters and Wing appear to assume a defamation-type standard under section 80F.1(13), as they allege that Galanakis "knowingly publish[ed]" false statements "with actual malice." (*See, e.g.*, ECF 23, ¶¶ 56–58; 66–67.)

There are important First Amendment reasons for interpreting section 80F.1(13) in a manner consistent with defamation law. *See Granite Re, Inc. v. Nat'l Credit Union Admin. Bd.*, 956 F.3d 1041, 1048 (8th Cir. 2020) ("[A] court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems.") (quoting

---

[2] The only "complaint" identified by Wing in Count IV is Galanakis's email to Mayor Hansen (Exhibit E). For reasons explained in the preceding section, Exhibit E is not a "complaint" for purposes of section 80F.1(13), and thus Count IV fails regardless of whether the statements in the putative complaint are false. The Court nonetheless will analyze falsity in this section as to Wing because it provides an alternative basis for dismissing Count IV.

*Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018)). Although there are legitimate reasons for protecting law enforcement officers and other government officials from false claims of misconduct, a statute like section 80F.1(13) can have a chilling effect on constitutionally protected speech if interpreted too broadly. After all, the "First Amendment protects [a] significant amount of verbal criticism and challenge directed to police officers." *McDermott v. Royal*, 613 F.3d 1192, 1194 n.2 (8th Cir. 2010) (citing *City of Houston, Tex. v. Hill*, 482 U.S. 461 (1987)). Adopting a defamation-type standard helps protect the statute from possible constitutional challenges. *See Crawley*, 819 N.W.2d at 107, 113–14 (upholding similar Minnesota law against First Amendment challenge after concluding, *inter alia*, that it is limited to defamatory statements); *but see id.* at 115 (Stras, J., dissenting) (concluding the Minnesota law is "an unconstitutional content- and viewpoint-based restriction on core First Amendment speech").

"Generally speaking, defamation is the publication of false statements of fact which tend to harm an individual's reputation." *Bauer v. Brinkman*, 958 N.W.2d 194, 198 (Iowa 2021). To prove a defamation claim, "a plaintiff must show the defendant (1) published a statement that was (2) defamatory (3) of and concerning the plaintiff." *Taggart v. Drake Univ.*, 549 N.W.2d 796, 802 (Iowa 1996). "Publication is an essential element of defamation and simply means a communication of statements to one or more third persons." *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996). "Statements that cannot be reasonably interpreted as stating actual facts about a person are not actionable as defamation." *Bauer*, 958 N.W.2d at 198. "Thus, speech that is considered 'rhetorical hyperbole' and 'vigorous epithet' are nonactionable as defamation." *Id*. "Whether a statement is capable of a defamatory meaning is a question for the court." *Id*.

Courts applying Iowa law must consider four factors in deciding whether a statement is an actionable statement of fact or protected opinion. <u>One</u>: "whether the alleged defamatory statement 'has a precise core of meaning for which a consensus of understanding exists or, conversely, whether the statement is indefinite and ambiguous.'" *Yates v. W. Iowa Racing Ass'n*, 721 N.W.2d 762, 770 (Iowa 2006) (quoting *Ollman v. Evans*, 750 F.2d 970, 979 (D.C. Cir. 1984)). <u>Two</u>: "the degree to which the alleged defamatory statements are objectively capable of proof or disproof." *Id*. (cleaned up) (quoting *Ollman*, 750 F.2d at 981). <u>Three</u>: "the context in which the alleged defamatory statement occurs." *Id*. <u>Four</u>: "the broader social context into which the alleged defamatory statement fits." *Id*. (cleaned up) (quoting *Ollman*, 750 F.2d at 983). "Whether a listener understands a statement to be defamatory requires viewing the statements 'in the context of the

surrounding circumstances and within the entire communication.'" *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 47 (Iowa 2018) (quoting *Huegerich*, 547 N.W.2d at 221).

