# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

## CASE NO. 8:23-cv-01243

DIANA PERCIVAL,
               Plaintiff,

v.

SHERIFF CHAD CHRONISTER, *et al.*,
               Defendants.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Diana Percival, by and through undersigned counsel, files this joint response to the motions to dismiss filed by Defendants, Sheriff Chad Chronister (hereinafter "Sheriff," unless otherwise specified), Deputy Marcos Perera, and Deputy Jordan Brizendine (collectively, "Deputies," unless otherwise specified), pursuant to Fed. R. Civ. P. 12(b)(6) and Fla. R. Civ. P. 1.140(b)(6). (D.E. 22, 25). Plaintiff respectfully asks this Court to deny the motions, and as grounds states:

## I.    LEGAL STANDARD

Civil rights complaints are not subjected to a heightened standard. *See Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010) ("there is **no** 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints"); *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) (same); *Vessels v. Florida*, No. 3:09-CV-1168-J-25JRK, 2011 WL 13175935, at *1 (M.D. Fla. Apr. 4, 2011). "When qualified immunity is asserted in the context of a motion to dismiss,

we look to the pleadings to see if the plaintiff has successfully alleged the violation of a clearly established right." *O'Rourke v. Hayes*, 378 F.3d 1201, 1206 (11th Cir. 2004). But the Court must also be mindful that, "a motion to dismiss should concern only the complaint's legal sufficiency and is not a procedure for resolving factual questions or addressing the merits of the case." *U.S. Equal Employment Opportunity Comm'n v. Pediatric Health Care Care All., P.A.*, No. 8:20-CV-1428-T-60CPT, 2020 WL 6485003, at *1 (M.D. Fla. Nov. 4, 2020). As further discussed below, Plaintiff's Amended Complaint fulfills its obligations.

## II.   MEMORANDUM OF LAW

### A. The Sheriff is not Entitled to Immunity from Tort Liability Under Florida Statute § 768.28.

As a preliminary matter, the parties' contentions as to the immunity under section 768.28 is disingenuous. First, the Sheriff contends that he is immune from tort liability under section 768.28 for all the state claims lodged against him because a reasonable trier of fact could find that the Deputies' behavior was in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. *See* Sheriff Mot. at 9–10, 14–15, 18–19, 21–22. Then, in the same breath, the Deputies, by and through the same counsel, claim that the allegations "do not adequately allege that the Deputies acted with bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard for human rights, safety, or property." Deputies Mot. at 24. This is disingenuous, and the parties should not be permitted to argue in this manner.

2

Nonetheless, Plaintiff recognizes that either the agency is held liable under Florida law, or the employee, but not both. Under Federal Rule of Civil Procedure 8(e)(2), Plaintiff is authorized to plead alternate theories. *See Reyes v. City of Miami Beach*, 07-22680-CIV, 2007 WL 4199606, at *3 (S.D. Fla. Nov. 26, 2007). And that is precisely what Plaintiff has done in the Amended Complaint.

Like the plaintiff in *Reyes*, Count VIII (state battery); Count X (state trespass to land); Count XII (state false imprisonment/arrest); and Count XIV (state illegal search of home), which are counts against the Deputies individually, allege that the Deputies acted in bad faith, with willful and wanton conduct and with malicious purpose. *See* Am. Compl. at ¶¶ 173, 185, 200, 211. However, Count IX (state battery); Count XI (state trespass to land); Count XIII (state false imprisonment/arrest); and Count XV (state illegal search of home), which are counts against the Sheriff, make no mention of malice or bad faith. Accordingly, pleading alternate theories are permissible. *Reyes*, 2007 WL 4199606, at *3; *Jewell v. Town of Davie*, No. 20-CV-61172-RAR, 2020 WL 7399001, at *1 (S.D. Fla. Dec. 16, 2020).

Nonetheless, the Sheriff is not entitled to immunity under section 768.28 because the allegations of the Amended Complaint do not support its invocation. *See Norris v. Williams*, No. 3:16-CV-806-J-39PDB, 2017 WL 11404641, at *6 (M.D. Fla. Sept. 5, 2017) (denying defendants' motion to dismiss as to plaintiff's trespass to personal property claim and rejecting the defendants' argument that they were immune from tort liability under section 768.28(9)(a)); *Vega v. Enamorado*, 07-21454,

2007 WL 9702731, at *8 (S.D. Fla. Dec. 5, 2007) (county not entitled to dismissal under section 768.28(9)(a) of the claims against battery and false arrest/imprisonment); *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1124 (Fla. 4th DCA 1987) (holding that intentional torts such as false arrest and excessive force do not necessarily involve bad faith, malice, or wanton and willful disregard for human rights).

Further, the question as to whether the Deputies' actions rise to the level of bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard is a question left to the jury to decide. *Blount v. Sterling Healthcare Group, Inc.*, 934 F. Supp. 1365, 1373 (S.D. Fla. 1996) (question of employer's liability for employee's battery is a question of fact best decided by a jury and finding that allegations sufficiently stated a cause of action for respondent superior liability); *Reyes v. City of Miami Beach*, 07-22680-CIV, 2007 WL 4199606, at *4 (S.D. Fla. Nov. 26, 2007) (finding "accepting Plaintiffs' account as true and drawing all reasonable inferences in their favor, as the Court must in the context of a motion to dismiss, the Court cannot say that such allegations could *only* describe acts outside the scope of the Officers' employment or acts "committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property"); *Gualtieri v. Bogle*, 343 So. 3d 1267, 1273 (Fla. 2d DCA 2022) (finding that the trial court properly denied the motion to dismiss as to claim for battery against the sheriff where the allegations presented a factual question as to whether the deputy acted in "bad faith,

4

with malicious purpose, or in a willful and wanton manner" that should be decided as the case moves); *see, e.g.*, *Vasquez v. City of Miami Beach*, 895 F. Supp. 2d 1275, 1279 (S.D. Fla. 2012) (same).

Accordingly, the Sheriff is not entitled to immunity under 768.28(9)(a) for the state claims lodged against him.

## B. Counts VII, VIII, X, XII, XIV, and XVI Against the Deputies are not Prohibited by Section 768.28(9)(a)

Deputies contend that Plaintiff's allegations that the Deputies acted in bad faith, with willful and wanton conduct, and with malicious purpose are merely recitations of boilerplate language. As evidenced by the Sheriff's own motion, the Deputies are mistaken. *See* Sheriff Mot. at 9–10, 14–15, 18–19, 21–22 (explaining how the jury could find that the Deputies' actions rise to the level of bad faith, willfulness, or malice).

Evaluating the facts in the light most favorable to Ms. Percival, the Amended Complaint contains sufficient allegations rising to the level of bad faith or willful and wanton disregard for Ms. Percival's safety and human rights where the Deputies entered a 65-year-old woman's home unlawfully, battered her, detained against her will, and arrested her without probable cause. *See Montanez v. Celaya*, 49 F. Supp. 3d 1010, 1022 (M.D. Fla. 2014) (finding that amended complaint contained sufficient allegations rising to the requisite level, and thus, the individual defendants were not immune under section 768.28(9)); *Vovou v. Wong*, No. 3:11-CV-1170-J-37MCR, 2013 WL 784633, at *2 (M.D. Fla. Mar. 1, 2013) (same).

## C. Federal Claims

### 1. Plaintiff States a Civil Rights Cause of Action for Unconstitutional Entry into the Home (Count I)

Ms. Percival's right to be free from a warrantless entry of her home under the Fourth Amendment has undoubtedly been violated. However, the Deputies contend that they had a reasonable belief that Defendant David Leduc lived at the property and consented to the Deputies' entry. Deputies Mot. at 6. First, as Deputies acknowledge, the Court, at this stage, must accept the Plaintiff's allegations as true. As such, nowhere in the Amended Complaint does it allege that Leduc provided consent to enter the home. Quite the opposite, Plaintiff maintains the position that Leduc did not provide the Deputies with consent. Instead, the Deputies and Leduc unlawfully forced their way into her home and rushed in. Am. Compl. at ¶¶ 59–63. Furthermore, nowhere in the Amended Complaint does it allege that Leduc had apparent authority to consent to entry.

The Supreme Court, in *Ilinois v. Rodriguez*, 497 U.S. 177 (1990), explained that its holding is not to suggest that law enforcement officers must just accept an alleged consent from a third-party at face value without conducting any further investigation. *Id.* at 188. In fact, the Supreme Court noted that, "*even when* the invitation is accompanied by an explicit assertion that the person lives there, **the surrounding circumstances could conceivably be such that *a reasonable person would doubt its truth and not act upon it without further inquiry*.**" *Id.* (emphasis added).

Here, in the light most favorable to Plaintiff, the Deputies cannot, in good faith, contend that they reasonably believed that Leduc resided at the property and had authority to provide consent. Indeed, the facts available to the Deputies at the moment were glaring red flags that he did not. Specifically, the Amended Complaint alleges that Ms. Percival, the owner of the home who could provide consent, expressly informed the Deputies that Leduc did not live there. Am. Compl. at ¶¶ 23, 52. Ms. Percival pleaded with the Deputies to check Leduc's driver's license so that they can verify for themselves that he did not live there. *Id.* at ¶¶ 24–26, 53. They refused to do so. *Id.* Most importantly, Brizendine instructed Leduc to get a drill to get through the lock. *Id.* at ¶ 54, 55. Brizendine even instructed Leduc to kick in Ms. Percival's door. *Id.* at ¶ 54.

All of these facts should have been indicators to the Deputies that Leduc did not have apparent authority over the premises to provide consent. No law enforcement officer would reasonably believe that a third-party lived somewhere that required drilling a lock or kicking in a door to enter, especially when the owner repeatedly states that the person is not a resident. Am. Compl. at ¶¶ 23–28, 33–36, 38, 52–57, 60–63. Indeed, any one of these actions would raise an inference that if he lived there, he would have used his key to enter the home instead. *Id.* at ¶ 63. *See e.g.*, *Mundy v. Hambright*, No. CV 213-128, 2014 WL 2895475, at *7 (S.D. Ga. June 24, 2014) (denying a motion to dismiss where a government employee "could not have

reasonably concluded that she received consent to search plaintiff's residence by a person with authority to give such consent").

Additionally, *Lenz v. Winburn*, 51 F.3d 1540 (11th Cir. 1995), the case Defendants cite, is inapposite. First, this is a summary judgment case where the court has a complete record to make determinations. Second, the plaintiff did not beg the defendant and minor to leave the home on the grounds that the minor did not live there or had authority to enter. Third, there was no dispute that the minor lived at the home in her father's custody. *Id.* at 1534, 1549. Fourth, the issue before the court was whether a minor had the capacity to give third-party consent, and there was no dispute that the minor did in fact provide consent. *Id.* at 1548. Accordingly, none of the facts in *Lenz* are applicable here.

Finally, the allegations in the Amended Complaint do not invoke qualified immunity protections for the Deputies' unlawful entry into Ms. Percival's home. It is clearly established that the Fourth Amendment prohibits warrantless entry into a person's home. The warrantless entry, based upon the consent of a third party, is not valid when law enforcement cannot reasonably believe that the person possessed common authority over the premises. *Illinois*, 497 U.S. at 188. As explained above, based on the allegations of the Amended Complaint, it is not reasonable to believe that Leduc resided at the property and could provide consent. *See e.g.*, *Jiles v. Lowery*, No. 22-13245, 2023 WL 2017354, at *3 (11th Cir. Feb. 15, 2023) (denying motion for summary judgment where it was not objectively reasonable to believe the officer had

consent to enter the plaintiff's garage considering that the plaintiff closed the garage door in her face and told the officer that she did not want to talk); *Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323, 1329 (11th Cir. 2006) (finding that officer was not entitled to qualified immunity where officer never asked permission to enter but simply followed the person into the house); *Ponder v. Freeman*, No. 1:09-CV-03423-JEC, 2013 WL 1337369, at *8–9 (N.D. Ga. Mar. 29, 2013) (rejecting qualified immunity defense because the officer's reliance on the downstairs tenant's consent was unreasonable considering the plaintiff's express objection).

Further, assuming *arguendo* that the Deputies reasonably believed that Leduc lived there, the Deputies' conduct was *still* unlawful and clearly established as unlawful in this Circuit.[1] *See Georgia v. Randolph*, 547 U.S. 103, 122–23 (2006) (holding that a tenant cannot consent to admit the police over a co-tenant's express objection); *United States v. Travis*, 311 Fed. Appx. 305, 310 (11th Cir. 2009) ("where co-tenants are present at the entrance, and one consents while the other objects, police may not search").

In sum, the Amended Complaint sufficiently alleges that the Deputies' unlawful entry into Ms. Percival's home was presumptively unreasonable under the Fourth Amendment, and in the light most favorable to Ms. Percival, the Amended Complaint does not establish that the Deputies are entitled to qualified immunity.

---

[1] To be clear, Defendant Leduc is not and never was a co-tenant at the property.

**2.** <u>**Plaintiff States a Civil Rights Cause of Action for False Imprisonment (Count II)**</u>

The Amended Complaint sufficiently alleges a claim for false imprisonment. As previously explained, *supra* subsection II(A)(1) at 4–7, it was not reasonable to rely on Leduc's false statement. Moreover, the Amended Complaint states that the Deputies unlawfully restrained Ms. Percival in her home and deprived her of the right to leave. Am. Compl. at ¶¶ 63, 65–68, 76, 84–87. Further, the Deputies' confinement was intentional as the Amended Complaint alleges that the Deputies specifically positioned themselves in a manner that would show that Ms. Percival was not at liberty to move around freely or leave her home. *Id.* Accepting these allegations as true, Plaintiff sufficiently alleges a claim for false imprisonment.

Moreover, Deputies attempt to raise an affirmative defense when no such affirmative defense is present on the face of the Amended Complaint. *See generally Bortolotti v. Gracepoint*, No. 819-CV-1072-T24AAS, 2019 WL 3557126, at *6 (M.D. Fla. Aug. 5, 2019) (rejecting defendant's attempt to raise an affirmative defense where it does not appear on the face of the complaint, and thus, did not warrant dismissal of plaintiff's false imprisonment claim). There are no allegations in the Amended Complaint that would support a finding that Ms. Percival ignored or disobeyed lawful orders or posed a threat to anyone in the home to justify Deputies restraining her. Instead, the Amended Complaint clearly alleges that the Deputies unlawfully entered her home over her express objections and unlawfully restrained her in violation of rights.

Further, qualified immunity is not appropriate here. The Amended Complaint alleges that Ms. Percival was unlawfully restrained and formally charged without probable cause. Accordingly, Deputies are not entitled to qualified immunity from the false imprisonment claim. *Hails v. Dennis*, 779 Fed. Appx. 673, 676 (11th Cir. 2019) (finding that district court did not err in concluding that the officer was not entitled to qualified immunity where there was a dispute as to whether the officer had arguable probable cause to arrest plaintiff and whether the officer violated plaintiff's well-established Fourth Amendment rights by arresting and imprisoning him).

**3.** **Plaintiff States a Civil Rights Cause of Action for Excessive Force (Count III)**

Deputies contend that Plaintiff failed to state a civil rights cause of action for excessive force. Deputies seem to cherry-pick parts of the Amended Complaint, while completely disregarding the very clear allegations lodged against them. Specifically, the Amended Complaint alleges that **after** Leduc *left* the home, the Deputies **remained** in the home. *See* Am. Compl. at ¶¶ 82–83. Notably, not only was the Deputies' presence in the home unlawful, but they remained in the home even after there was no need to. *Id.* at ¶¶ 88–90. As Leduc was not at home, there was no need to restrain her or use force against her, as she cannot pose a threat to someone who is not present in the home. Further, as the Amended Complaint alleges, when Perera and Brizendine decided to charge towards Ms. Percival, she was not engaged in any criminal activity, acts of violence, posed any threat to the Deputies, or was non-compliant. Quite the

opposite, Ms. Percival was understandably confused about why the Deputies remained in her home. *Id.* at ¶¶ 88–93.

Ms. Percival's confusion was met with an unprovoked and unwarranted takedown. The Amended Complaint alleges that despite Ms. Percival's pleas for the Deputies to leave her home, Brizendine "used his foot to knock her right leg from under her, pushed her to the ground on her chest, placed both of his knees on her right shoulder and applied all his body weight onto her." *Id.* at ¶ 97. Likewise, Perera joined Brizedine and "placed one foot on Ms. Percival's lower spine, applying pressure." *Id.* at ¶ 98. The Amended Complaint further alleges that, "Brizendine pushed Ms. Percival so hard against the ground that the right side of Ms. Percival's forehead hit the ceramic floor." *Id.* at ¶ 98. The Amended Complaint goes on to describe the immense pressure and pain she experienced from the Deputies' excessive force. *Id.* at ¶¶ 100–107.

Unlike the Defendants' contentions, the Amended Complaint does allege that after all of this occurred, she was transported to jail on charges of Domestic Violence Battery, Resisting an Officer without Violence, and Misuse of Wireless 911 System. *Id.* at ¶ 108. Considering the non-seriousness of these alleged crimes, the use of force was wholly inappropriate. This is especially true considering that, as explained above, Ms. Percival was not resisting, was not engaging in violent acts, and did not pose a threat to Defendants. *See also id.* at ¶ 140.

At this stage, this is sufficient to state a claim for excessive force. *See Saunders v. Duke*, 766 F.3d 1262, 1267 (11th Cir. 2014) (explaining "our cases hold that gratuitous

use of force when a criminal suspect is not resisting constitutes excessive force"). The lack of seriousness in the alleged offenses is also the exact reason why, *inter alia*, the cases relied on by Defendants are inapposite.

For example, in *Sanchez v. Obando-Echeverry*, 716 F. Supp. 2d 1195, 1201 (S.D. Fla. 2010), the court, on a motion for summary judgment, with a complete and developed record, determined whether a police officer used an excessive amount of force as a matter of law in effectuating the plaintiff's arrest. *Id.* at 1198. Notably, the court found that no reasonable factfinder could conclude that an excessive amount of force was used against the plaintiff because: (1) the plaintiff was suspected of burglarizing a residence in a high-burglary area close to a school; (2) completely ignored the police officer when he approached him;[2] and (3) he appeared to have resisted arrest. *Id.* at 1201–04. What is particularly important in *Sanchez*, is that the officer had probable cause to believe the plaintiff was burglarizing a home, which the court described as an "inherently dangerous and serious crime." *Id.* at 1206. No such level of crime is present in this instant case.

Further, the Deputies contend that "the lack of any alleged specific injury" also supports a finding "that the force applied in this case was proportional to the need to restrain Plaintiff and obtain compliance." *See* Deputies Mot. at 7. First, this is not true.

---

[2] The Court explained that with a more complete record, it had insight to make this determination. *Id.* at 1198. To the extent that the Defendants contend that the Plaintiff was non-compliant, this factual dispute is not appropriately weighed on a motion to dismiss where (1) the Amended Complaint does not make this reference and (2) no discovery has been conducted to create a developed record for the Court.

Plaintiff sufficiently alleges the injuries she sustained as a result of Defendants' actions. *See* Am. Compl. at ¶¶ 99, 103, 109, 118–124. Second, the Eleventh Circuit has already explained that this argument is "not the law." *See Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) ("to conclude . . . that the absence of some arbitrary quantity of injury requires automatic dismissal of an excessive force claim improperly bypasses [the] core [judicial] inquiry, which is the nature of the force"); *Jean-Baptiste on behalf of Jean-Baptiste v. Jones*, 424 F. Supp. 3d 1251, 1257 (S.D. Fla. 2019) (rejecting arguments that the officer did not use excessive force because plaintiff's injuries were *de minimis* because "as the Eleventh Circuit has explained, excessive force claims turn, not on the extent of a plaintiff's injuries, but on the amount of force the defendant applied.").

Lastly, the law is clearly established that the force used by the Deputies was prohibited such that the Deputies are not entitled to qualified immunity. *See Saunders*, 766 F.3d at 1265 ("We have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands."); *Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011) ("unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment."); *Sheth v. Webster*, 145 F.3d 1231, 1238 (11th Cir. 1998) (affirming the denial of qualified immunity and concluding, "because of the absence of any justification for [the officer's] use of force, application of the Fourth Amendment reasonableness standard

'would inevitably lead every reasonable officer . . . to conclude that the force was unlawful").

Here, the force applied to Ms. Percival was unreasonable. As the Amended Complaint alleges, the Deputies' decision to charge towards Ms. Percival and use force against a 65-year-old elderly woman occurred in the absence of any orders and without posing a threat to the Defendants. *See* Am. Compl. at ¶¶ 94–107. Further, at no point did Ms. Percival resist the Deputies' unlawful conduct.

Accordingly, the allegations in the Amended Complaint, which must be construed in the light most favorable to the Plaintiff, sufficiently establishes a claim for excessive force and refutes any claim that Deputies are entitled to qualified immunity.

### 4. Plaintiff States a Civil Rights Cause of Action for False Arrest (Count IV)

The Deputies do not seem to take issue with the sufficiency of Plaintiff's allegations for false arrest. Instead, the Deputies seem to invoke—prematurely—an affirmative defense, which is that probable cause existed for the arrest. *See* Deputies Mot. at 12. However, at this stage, the Court must not engage with this argument. *Amato v. Cardelle*, 56 F. Supp. 3d 1332, 1334 (S.D. Fla. 2014) (rejecting defendant's assertion that the officer had probable cause to arrest plaintiff, and that therefore, plaintiff could not state a claim for false arrest and noting that whether the officer had probable cause "is a question of fact that cannot be resolved on a motion to dismiss"). Thus, as here, the Court cannot determine from the face of the Amended Complaint whether probable cause existed for the arrest.

The Court must only determine whether the Amended Complaint sufficiently alleges a civil rights cause of action for false arrest. And it does. Plaintiff sufficiently alleges that she did not pose a threat to the Deputies, did not resist, and was not engaged in any crime. The Amended Complaint also alleges that when Ms. Percival was in fear for her life, she dialed 911 in hopes of getting some reinforcements that would protect her against the unlawful acts of the Defendants. Am. Compl. at ¶ 77. In this manner, Ms. Percival is like the plaintiff in *Fuller v. Burrows*, No. 10-61414-CV, 2011 WL 13217014, at *7 (S.D. Fla. Oct. 31, 2011). There, the court held that the allegations in the complaint did not indicate that the 911 call was "false, that his request for public service agents was insincere, or that his call was meant to avoid any charge for service," and thus, "the complaint, accepted as true, contains plausible allegations demonstrating that no reasonable officer would have found arguable probable cause for arrest based on the 911 call." *Id.*

This Court must accept Plaintiff's allegations as true and can look no further than beyond the four corners of the complaint. As such, the Court should reject Defendants' contentions that "the existence of probable cause is also established by the criminal proceedings . . . since probable cause was found for Plaintiff's arrest at her First Appearance hearing and because the State Attorney's Office filed an *Information* charging Plaintiff with three crimes." Deputies Mot. at 13. This logic is absurd and "the mere fact that an information was filed charging Plaintiff with these crimes does not give rise to a presumption of probable cause." *Herring v. Mahoney*, 4:15-CV-402-

RH-GRJ, 2016 WL 7743043, at *5 (N.D. Fla. Dec. 13, 2016), *report and recommendation adopted*, 4:15CV402-RH/GRJ, 2017 WL 125036 (N.D. Fla. Jan. 11, 2017) (citing *Colonial Stores, Inc. v. Scarbrough*, 355 So. 2d 1181, 1185 (Fla. 1977)). Deputies will have their day in court to assert their affirmative defense. But that day is not now.

Further, the issue of whether the Deputies are entitled to qualified immunity is intertwined with the issue of whether there is probable cause. *Sheffield v. City of Sarasota*, No. 8:15-CV-319-T-30TBM, 2015 WL 1346421, at *5 (M.D. Fla. Mar. 24, 2015). Nonetheless, it is clearly established that Deputies cannot make an arrest without probable cause as is alleged in the Amended Complaint. *See Weinerth v. Ayers*, No. 2:10-CV-170-FtM-29SPC, 2011 WL 13294596 (M.D. Fla. 2011) (finding that, on a motion to dismiss, "all that is required" is for plaintiff to plausibly allege that no probable cause existed and finding that, accepting plaintiff's allegations as true, plaintiff sufficiently did so); *Fuller* , 2011 WL 13217014, at *7 (denying claims for qualified immunity on a motion to dismiss because allegations of the complaint plausibly alleged no reasonable officer would have found probable cause for the arrest stemming from the 911 call).

### 5. **Plaintiff States a Civil Rights Cause of Action for Illegal Search**

Plaintiff also sufficiently alleges a cause of action for illegal search. First, Plaintiff's claim for illegal search is independent of her cause of action for unconstitutional entry, and the Deputies have not cited any case law that would

support the position that both claims are duplicative and cannot proceed. *See generally Paul v. Miami-Dade Cnty.*, No. 14-CV-22884, 2015 WL 13776765, at *5 (S.D. Fla. May 4, 2015), *report and recommendation adopted*, 14-CV-22884, 2015 WL 13776921 (S.D. Fla. June 15, 2015) (rejecting defendants' argument that false arrest and false imprisonment were duplicative of each other and should be dismissed where defendant cited no law that would support this position).

Second, the Deputies contend no "search" occurred because the claim does not actually allege that the Deputies conducted any search inside the residence. The Eleventh Circuit has already rejected this narrow definition of what constitutes a "search" in *O'Rourke v. Hayes*, 378 F.3d 1201, 1204 (11th Cir. 2004) (rejecting defendants' argument that merely entering the space was insufficient to constitute a 'search' and finding that the officer's "mere entry into the office was enough to violate the Fourth Amendment"). The Eleventh Circuit explained that "even if [the officer] did not actually rummage around the office or go through closet or cabinets, **his mere presence inside** revealed to him things that he would otherwise have been unable to ascertain." *Id.* at 1208 (emphasis added).[3]

Third, for the reasons already explained in *supra* subsection II(A)(1) at 4–6, the Amended Complaint plausibly alleges that it was not reasonable for the Deputies to believe that Leduc resided at the property and that he had authority to give consent,

---

[3] Conversely, the Plaintiff in *O'Rourke* also dialed 911 to request someone to tell the officers to leave her premises.

which he did not. Plaintiff sufficiently alleges a civil rights claim for illegal search.  *See Romine v. Unified Gov't of Athens-Clarke Cnty.*, 3:17-CV-175, 2018 WL 10581056, at *2 (M.D. Ga. July 18, 2018) (denying motion to dismiss as to unlawful search where the complaint sufficiently alleged that the government employee entered the apartment without a warrant and that the person who gave him consent, lacked such authority, and thus the facts would show a violation of the plaintiff's Fourth Amendment rights).

Fourth, the allegations of the Amended Complaint sufficiently allege that Deputies violated Plaintiff's constitutional right to be free from warrantless searches and that the right was clearly established at the time of the alleged violation. *See O'Rourke*, 378 F.3d at 1206 (affirming the district court's denial of qualified immunity where defendants' mere entry into an office was sufficient to constitute a search and clearly made out a violation of her clearly established Fourth Amendment right to be free of warrantless searches); *Morris v. Town of Lexington*, 748 F.3d 1316, 1323–24 (11th Cir. 2014) (affirming district court's denial of qualified immunity to officer who entered the plaintiff's house without a warrant and without exigent circumstances).

**6. Plaintiff States a Civil Rights Cause of Action for Malicious Prosecution (Count VI)**

Deputies contend that Plaintiff has failed to adequately establish a lack of probable cause for Plaintiff's arrest. Deputies Mot. at 15. As previously explained, *supra* subsection II(A)(4), the Amended Complaint plausibly alleges that probable cause did not exist at the time of the arrest as Ms. Percival did not resist, threaten anyone's safety, genuinely contacted 911 in fear for her life and safety, and was not

committing any crime. *Herring v. Mahoney*, No. 4:15-CV-402-RH-GRJ, 2016 WL 7743043, at *5 (N.D. Fla. Dec. 13, 2016), *report and recommendation adopted*, 4:15CV402-RH/GRJ, 2017 WL 125036 (N.D. Fla. Jan. 11, 2017) (finding that "plaintiff's allegations plausibly suggest that there was no probable cause to arrest him for aggravated assault on a law officer and resisting an officer with violence"). That is all that is required. *Weinerth*, 2011 WL 13294596, at *1. *See also* Am. Compl. at ¶¶ 155–162 (alleging each element of Plaintiff's malicious prosecution).

Additionally, Plaintiff does more than merely state that malice can be inferred from the Deputies' actions. Plaintiff provides examples of malice including, but not limited to, (1) fabricating statements claimed to have been made by Leduc; (2) believing Leduc's word, that he lived at the home, was more credible than Ms. Percival's word; and (3) deciding to enter the home when the Deputies knew they had no legal basis to do so. *See* Am. Compl. at ¶ 167.

Lastly, Deputies are not entitled to qualified immunity for the malicious prosecution claim. Accepting the allegations as true, no reasonable officer would have believed probable cause existed to arrest Plaintiff for resisting, misuse of 911, and battery. If true, such behavior is undoubtedly a violation of a clearly established constitutional right. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1258 (11th Cir. 2010) (finding that the district court properly denied qualified immunity as to malicious prosecution claim because if the plaintiff's version of events is true, it would establish a violation for his seizure without arguable probable cause).

**D. State Claims**

1. <u>**Plaintiff Sufficiently Alleges a State Malicious Prosecution Claim Against Deputies (Count VII)**</u>

As previously explained, Plaintiff is not required to prove that probable cause existed. Plaintiff need only plausibly allege that no probable cause existed, *Weinerth*, 2011 WL 13294596, at *1, which she has done. Am. Compl. at ¶¶ 163–170. Moreover, Plaintiff has sufficiently alleged malice by the Deputies. *Id.* at ¶ 167.  Accordingly, Deputies' motion should be denied as to Count VII.

2. <u>**Plaintiff Sufficiently Alleges a State Battery Claim Against the Deputies (Count VIII) and the Sheriff (Count IX)**</u>

Defendants contend that the amount of force the Deputies used against Plaintiff was "reasonable" and "de minimis," and thus, does not rise to the level of a battery. Deputy Mot. at 17; Sheriff's Mot. at 7.[4]  Defendants are misguided in their analysis.

As alleged in the Amended Complaint, the Deputies did not have any legal basis or justification to apply *any* force. *Fleurant v. City of Port St. Lucie*, 19-14032-CV, 2019 WL 12021808, at *5 (S.D. Fla. June 27, 2019), *report and recommendation adopted sub nom. Fleurant v. City of Port St. Lucie, Florida*, No. 2:19-CV-14032, 2019 WL 12025011 (S.D. Fla. July 16, 2019) ("when no crime has been committed, this fact weighs heavily in favor of finding the use of force excessive" and denying a motion to dismiss based

---

[4] The issue of vicarious liability raised in Sheriff's Motion to Dismiss is also premature. *See generally United States Equal Employment Opportunity Comm'n v. Favorite Farms, Inc.*, No. 8:17-CV-1292-T-30AAS, 2018 WL 295549, at *2 (M.D. Fla. Jan. 4, 2018) (denying motion to dismiss and noting that "the issue of vicarious liability is a fact-intensive inquiry" that is more "appropriately addressed at the summary judgment stage").

on this rationale) (internal citations omitted); *Anderson v. City of Homewood*, No. 2:16-CV-439-TMP, 2016 WL 7438895, at *10 (N.D. Ala. Dec. 27, 2016) (denying motion to dismiss as to one officer where plaintiff alleged that he was battered by officer without legal authority because the arrest itself was unlawful).

Specifically, here, Ms. Percival alleges that when she attempted to prevent Leduc from taking her personal belongings, Brizendine grabbed her "from behind, held her arms down to her sides and pressed his chest onto her back." Am. Compl. at ¶ 73. The Amended Complaint alleges that this restraint was unlawful because she was not engaged in any crime or disobeying any orders. *Id.* at ¶¶ 69–75. Conversely, the items belonged to her. *Id.* The Amended Complaint further alleges that, even after Leduc left, the Deputies remained in her home. *See id.* at ¶ 83. At this time, Ms. Percival was still not engaged in any crime. The Amended Complaint alleges that despite Ms. Percival's pleas for the Deputies to leave her home, the Deputies battered her. ¶¶ 97–98. Accordingly, the crux of Plaintiff's battery claim is that the Deputies' intentional, harmful, and offensive contact was without provocation and prior to an arrest. *See* Am. Compl. at ¶ 172, 177. *See Saunders v. Duke*, 766 F.3d 1262, 1267 (11th Cir. 2014) (explaining "our cases hold that gratuitous use of force when a criminal suspect is not resisting constitutes excessive force").

Thus, Plaintiff's battery claim is an independent tort and is not incident to the arrest.[5] *See e.g.*, Am. Compl. at ¶ 73, 172, 177. *See Harris v. Miami-Dade Cnty. Dept. of Corr. & Rehabs.*, 160 Fed. Appx. 814, 817 (11th Cir. 2005) (disagreeing with defendants' argument that the battery claim is 'subsumed' in the false arrest claim because the officer battered the plaintiff without provocation and then committed the separate tort of falsely arresting her); *Lozman v. City of N. Bay Vill.*, No. 07-23357-CIV, 2008 WL 11411195, at *3 (S.D. Fla. Apr. 30, 2008) ("factual scenario pled could support a finding that a battery occurred before the alleged false arrest or that the force used was excessive under the circumstances").

Further, the Court must accept Plaintiff's allegations as true. The Defendants contend that the amount of force was reasonable considering that Plaintiff was non-compliant. *See* Sheriff Mot. at 7; Deputy Mot. at 17. However, nowhere in the Amended Complaint does it allege that Plaintiff was non-compliant, nor was she. In fact, there was an absence of any order for Plaintiff to comply with. As the Amended Complaint alleges, the Deputies' decision to charge towards Ms. Percival and batter a 65-year-old elderly woman occurred in the absence of any orders. *See* Am. Compl. at ¶¶ 94–107.

Further, Defendants contend that "the lack of any alleged specific injury" also supports a finding "that the force applied in this case was proportional to the need to

---

[5] The Defendants' reliance on *Sanchez v. Obando-Echeverry*, 716 F. Supp. 2d 1195, 1201 (S.D. Fla. 2010) and *Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000) is also misguided for the same reasons stated in *supra* subsection II(A)(3).

restrain Plaintiff and obtain compliance." *See* Sheriff Mot. at 7; Deputies Mot. at 17. As previously discussed, *supra* subsection II(A)(3), Plaintiff sufficiently alleges the injuries she sustained as a result of Defendants' actions. *See* Am. Compl. at ¶¶ 99, 103, 109, 118–124. Second, the Eleventh Circuit has already explained that this argument is "not the law." *See supra* subsection II(A)(3) (citing *Jean-Baptiste*, 424 F. Supp. 3d at 1257; *Saunders*, 766 F.3d at 1270).

Accordingly, Plaintiff respectfully requests the Court to deny Defendants' motions to dismiss as to Count VIII and Count IX. *See also Alexander V. Microwave Components, Inc. et al.*, No. 09-14369-CIV, 2010 WL 11504288, at *3 (S.D. Fla. Mar. 3, 2010) (finding that the plaintiff's complaint sufficiently put the defendant on notice as to her battery claim where the plaintiff provided a short, plain statement about the defendant's unlawful, offensive contact).

### 3. Plaintiff Sufficiently States a Trespass Claim Against the Defendants (Count X and Count XI)

Defendants contend that Plaintiff has failed to allege any of the elements for a civil trespass. Sheriff Mot. at 12; Deputy Mot. at 19. This is without merit. "A simple definition of a civil trespass to real property is an injury to *or* use of the land of another by one having no right or authority." *Winselmann v. Reynolds*, 690 So. 2d 1325, 1327 (Fla. 3d DCA 1997) (citations omitted) (emphasis added). Thus, "merely entering a building constitutes trespass." *Guin v. City of Riviera Beach*, 388 So. 2d 604, 606 (Fla. 4th DCA 1980). Further, "the aggrieved party must have had an ownership or possessory interest in the property at the time of the trespass." *Id.*

Simply put, Plaintiff alleges that she is the homeowner of the property. Am. Compl. at ¶¶ 13, 190. Plaintiff alleges that the act of trespass occurred when the Deputies entered her home without consent from her, legal authority, or probable cause. Am. Compl. at p. 1 and ¶ 190. This is sufficient to allege a claim for trespass. *See Coddington v. Staab*, 716 So. 2d 850, 851 (Fla. 4th DCA 1998) (finding that the complaint stated a cause of action for trespass because plaintiff alleged that the defendant entered his home without his permission); *Rebalko v. City of Coral Springs*, No. 19-60569-CIV, 2020 WL 6446042 (S.D. Fla. Nov. 3, 2020) (plaintiff's allegations set out a plausible trespass claim against the City).

Defendants also contend that Plaintiff has no articulable damages relating to the difference in value of 7001 Applewood Court before and after the events of June 2, 2020. Sheriff Mot. at 12; Deputy Mot. at 19. First, Plaintiff is not required to prove damages at this point. Second, "even if no actual damages are proven, the plaintiff is still entitled to nominal damages and costs." *Daniel v. Morris*, 181 So. 3d 1195, 1199 (Fla. 5th DCA 2015).

Further, the Defendants contend that Deputies were entitled to rely on Leduc's false statements that he resided at the property, and as such, asserts that "consent is an 'absolute defense' to a civil action for trespass." Sheriff Mot. at 12; Deputy Mot. at 19–20 (internal citations omitted). As previously discussed in *supra* subsection II(A)(1), it was not reasonable to rely on Leduc's false statements for alleged consent. *See also King v. State*, 79 So.3d 236, 238–39 (Fla. 1st DCA 2012) ("law enforcement may only rely

on a person's apparent authority to give consent if such consent is reasonable given the totality of the circumstances . . . [i]f the basis for the asserted authority is not clear, the officer must conduct further inquiry before relying on the third party's representations.").

Further, "consent" is an affirmative defense not appropriately raised on a motion to dismiss. *Bolus v. Morrison Homes, Inc.*, 808-CV-1957-T-23TBM, 2009 WL 651902, at *3 (M.D. Fla. Mar. 12, 2009) (finding plaintiff stated a claim for trespass and finding that defendant's alleged contention that it had consent to enter the property "arises only as an affirmative defense to the trespass claim and is not properly considered during the resolution of a motion to dismiss"); *Estate 8, LLC v. Carrington Mortgage Services LLC*, 20-62111-CIV, 2021 WL 3934171, at *3 (S.D. Fla. Apr. 15, 2021) (same). Accordingly, Plaintiff requests this Court to respectfully deny the Defendants' motion to dismiss as to Counts X and XI.[6]

### 4. Plaintiff Sufficiently Alleges a State False Imprisonment/Arrest Claim Against the Defendants (Count XII and Count XIII)

Next, Defendants contend that the Amended Complaint fails to allege a claim for false imprisonment/arrest. *See* Sheriff Mot. at 15; Deputy Mot. at 21. Based on the elements of the claim, the allegations in this case sufficiently allege a false arrest claim against the Defendants. The Amended Complaint alleges that Deputy Defendants unlawfully, intentionally, and unreasonably restrained Ms. Percival to the inside of

---

[6] *Lenz v. Winburn*, 51 F.3d 1540 (11th Cir. 1995) is also inapposite for the reasons explained in *supra* subsection II(A)(1).

her home. These actions were done against her will. Further, these actions were done without any lawful basis because Deputies knew there was no probable cause to arrest Ms. Percival for any offense and such actions were unreasonable and unwarranted under the circumstances.

Further, as with the other arguments, Defendants raise contentions more appropriately decided later in the litigation. *See Amato v. Cardelle*, 56 F. Supp. 3d 1332, 1334 (S.D. Fla. 2014) (denying motion to dismiss false arrest claim because "probable cause is a question of fact that cannot be resolved on a motion to dismiss."); *Gregory v. Miami-Dade Cnty.*, 86 F. Supp. 3d 1333, 1338 (S.D. Fla. 2014) (denying motion to dismiss false imprisonment claim because the existence of probable cause could not be determined from the face of the complaint). Indeed, Plaintiff vehemently disputes that there was probable cause, and Defendants vehemently argues that probable cause existed.  *See* Sheriff Mot. at 17; Deputy Mot. at 21. As such, especially by requesting the court to take judicial notice of court filings in a separate matter, Defendants request the Court to partake in an improper exercise of weighing the facts when no such inquiry is required at this point. *U.S. Equal Employment Opportunity Comm'n*, 2020 WL 6485003, at *1 ("a motion to dismiss should concern only the complaint's legal sufficiency and is not a procedure for resolving factual questions or addressing the merits of the case"). Moreover, the criminal case filings are not evidence of probable cause. *Herring*, 2016 WL 7743043, at *5.

**5. Plaintiff Sufficiently Alleges a State "Illegal Search of Home" (Count XIV and Count XV)**

As previously addressed, *supra* subsection II(A)(1), the Deputies' alleged reliance on the false statement that Leduc resided at the home for consent is not reasonable. Accordingly, Defendants cannot in good faith rely on this argument and this is not a basis to grant a motion to dismiss. *Id.*

Next, Defendants contend that "Plaintiff does not actually allege that the Deputies conducted any search inside 7001 Applewood Court." *See* Mot. at 21. As previously explained, an officer's mere presence and unlawful entry into a place constitutes a search. *O'Rourke v. Hayes*, 378 F.3d 1201, 1207 (11th Cir. 2004) ("Hayes's mere entry into the office was enough to violate the Fourth Amendment" and finding that he did not need to "rummage" through things for a search to occur).

Finally, both Plaintiff's illegal search of home claim and trespass to land claim may proceed. *See generally Guin v. City of Riviera Beach*, 388 So. 2d 604, 606 (Fla. 4th DCA 1980) (noting that there was both trespass and an invasion of privacy when the police entered and searched the appellant's home).

Accordingly, Plaintiff respectfully requests the Court to deny Defendants' motions to dismiss as to Count XIV and Count XV.

**6. Plaintiff Sufficiently Alleges a State Intentional Infliction of Emotional Distress Claim (Count XVI)**

Plaintiff sufficiently alleges that the conduct of the Deputies was extremely outrageous as they illegally entered Ms. Percival's home, physically abused her, and caused her a lifetime of emotional distress. Am. Compl. at ¶ 222. *Tarantino v. Citrus Cnty. Gov't*, No. 512-CV-434, 2013 WL 12153541, at *6 (M.D. Fla. Oct. 9, 2013), *report and recommendation adopted*, 512-CV-434, 2013 WL 12158613 (M.D. Fla. Nov. 15, 2013) (denying motion to dismiss plaintiff's IIED claim and noting that the complaint, accepted as true, sufficiently alleges the claim).

Accordingly, Plaintiff respectfully requests the Court to deny Defendants' motion to dismiss as to Count XVI.

**E. Miscellaneous Arguments**

**1. Plaintiff Complied with the Pre-Suit Notice Requirements**

While Plaintiff has not expressly *alleged* that she complied with Florida Statute Section 768.28, Plaintiff has in fact complied with said requirements. Plaintiff served the pre-suit notice on June 2, 2021.[7] Thus, Plaintiff's failure to allege compliance with the statutory notice requirements is not grounds for dismissal. *Jewell*, 2020 WL 7399001, at *2 (S.D. Fla. Dec. 16, 2020) (declining to dismiss counts based on a failure to comply with section 768.28(6)(a) and requiring plaintiff to file proof of compliance).

---

[7] Plaintiff will file a Notice of Compliance with section 768.28(6)(a).

## 2. Punitive Damages are Allowed Against the Deputies in Their Individual Capacities

Plaintiff only seeks punitive damages against each Deputy sued in their individual capacities. This is permissible. *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1047 (11th Cir. 2008) ("punitive damages are only available from government officials when they are sued in their individual capacities"); *Johnson v. Israel*, 576 F. Supp. 3d 1231, 1267 (S.D. Fla. 2021) ("Defendants have provided no basis to disturb Johnson's claim for punitive damages against the Deputies in their *individual* capacities").

## III.   CONCLUSION

As the Eleventh Circuit noted in *O'Rourke v. Hayes*, 378 F.3d 1201, 1210 (11th Cir. 2004), "had the officers [] displayed the courtesy, professionalism, and respect citizens have the right to expect, they would not have acted with the unbridled arrogance of those who believe they will never be held accountable for their behavior."

The factual allegations in the Amended Complaint, taken as true and with all reasonable inferences drawn in the light most favorable to Ms. Percival, plausibly alleges each claim. Moreover, the Deputies are not entitled to qualified immunity because the Amended Complaint adequately alleges several violations of Plaintiff's clearly established rights, and these rights were

clearly established at the time of the violation. Plaintiff respectfully requests this Court to deny Defendants' Motions to Dismiss.

Dated: August 15, 2023

Respectfully submitted,
/s/ Jeremy McLymont, Esq.
AsiliA Law Firm, P.A.
33 SW 2nd Ave., Ste. 1100
Miami, FL 33130
Tel. (786) 420.3014
Fax (813) 549.2896
Jeremy@asilialaw.com
Florida Bar No. 1010776
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of August 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Jeremy McLymont*
Jeremy McLymont, Esq.
Florida Bar No. 1010776