IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SPRINGER,

    **Plaintiff,**

v.

          Civil Action No. 1:23-cv-00499-MIS-JMR

SEVENTH JUDICIAL DISTRICT COURT,
MERCEDES MURPHY,
SHANNON MURDOCK-POFF, JASON JONES,
and SUSAN ROSSIGNOL,

    **Defendants.**

**PLAINTIFF'S OPPOSED SECOND MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION[1]**

COMES NOW, Plaintiff, through undersigned counsel of record, and respectfully moves this court for temporary restraining order and preliminary injunction to enjoin the Defendant's from taking any action to suppress, block or in any censor Plaintiff's publication of material as member of the press or citizen engaged in expressive speech or conduct on any platform.

**INTRODUCTION**

The judicial branch (federal or state) is not a super branch of government.  They enjoy no special status in our tripartite government but operate as co-equal branch subject to the same limitations against depriving citizens of rights protected under the Bills of Rights for the United States and New Mexico Constitutions. Neither the federal nor state constitutions as part of the limited enumerated powers granted to the judicial branches respectively grant the judicial branch the authority to curb rights, limit freedom or to punish expression of citizens simply because the content angers the judicial branch, the conduct violates rules or policies, on the conduct simply isn't as polite the judicial branch desires. While it may be *en vogue* as part of wokeism to censor

---

[1] Counsel for Defendants has been consulted and does opposes amendment of the Complaint.

or punish speech or conduct that those in political power (here judges) find offensive or disruptive, that type of behavior is antithetical to our Constitutions and the spirit of our Republic.

In fact, here the Defendants believe it to be the case that the Constitutions permit them to strip away rights without procedural due process, with no regard for the limitations that substantive due process requires they follow in depriving a citizen of rights and act in a purely retaliatory fashion for conduct they have deemed offensive. Can this Court imagine our Founders having escaped the despotism of the King of England, who decreed that he was above criticism from the colonists, envisioned that our Constitution would permit a oligarchy comprised of judges to decide that they were banning people from public halls, from public hearings indefinitely or threatening them with jail because the citizen encouraged other citizens to petition for the redress of the grievance that they had with actions of the judiciary? Can this Court actually envision that it is consistent with the Constitutions that a person exercising their rights of press and speech should be subject to threat of jailing or have their publications censored at the request of the government that is being criticized *in this Country*?

Rather the Defendants' actions demonstrate the type of despotic conduct warned against by Thomas Jefferson stating that "the opinion which gives the judges the right to decide what laws are constitutional and what not, not only for themselves in their own sphere of action but for the Legislature and Executive also in their spheres would make the Judiciary a despotic branch." Letter from Thomas Jefferson to Abigail Adams, 1804. Available at etext.lib.virginia. edu/jefferson/quotations/jeff1030.htm Likewise, Robert Yates writing as "Brutus" in *Anti-Federalist Papers No. 11* warned against this stating:

> The real effect of this system of government, will therefore be brought home to the
> feelings of the people, through the medium of the judicial power. It is, moreover, of
> great importance, to examine with care the nature and extent of the judicial power,
> because those who are to be vested with it, are to be placed in a situation altogether

unprecedented in a free country. They are to be rendered totally independent, both of the people and the legislature, both with respect to their offices and salaries. No errors they may commit can be corrected by any power above them, if any such power there be, nor can they be removed from office for making ever so many erroneous adjudications.

…

When the courts will have a precedent before them of a court which extended its jurisdiction in opposition to an act of the legislature, is it not to be expected that they will extend theirs, especially when there is nothing in the constitution expressly against it? and they are authorised to construe its meaning, and are not under any controul? This power in the judicial, will enable them to mould the government, into almost any shape they please.

Robert Yates, "Essay No. 11," *Anti-federalist Papers*, first published in the *New York Journal*, March 20, 1788. Available at www.constitution.org.

It is incumbent upon this Court, therefore, in consideration of this motion to refrain from providing any deference towards these Defendants because of the branch of state government that they occupy. Such deference towards the rules or policies of the Defendants beyond the scrutiny that would be exhibited towards the rules or policies of the other branches to allow it provide justification for deprivations of rights is wholly improper and external to the facts or circumstances of this case. And to be clear, there are procedures, rules and laws that provide adequate protections for the function of the state courts specifically authorized in a manner that is consistent with Constitutions, it is called contempt. That is the only justified and authorized procedure by which a state district court that is acting in accordance with due process can address its concerns that the conduct or speech of a citizen has exceeded the boundaries of what is protected under the Constitutions.  Instead, here, Defendants have not followed that due process to address the concerns that this Court's ruling shows apparent sympathy towards, because it is obvious that Plaintiff has not engaged in conduct that is actionable as contempt. A single unknowing violation of a rule against members of the press videoing proceedings without giving advance notice and a single violation of ill-conceived and later discredited masking policy that the citizen criticizes to

his government official enforcing that policy cannot form the basis for contempt and therefore could not form the basis for deprivation fundamental liberties.

Undetered, likely because of the encouragement that this Court's prior rulings instill, Defendants have now engaged, either themselves or acting through the employees under their control, in coercive efforts to have YouTube censor Plaintiff's publications as member of the press and his expressive conduct as citizen. The Fifth Circuit has very recently criticized and upheld a preliminary injunction against very similar conduct by the Biden administration holding that:

> To be sure, this modified injunction still "restricts government communications not specifically targeted to particular content *posted by plaintiffs themselves*," as the officials protest. But that does not mean it is still overbroad. To the contrary, an injunction "is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit—even if it is not a class action— if such breadth is necessary to give prevailing parties the relief to which they are entitled." *Pro. Ass'n of Coll. Educators, TSTA/NEA v. El Paso Cnty. Cmty. Coll. Dist.*, 730 F.2d 258, 274 (5th Cir. 1984) (citations omitted); *see also Bresgal v. Brock*, 843 F.2d 1163, 1170–71 (9th Cir. 1987). Such breadth is plainly necessary, if not inevitable, here. **The officials have engaged in a broad pressure campaign designed to coerce social-media companies into suppressing speakers, viewpoints, and content disfavored by the government.** The harms that radiate from such conduct extend far beyond just the Plaintiffs; it impacts every social-media user. Naturally, then, an injunction against such conduct will afford protections that extend beyond just Plaintiffs, too. *Cf. Feds for Med. Freedom v. Biden*, 63 F.4th 366, 387 (5th Cir. 2023) ("[A]n injunction [can] benefit non-parties as long as that benefit [is] merely incidental." (internal quotation marks and citation omitted)).

*Missouri v. Biden*, 83 F.4th 350, 398 (5th Cir. 2023), *cert. granted sub nom. Murthy v. Missouri*, 2023 WL 6935337 (U.S. Oct. 20, 2023)(emphasis added).

Yet, here, these Defendants are engaged in a vendetta against Plaintiff complete with the public posting of his picture with all of his relevant information that would include the information that could be used to steal his identity. *See* Exhibit 1, Declaration of James Springer.  Moreover, unhappy that he has, again, spoken critically of and reported on his government's policies and actions, Defendant's have now sought to censor his press publication of his YouTube video and

his speech.  This warrants that this Court should again revisit whether or not the actions of the Defendants warrant the issuance of preliminary injunctive relief to prevent further loss of fundamental liberty (irreparable harm) previously before the Court and well as to consider this additional request for injunctive relief to prevent additional irreparable harms.

### FACTS SUPPORTING INJUNCTIVE RELIEF

1. The Defendants first denied Plaintiff his fundamental liberties upon the basis that the content of his speech and reporting that was critical of the government caused 3rd-Parties to call and complain to Defendants in a manner that they unilaterally deemed to be harassing. *See* ECF Doc. No. 1-2.

2. Prior to the deprivation of fundamental liberties effectuated by the administrative action taken in ECF Doc. No. 1-1, Plaintiff was afforded no notice or opportunity to be heard and following the issuance of the administrative action, Plaintiff was afforded no avenue to appeal. *See* EX 1.

3. The Defendants then continued that deprivation under the false premise that Plaintiff had entered the Moriarity Magistrate Courthouse for non-court business and under the undefined and ambiguous premise that Plaintiff was somehow being disruptive and threatening.  *See* ECF Doc. Nos. 3 and 4. And the Defendants have still yet failed to provide any pre or post deprivation due process to Plaintiff. *See* EX 1.

4. Currently, the Defendants have now changed basis in front of this Court (and the Court has entertained as true despite Plaintiff's well-pleaded allegations to the contrary) that the actions to infringe upon and deprive Plaintiff of fundamental liberties were justified

because Plaintiff broke court rules and spoke in what can at worst be described as an impolite manner[2] to a hearing officer and a court clerk. *See* ECF Doc. No. 29.

5. Now, upon information and belief, using the authority or at least the air of authority of the state district court the Defendants or the Defendants' employees, have coerced YouTube to moderate or remove Plaintiff's reporting materials from the platform. *See* EX 1.  This censorship is directly based upon the animus of the Defendants towards the content of Plaintiff's speech and not because his speech specifically violated some rule regarding speech in the hallways of courthouse or somehow incites an unlawful action by those that heard his message. *See* https://www.youtube.com/watch?v=QUhGqPBXzF4

**Plaintiff Has a Liberty Interest in Freedom of Speech, Freedom of the Press and to Petition the Government for Redress That Requires Due Process of Law Before He is Deprived of Liberty.**

Plaintiff has a liberty interest in activities protected by the First Amendment to speech, press and petitioning. Banning him from courthouses, excluding him from hearings and denying him public services most certainly runs afoul of those protections.  Moreover, depriving him of that liberty with absolutely no notice or opportunity to be heard deprives him of owing procedural due process. Further, the Defendants actions to engage in attempts to coerce YouTube to censor

---

[2] Contrary to the beliefs of wokeism, the First Amendment does not <u>only</u> protect polite or politically correct speech and does not provide a justification for government deprivation of fundamental liberty under the Supreme Court's precedent since *Cohen v. California*, 403 U.S. 15, 18, 91 S. Ct. 1780, 1785, 29 L. Ed. 2d 284 (1971) to walk down the Los Angeles Municipal Courthouse corridor with a jacket on that said "Fuck the Draft" and have the Supreme Court find that "Cohen could not, consistently with the First and Fourteenth Amendments, be punished for asserting the evident position on the inutility or immorality of the draft his jacket reflected." *Id.*

and remove the above linked YouTube live feed is most certainly violative of the First Amendment.

**A Temporary Restraining Order is Necessary to Prevent Irreversible Harm**

Unless the Court enters this Temporary Restraining Order and Preliminary Injunction, Plaintiff will be cut off from exercising his rights in any sort of significant way in a number of locations in Torrance County as well as on the social media platform of YouTube.

**I.      Standards for Issuance of a Preliminary Injunction**

A movant may obtain a preliminary injunction if: (1) the movant will be irreparably injured by denial of the relief; (2) the movant's injury outweighs any damage the injunction may cause the opposing party; (3) granting the preliminary relief would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Keirnan v. Utah Transit Auth.,* 339 F.3d 1217, 1220 (10th Cir. 2003) (citation omitted). For the reasons that follow, the standards for granting a temporary and preliminary injunction have been met in this case.

**II.     Plaintiff is Substantially Likely to Succeed on the Merits.**

**A.    *Defendants' Administrative Orders, Letters and Actions to have YouTube censor Plaintiff are viewpoint discrimination in violation the First Amendment and the corresponding New Mexico Constitution provision in the Bill of Rights.***

The government cannot abridge free speech. U.S. Const. amend. I. A private party, on the other hand, bears no such burden—it is "not ordinarily constrained by the First Amendment." *Manhattan Cmty. Access Corp. v. Halleck*, —— U.S. ——, 139 S. Ct. 1921, 1930, 204 L.Ed.2d 405 (2019). That changes, though, when a private party is coerced or significantly encouraged by the government to such a degree that its "choice"—which if made by the government would be unconstitutional, *Norwood v. Harrison*, 413 U.S. 455, 465, 93 S.Ct. 2804, 37 L.Ed.2d 723 (1973)— "must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *Barnes v. Lehman*, 861 F.2d 1383, 1385–86 (5th Cir. 1988).

*Missouri v. Biden*, 83 F.4th 350, 373 (5th Cir. 2023), *cert. granted sub nom. Murthy v. Missouri*,

2023 WL 6935337 (U.S. Oct. 20, 2023). Just as in *Biden*, Plaintiff here alleges that the removal of his post on YouTube to be directly from flagging of the posts by the Defendants and their employees.  There, the Fifth Circuit acknowledged that it "is 'censor[ing] disfavored speakers and viewpoints' on social media. The Plaintiffs allege that the 'Defendants [ ] coerced, threatened, and pressured social-media platforms'," *id.* at 381, to be conduct constituted irreparable harm and that established that those Plaintiffs were likely to succeed on the merits. Here, the circumstantial evidence supports that Defendants are responsible for engaging in dishonest coercion that Plaintiff's post on YouTube should be removed because it was spam, a deceptive practice or a scam when it clearly was not. *See* EX 1. Moreover, it appears circumstantially consistent with attempts to target Plaintiff by publicly posting his picture like a wanted poster with sensitive information in the Courthouse in Estancia. *See* EX 1.

And again, the evidence clearly establishes that Defendants deprived Plaintiff of these fundamental liberties with absolutely zero prior notice or opportunity to present his side of the story before the deprivations occurred and he has been provided no avenue to appeal those actions after they have been taken.  These undisputed facts alone establish that Plaintiff is likely to succeed on the merits. The Supreme Court recently reiterated that citizens are entitle to procedural due process before they are deprived of liberty stating:

> Here, the specific constitutional right allegedly infringed is procedural due process. A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process. See *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Importantly, the Court has stated that a procedural due process claim "is not complete when the deprivation occurs." *Id.*, at 126, 110 S.Ct. 975. Rather, the claim is "complete" only when "the State fails to provide due process." *Ibid.*

*Reed v. Goertz*, 598 U.S. 230, 236, 143 S. Ct. 955, 961, 215 L. Ed. 2d 218 (2023).  It is clear that Plaintiff is substantially likely to succeed on this threshold claim because he was not provided with

procedural due process at any point which "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 901, 47 L. Ed. 2d 18 (1976).  It is, thus, clear that Defendants were required to provide Plaintiff "the opportunity to be heard 'at a meaningful time and in a meaningful manner'," *id.*at 333; *citing Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965), *before* they engaged in banning him from public hearings and courthouses or attempted to censor his speech or published reporting with which they disagreed.

The complete failure to provide him any opportunity to be heard *before* they deprived him of his fundamental liberties to speech and press makes their actions undoubtably unconstitutional and the lack of any way to appeal of those decisions most assuredly means that there is a very substantial likelihood that this Court must eventually set aside all of the actions taken against the Plaintiff as they violate his ***right*** under the Fourteenth Amendment to procedural due process.

### III.     The Plaintiff Will Suffer Irreparable Injury if Injunctive Relief Is Denied

As the Fifth Circuit noted in *Biden*:

While "[t]he loss of First Amendment freedoms, for even minimal periods *393 of time, unquestionably constitutes irreparable injury," *Roman Cath. Diocese of Brooklyn v. Cuomo*, —— U.S. ——, 141 S. Ct. 63, 67, 208 L.Ed.2d 206 (2020) (per curiam) (quoting *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion)), "invocation of the First Amendment cannot substitute for the presence of an imminent, non-speculative irreparable injury," *Google, Inc. v. Hood*, 822 F.3d 212, 228 (5th Cir. 2016).
Missouri v. Biden, 83 F.4th 350, 392–93 (5th Cir. 2023), cert. granted sub nom. Murthy v.

Missouri, 2023 WL 6935337 (U.S. Oct. 20, 2023)

Banning Plaintiff from Courthouse, excluding him from public hearings and denying him public services unquestionably deprives him of his ability speak freely, publish in the press and to petition his government for redress. Moreover, coercing YouTube to remove his posting under the

false premise that they were spam, deceptive practices or a scam clearly denying Plaintiff his Constitutional freedoms. There is no adequate legal remedy for these "intangible harms." *Cmty. Television of Utah, LLC v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1210 (D. Utah 2014) ("Rather, the court looks to intangible harms that are difficult to quantify when it determines whether irreparable harm warrants a preliminary injunction). Moreover, deprivation of constitutionally protected rights—including the rights to due process and equal protection—inexorably creates irreparable harm. *See Elrod v. Burns* 427 U.S. 347, 373 (1976).; *see also Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (citations omitted).

The fact that Due Process and First Amendment rights are burdened if not outright denied, as they are in this case, establishes the preliminary injunction's "irreparable harm" standard. Thus, under the Tenth Circuit Court of Appeals' jurisprudence, irreparable injury has occurred and will continue to occur until an injunction issues.

### IV.     The Balance of Harms Favors Issuance of Injunctive Relief

Plaintiff has established both the requisite likelihood of success on the merits as well as a clear irreparable injury. In addition, the balance of harms tips decidedly in favor of Plaintiff. In the Tenth Circuit, "the [government's] potential harm must be weighed against [plaintiffs'] actual [constitutional] injury." *Summum v. Pleasant Grove City*, 483 F.3d 1044, 1056 (10th Cir. 2007) *rvs'd other grounds by* 555 U.S. 460 (2009). Where the government's perception of harm is speculative (if not outright nonexistent) such speculative harm cannot outweigh an injury to the Due Process and First Amendment rights of a Plaintiff who has established a substantial likelihood of success on the merits.

If preliminary injunctive relief is not granted, and the Court later finds that the challenged

laws impermissibly infringe constitutional rights, the Plaintiffs will have suffered irreparable harm. After the fact, this Court will be unable to make things right again. By contrast, if this Court grants preliminary injunctive relief and later finds against the Plaintiff, the Defendants will not have suffered any hardship. Because the Defendant cannot show any sort of reasonably anticipated harm if an injunction is granted, and the Plaintiffs will suffer certain harm in the absence of injunctive relief, the balance of hardships favors the Plaintiff. When plaintiffs establish that a case raises constitutional issues, as the Plaintiffs have in this case, the Court should presume that the balance of harms tips in their favor. *Sammartano v. First Judicial District Court*, 303 F.3d 959, 973 (9th Cir. 2002).

### V.      An Injunction Is in the Public Interest

Finally, Plaintiff establishes that issuance of a preliminary injunction is in the public interest. The Tenth Circuit Court of Appeals recognizes "it is always in the public interest to prevent the violation of a party's constitutional rights." *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016); *citing Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005); *see also Utah Licensed Bev*., 256 F.3d at 1076; *Elam Constr., Inc. v. Regional Transp. Dist*., 129 F.3d 1343, 1347 (10th Cir.1997). It is in the public interest to not allow government to ban members of the press from public courthouses and hearings or to deny them the ability to make records request simply because they do not like the content of the speech or press of an individual reporter.

### <u>CONCLUSION</u>

For for all the foregoing reasons, Plaintiffs respectfully request this Court grant a Temporary Restraining Order and a Preliminary Injunction setting aside the Administrative Orders as adopted in violation of Plaintiff's right to procedural due process and prohibiting

Defendants or any employee acting at their behest from communicating or seeking to have any social media platform moderate or remove Plaintiff's postings.

Respectfully submitted this 7th day of November 2023.

Respectfully submitted,

WESTERN AGRICULTURE, RESOURCE AND BUSINESS ADVOCATES, LLP

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.
Jared R. Vander Dussen, Esq.
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
abdunn@ablairdunn-esq.com
warba.llp.jared@gmail.com

Zach Cook, LLC

*/s/ Zach Cook*
Zach Cook
1202 Sudderth # 425
Ruidoso, NM 88345
(575) 937-7644
zach@zachcook.com

CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2023, I filed the foregoing via the CM/ECF causing all parties of record to be served electronically.

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.