IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SPRINGER,

      Plaintiff,

v.

                                                 Civil Action No. 1:23-cv-00499-MIS-JMR

SEVENTH JUDICIAL DISTRICT COURT,
MERCEDES MURPHY,
SHANNON MURDOCK-POFF, JASON JONES,
and SUSAN ROSSIGNOL,

      Defendants.

### REPLY IN SUPPORT OF SECOND MOTION FOR TRO AND PI

COMES NOW, Plaintiff, through undersigned counsel, with his Response to the Motion to Dismiss, ECF Doc. No. 57, and for his reasons states:

### INTRODUCTION

It is clear from the instant Response that this case originates from a failure of the Defendants to understand the law or the Constitutions, their authority as a state district court, and out of contempt for the rights of members of the public with whom they disagree that are acting as press and as citizens to engage in speech that is critical of their government (which includes the judicial branch.) To be clear, Plaintiff does not dispute that New Mexico Supreme Court has acted in its constitutional and legislatively delegated authority to lawfully promulgate rules for the safety of citizens appearing in court or for courtroom decorum to aid the important work of the State's district courts. Further, Plaintiff acknowledges, that under those lawful rules, that violations of those rules may lead to punishment under the district court's contempt powers. Of equal importance, Plaintiff understands that being held in contempt for violating the *lawfully* promulgated rules and orders of the district court carries with it penalties and requirements, but, only if, after following the process set forth in the law and rules for contempt (procedural due

1

process), the district court makes a determination upon the evidence that Plaintiff did, in fact, engage in contempt of court, which, of course, is an appealable (more procedural due process) determination.

In this regard, an evaluation of the law and rules for contempt, a process that Defendants should have been familiar with is worth reviewing here. Defendants have continued to characterize the interaction of Plaintiff to argue with a hearing officer about wearing a mask and unwittingly recording in the hearing room as "misconduct." But, the best place for this Court to start, is the same place that the Defendants should have turned instead of legislating their own process to punish Plaintiff allegedly for his "misconduct," that is the Committee Commentary on NMRA 1-093 which states:

> New Mexico law classifies contempts of court as either civil or criminal. *See Concha v. Sanchez*, 2011-NMSC-031, ¶ 24, 150 N.M. 268, 258 P.3d 1060. The classification of a contempt as civil or criminal does not depend on whether the contempt proceeding arises out of an underlying criminal action or civil action. Instead, the focus should be on the reason why the court is invoking its contempt powers. *See id*. Civil contempt sanctions are remedial and may be imposed as coercive measures to compel a person to comply with an order of the court or to enforce the rights of a private party to a lawsuit. *See id*. ¶ 25; *State ex rel. Bliss v. Greenwood*, 1957-NMSC-071, ¶ 6, 63 N.M. 156, 315 P.2d 223. A person held in civil contempt "carries the keys to his prison" and can end continuing contempt sanctions by complying with the court's orders. *Concha*, 2011-NMSC-031, ¶ 25 (internal quotation marks and citation omitted).
>
> Criminal contempt sanctions are imposed to punish the contempt defendant for a completed act of contempt and to preserve the dignity and authority of the court. *See Concha*, 2011-NMSC-031, ¶ 26; *Greenwood*, 1957-NMSC-071, ¶ 6.
>
> Whether a contempt proceeding is classified as criminal or civil will impact the procedures the court must follow. Because civil contempt sanctions are remedial and not intended to punish, the court may impose civil contempt sanctions "by honoring the most basic due process protections--in most cases, fair notice and an opportunity to be heard." *Concha*, 2011-NMSC-031, ¶ 25. …
>
> *Id*. A contempt proceeding can result in both civil and criminal contempt sanctions, *see State v. Pothier*, 1986-NMSC-039, ¶¶ 4-6, 104 N.M. 363, 721 P.2d 1294 (recognizing that both civil and criminal sanctions can be imposed for

contemptuous conduct), and this rule sets forth the procedures the court must follow if the court intends to pursue criminal contempt sanctions even if the court is also considering civil contempt sanctions.

The applicable procedures for a criminal contempt proceeding depend on whether the criminal contempt is direct or indirect. "Direct contempts are contemptuous acts committed in the presence of the court, while indirect contempts are such acts committed outside the presence of the court." *Concha*, 2011-NMSC-031, ¶ 24. If the contemptuous conduct has occurred in court and the judge has personal knowledge, based on perceiving the conduct, of the facts establishing all elements of the contempt, the court may follow the summary procedures for direct criminal contempt set forth in Paragraph C of this rule. However, before holding a person in direct criminal contempt, the judge in most cases still must give such person a warning to stop engaging in contemptuous behavior and an opportunity to explain the behavior. *See id.* ¶ 27 ("If feasible, even in summary proceedings for an act of direct contempt occurring in open court, an adequate opportunity to defend or explain one's conduct is a minimum requirement before imposition of punishment." (internal quotation marks and citation omitted)).

Importantly Rule 1-093 NMRA defines that "(1) "Contempt" or "contemptuous conduct" includes but is not limited to (a) disorderly conduct, insolent behavior, or a breach of peace, noise, or other disturbance, if such behavior *actually* obstructs or hinders the administration of justice or tends to diminish the court's authority; (b) misconduct of court officers in official transactions; or (c) disobedience of any lawful order, rule, or process of the court." Assuming, *arguendo*, that Plaintiff's actions to argue about the Court's rules with either the hearing officer or with Defendant Rossignol by making light of her demands that Plaintiff get an escort, were actionable as either civil or indirect criminal contempt, the Defendants were still required to follow the processes set forth in the law and rules.

But, what the Response betrays is that what Defendants are truly upset about and that animated the Defendants to issue administrative orders, to deny Plaintiff to entrance public hearings as a member of the press and to deny him access to services was the public backlash resulting from Plaintiff's constitutionally protected speech and press reporting brought to form by

the conduct of 3rd persons over whom Plaintiff has no control.  To wit, none of the emails or voicemails transmitted made to any of the Defendants that Defendants' supplied as evidence in support of their Response came from Plaintiff.  Nor is Plaintiff responsible for the conduct of the elected Mayor of Estancia.

To be sure, mean and offensive words by persons angered by the conduct of Defendants, and petitioning their government officials for a redress of those grievances, is uncomfortable and unpleasant.  But none of Plaintiff's speech directed at Defendants, that is uncontroverted before the Court, exceeds the boundaries of constitutional protection because it is *not* incitement, threats or fighting words under the Supreme Court's holdings.  Likewise, since at least 1997 and the Supreme Court's holding in *Reno v. ACLU*, the Defendants have not been in any sort of position to determine that Plaintiff is not a member of the press.  Again, a rudimentary review of Supreme Court holdings regarding rights under the First and Fourteenth Amendment would have guided the Defendants away from the actions they have taken in this matter instead of proceeding with punitive retaliatory actions to deprive Plaintiff of his rights.

### DEFANDANTS AGAIN MISCHARACTERIZE FACTUAL AVERMENTS OR RESORT TO OUTRIGHT FALSITIES IN THEIR RESPONSE

Defendants' Response is incorrect on certain factual statements or misconstrues certain facts which Plaintiff address and clarifies as follows:

1. Plaintiff has never harassed[1] or threatened[2] any Seventh Judicial District Court employee, nor does Defendant properly allege that Plaintiff has done so because the video evidence documents that he has not.[3]  What the videos do show is that Plaintiff

---

[1] In any typical use of that word.
[2] Again in any typical use of that word.
[3] The Moriarty incident of which Defendants claim harassment was, in fact, further attempted petitioning for redress of a grievance by Plaintiff, importantly no case stands for the proposition that outside of a courtroom that the Court may require that petitioning activity or speech to be polite or non-profane. *See Cohen v. California*, 403 U.S. 15, 91 S. Ct. 1780, 29 L. Ed. 2d 284 (1971)

encouraged other citizens that if they were displeased by the actions of their government to exercise their First Amendment rights to speech critical of their government and petitioning their government for redress, which is exactly the purpose for which the Founders adopted the First Amendment. *See* "Our First Amendment freedoms give us the right to think what we like and say what we please. **And if we the people are to govern ourselves, we must have these rights**, even if they are misused by a minority." (emphasis added) ~James Madison.

2. Again, contrary to the statement of Defendants, Plaintiff did not state that he deleted evidence. He stated that it was his practice to delete emails once read, *prior* to receiving the letter. He has not deleted evidence after receiving the litigation hold letter from Defendants and to state otherwise is false. *See* EX 1.

3. Mayor Dial is not an associate (whatever that term means to Defendants) of Plaintiff, Plaintiff has no authority or control over Mayor Dial's anymore than he does any other adult person.  Neither Mayor Dial, nor any other concerned citizen who has accompanied Plaintiff was in his employ or legally obligated to take direction from Plaintiff. *See* Exhibit 1 hereto, Declaration of James Springer.

4. Again, the statements by Mayor Dial and Plaintiff to NMSP about the court staff being unworthy of respect or the judiciary staying in their lane are matters of opinion and criticism of their governments' conduct which citizens have right to voice without fear of punishment from the government.

5. Defendants' statements about Plaintiff bringing a gun to court is an outright falsity, as clearly demonstrated by the video itself, *see also* EX 1, Defendants' blatant

misstatement of a material fact to the contrary borders on violative of the requirements of Rule 11.

### THE COURT HAS JURISDICTION OVER A REQUEST FOR INJUNCTIVE RELIEF BASED UPON THE NEW FACTS OCCURING AFTER THE INTERLOCUTORY APPEAL WAS TAKEN

Defendants' Response provides no authority that stands for the proposition that this Court does not have jurisdiction to address a request for an injunctive relief based upon facts that occurred after the appeal was taken and are not at issue in the pending appeal before the Tenth Circuit. As noted by the Defendants "[e]ven when an order is appealable, the district court is divested of control *only* over 'those aspects of the case involved in the appeal.'" *Barnes v. Sec. Life of Denver Ins. Co.,* No. 18-cv-718-WJM-SKC, 2019 WL 142113, at *2-3(D. Colo. Jan. 9, 2019)(quoting *Howard*, 150 F.3d at 1229). Thus, because Plaintiff's Second Motion is addressed to facts not involved in the appeal "the district court may proceed with the case." *Howard v. Mail-Well Envelope Co.*, 150 F.3d 1227, 1229 (10th Cir. 1998).

### PLAINTIFF'S MOTION DOES ASK THE COURT RECONSIDER ITS PRIOR DECISION BUT IT ASKS THE COURT TO DO SO ON THE BASIS OF FACTS THAT WERE NOT PLACED AT ISSUE IN THE FIRST MOTION OR HAD NOT OCCURRED BY THE TIME THE COURT DECIDED THAT MOTION AND ARE PROPER FOR CONSIDERATION NOW

In contrast to the Defendants' recognition that a motion for reconsideration under Rule 59(e) "gives the court an opportunity to correct manifest errors of law or fact **and to review newly discovered evidence,**" *Voelkel v. General Motors Corp*., 846 F. Supp. 1482, 1483 (D. Kan. 1994) (citing *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir.1992))(emphasis added), they refuse to acknowledge the new evidence of their subsequent conduct upon which the instant motion was made and they are, apparently, unfamiliar with Rule 60(b) which provides that "[o]n motion and just terms, the court may relieve a party or its legal

6

representative from a final judgment, order, or proceeding for the following reasons: … **(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Rule 60 Fed. R. Civ. P. So even if the Court treats the instant Motion as a motion for reconsideration, the motion is, in fact, proper under the rules and the Tenth Circuit's holdings.

### PLAINTIFF HAS MET THE REQUIREMENTS FOR AN INJUNCTION AND DEFENDANTS HAVE SUPPLIED <u>NO EVIDENCE</u> THAT CALLS INTO QUESTION THE EVIDENCE THAT SUPPORTS THAT INJUNCTION IS PROPER

The Defendants have supplied the Court with <u>no evidence</u> that they have not attempted to prevent Plaintiff from posting his reporting on YouTube. They baldly state that have not, but they provide the Court with no tangible or legitimate evidence they have not, whereas Plaintiff has supplied the Court with a Declaration made under penalty of perjury and documentary evidence that circumstantially supports that Defendants did just what he alleges they have done.

**A.     PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS**

Plaintiff has demonstrated that all of the actions taken against him, including the latest attempt to censor his press reporting were undertaken without providing him *any* procedural due process. On this issue alone, the Court should find that Plaintiff is likely to succeed on the rest of his claims and that an injunction prohibiting those actions is proper because Supreme Court recently reiterated that citizens are entitle to procedural due process when they are deprived of liberty stating:

> Here, the specific constitutional right allegedly infringed is procedural due process. A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process. See *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Importantly, the Court has stated that a procedural due process claim "is not complete when the deprivation occurs." *Id.*, at 126, 110 S.Ct. 975. Rather, the claim is "complete" only when "the State fails to provide due process." *Ibid.*

*Reed v. Goertz*, 598 U.S. 230, 236, 143 S. Ct. 955, 961, 215 L. Ed. 2d 218 (2023).  It is clear that Plaintiff is substantially likely to succeed on this threshold claim because he was not provided with procedural due process at any point which "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 901, 47 L. Ed. 2d 18 (1976).  It is, thus, clear that Defendants were required to provide Plaintiff "the opportunity to be heard 'at a meaningful time and in a meaningful manner'," *id.*at 333; *citing Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965), *before* they engaged in banning him from public hearings and courthouses or attempted to censor his speech or published reporting with which they disagreed.

**B.     DEFENDANTS CANNOT LEGITMATELY ARGUE THAT THEY WILL BE HARMED BY BEING REQUIRED TO FOLLOW THE CONSTITUTIONS AND THE LAW**

Plaintiff must ask this Court to ponder the absurdity of Defendants, that took oaths to faithfully uphold the laws and Constitutions of this Nation, asking the Court to excuse them from following the same because they would be injured based upon their made up or mischaracterized facts.  Plaintiff hopes the Court begins to wonder, as he does, whether or not Defendants are cut out to hold the positions of public service and authority they do when they advance these arguments.  To begin with, Plaintiff has never brought a gun into any Courthouse, that he has here is demonstrably false and seems to be an attempt to falsely engender the animus of this Court. *See* EX 1 and YouTube (November 13, 2023) at 7:02, EX E to the Response.  Second, Defendants cannot point to a violation of Court rules that has occurred after January and it is now almost December with their infringements upon his liberty still continuing.  Third, Plaintiff has *not* deleted evidence nor said that he was going to, that statement is false by Defendants. Fourth, soliciting law

enforcement to refuse to follow court rules or to arrest court staff for violations of law, or call a court clerk a prostitute out of satirical criticism for the unconstitutional administrative order she was attempting to enforce is **all** conduct protected, without question, by the First Amendment.

Even if the case can be made that the conduct protected the First Amendment is contemptable, what the Defendants have done here falls outside of that process and *broad jurisdiction grant* of district courts in New Mexico, because the only way that Court's may punish contempt to maintain order and decorum under that broad grant is to "punish contempts by reprimand, arrest, fine or imprisonment, being circumscribed by the usage of the courts of the United States." NMSA § 34-1-2. No where in that list of how they may punish contempt (provided in this instance that misconduct and contempt are *actually* the same thing) to maintain order and decorum is a grant that a district court may strip away fundamental liberties without providing due process. It simply is not a power that they have and therefore Defendants cannot claim to be harmed by having power over citizens that they do not lawfully possess taken away from them.

### C. TENTH CIRCUIT AND SUPREME COURT PRECEDENT CLEARLY INFORM DEFENDANTS OF HOW THEIR ACTION IRREPARBLY HARM PLAINTIFF

As stated in the instant Motion, Plaintiff will be harmed because he has been and will continue to be deprived of his fundamental liberties including his constitutional right to procedural due process.

### D. DEFENDANTS' RESPONSE FAILS TO ADDRESS CONTROLLING TENTH CIRCUIT PRECEDENT REGARDING THE PUBLIC INTEREST

Because Defendants provide no authority to contradict *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016) this Court should rightfully assume no such authority exists.

### E. WHETHER OR NOT THE RESTRICTION IS REASONABLE IS IRRELEVANT

One would hope that state district court judges would understand that restrictions of

fundamental liberties under long standing Supreme Court precedent requires that the Court examine the restriction under strict scrutiny, not a rational basis test. Plaintiff will not repeat that case law here as this Court is known to be well aware of those Constitutional analyses. Defendants do not, as a part of a state district court, possess the authority to legislate or enforce restrictions on liberty. They have the power of contempt and that limited process, but they have been delegated <u>no other authority</u> to restrict freedom of speech or press, thus, whether or not the restriction is reasonable enough to satisfy a rational basis test, much less to withstand strict scrutiny, is irrelevant because in most case government officials exceeding their delegated authortiy (i.e. ultra vires or arbitrary and capricious) to take action to strip fundamental liberties from a citizen is <u>unreasonable</u>. *See Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 169 (3d Cir. 2006).

## **CONCLUSION**

WHEREFORE, because the Response itself demonstrates the necessity of the injunctive relief sought herein the Court should grant the Motion and should award Plaintiff any other relief that the Court deems just and proper.

Respectfully submitted,

WESTERN AGRICULTURE, RESOURCE
AND BUSINESS ADVOCATES, LLP

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.
Jared R. Vander Dussen, Esq.
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
abdunn@ablairdunn-esq.com
warba.llp.jared@gmail.com


Zach Cook, LLC

*/s/ Zach Cook*

>Zach Cook
>1202 Sudderth # 425
>Ruidoso, NM 88345
>(575) 937-7644
>zach@zachcook.com

CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2023, I filed the foregoing via the CM/ECF causing all parties of record to be served electronically.

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.