Neither Winters nor Wing has plausibly alleged that Galanakis's "complaints" are defamatory for purposes of section 80F.1(13). As to Winters, the only allegedly "false" complaint made by Galanakis is the statement in the email to Mayor Hansen about Galanakis being the "victim" of "harassment." (ECF 23-4.) For reasons explained in the Court's earlier Order, *see Galanakis*, 2023 WL 3479167, at *9, this is a non-actionable statement of opinion based on Galanakis's experience from having been pulled over and detained for an extended period but never charged with any crimes. *See also Andrew v. Hamilton Cnty. Pub. Hosp.*, 960 N.W.2d 481, 492 (Iowa 2021); *Yates*, 721 N.W.2d at 773 (statements of opinion based on undisputed facts are not capable of defamatory meaning). It would create serious First Amendment problems if a citizen like Galanakis was prohibited from expressing such concerns in the aftermath of an encounter with a police officer, particularly when his concerns are directed to an elected official like the Mayor.

The conclusion is the same as to Galanakis's oral complaint to Lieutenant Cook, which led to Cook's email (Exhibit F) to Chief Burdess. (ECF 23-5.) Winters characterizes Galanakis as having accused him of "false arrest," apparently based on the statement in Cook's email that Galanakis claimed to have been "arrested for no reason and brought to the police station in cuffs for no reason." (Id.) This is a non-actionable statement of opinion. *See Galanakis*, 2023 WL 3479167, at *11; *Bandstra*, 913 N.W.2d at 48–49. Moreover, while the remainder of Exhibit F includes many statements of fact, Winters does not appear to allege that any of them are false. To the contrary, he admits the accuracy of some of them in his pleadings, and others are supported by the police videos posted online by Galanakis,[3] which the Court has already concluded may be considered in ruling on a motion to dismiss. *See Galanakis*, 2023 WL 3479167, at *4. Specifically:

- "He explained that he had been pulled over near the water tower by Officer Winters for having his high beam headlights on." (ECF 1-1, ¶¶ 10–12; ECF 23, ¶¶ 10–12; Video 0:03–0:11 (showing water tower).)

- "He said Winters asked him how much he had to drink and he told Winters he had nothing to drink." (ECF 1-1, ¶¶ 19–21; ECF 23, ¶¶ 19–21.)

- "Galanakis told him he would blow right now and Winters responded that he did not want him to blow him." (ECF 1-1, ¶ 32; ECF 23, ¶ 32; Video 4:22–4:31; *see also Galanakis*, 2023 WL 3479167, at *8.)

---

[3] https://www.youtube.com/watch?v=so_bFYoIsow ("Video") (last accessed August 31, 2023)

- "They went to the patrol car and Winters told him he smelled alcohol." (ECF 1-1, ¶¶ 22–23; ECF 23, ¶¶ 22–23.)

- "Galanakis said he had not had anything to drink at all." (ECF 1-1, ¶¶ 20, 32; ECF 23, ¶¶ 20, 32.)

- "He said Winters had him stand in the pouring rain to do sobriety tests and during one test he was told to look up." (ECF 1-1, ¶¶ 24–30; ECF 23, ¶¶ 24–30; Video 6:32–14:39 (showing Galanakis perform sobriety test in the rain with his face looking up.)

- "This caused him to get water on his face, and Winters then asked him why his eye were watery." (Video 17:00–17:14.)

- "Galanakis said he blew zeros on the machine and then Winters read him his rights and told him he was on drugs." (ECF 1-1, ¶¶ 33, 36, 39; ECF 23, ¶¶ 33, 36, 39.)

- "He said Winters put him in handcuffs and brought him to the police department." (ECF 1-1, ¶¶ 39, 40; ECF 23, ¶¶ 39, 40.)

Because Winters does not allege these statements are untrue, they cannot be defamatory. *See Yates*, 721 N.W.2d at 768–69; *Delaney v. Int'l Union UAW Local No. 94 of John Deere Mfg. Co.*, 675 N.W.2d 832, 843 (Iowa 2004) ("Truth is a complete defense to defamation.").

## IV.   CONCLUSION.

The Court GRANTS Galanakis's Motion to Dismiss Amended Counterclaims (ECF 24). Counterclaim Counts III and IV are hereby DISMISSED. Furthermore, because Winters and Wing have now failed twice to state a plausible claim for relief under Iowa Code § 80F.1(13), and because there is nothing in the record to suggest they could state a plausible claim if given a third chance, the dismissal is WITH PREJUDICE.


**IT IS SO ORDERED.**


Dated: September 1, 2023

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE