# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JAMES SPRINGER,

        Plaintiff,

v.                                       No. 1:23-cv-00499-MIS-JMR

SEVENTH JUDICIAL DISTRICT COURT
MERCEDES MURPHY,
SHANNON MURDOCK-POFF,
JASON JONES, and SUSAN ROSSIGNOL,

        Defendants.

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C.A §1983; VIOLATIONS OF RIGHTS PROTECTED BY THE NEW MEXICO CIVIL RIGHTS ACT

COMES NOW Defendants Seventh Judicial District Court, Mercedes Murphy, Shannon-Murdock-Poff, Jason Jones, and Susan Rossignol (collectively hereinafter "Defendants"), by and through their counsel of record, Garcia Law Group, LLC (Bryan C. Garcia, Rodney L. Gabaldon, and Jade Delfin), and, in lieu of an Answer, hereby moves to dismiss Plaintiff's Amended Complaint for Declaratory Judgment and Injunctive Relief for Civil Rights Violations Under 42 U.S.C.A. § Violations of Rights Protected by the New Mexico Civil Rights Act[1].

## INTRODUCTION

This action arises from an incident that occurred on January 27, 2023 at the Seventh Judicial District Torrance County courthouse. On that day, James Springer ("Plaintiff") interrupted

---

[1] As required by D.N.M. LR Civ. 7.1(a), Defendants notified counsel of this motion prior to its filing. Due to the nature of this motion and Plaintiff's position on prior dismissal motions, it is presumed that this motion is opposed.

a hearing already in progress, without a mask as required by state mandate. and snuck a cellphone in the courtroom to secretly record his visit. As result of Plaintiff's misconduct, Chief Judge Mercedes Murphy ("Chief Judge Murphy") entered an Administrative Order and Amended Administrative Order (collectively, "Administrative Orders") limiting Plaintiff's presence in the Seventh Judicial District Courthouses to his own matters or specific court business, and with a law enforcement escort.

On June 9, 2023, Plaintiff filed his *Complaint for Declaratory Judgment and Injunctive Relief for Civil Rights Violations Under 42 U.S.C.A. § Violation s of Rights Protected by the New Mexico Civil Rights Act; Emergency Request for a Temporary Restraining Order; Request for Preliminary Injunction, Permanent Injunctive Relief and Damages* ("Complaint") [Doc. 1]. Plaintiff then filed his *Amended Complaint for Declaratory Judgment and Injunctive Relief for Civil Rights Violations Under 42 U.S.C.A. § Violation s of Rights Protected by the New Mexico Civil Rights Act* ("Amended Complaint") [Doc. 73] on November 27, 2023. In Plaintiff's Amended Complaint, Plaintiff alleges a claim under 42 U.S.C. § 1983 predicated on violations of the First Amendment rights for viewpoint discrimination, *id*. ¶¶ 33-34[2], a claim under 42 U.S.C. § 1983 predicated on substantive due process violations, *id*. ¶¶ 35-39; a claim under 42 U.S.C. § 1983 predicated on procedural due process violations, *id*. ¶¶ 40-45; and a violation of Article II, Sections 17, 18, and 23 of the New Mexico Constitution against Defendant Seventh Judicial District Court only, *id*. ¶¶ 46-49. In his prayer for relief, Plaintiff requests a declaratory judgment that the Administrative Orders are unconstitutional and that employees of the Seventh Judicial District Court have violated Plaintiff's rights. *Id*. at p. 12-13. Plaintiffs also seek actual and punitive

---

[2]       Plaintiff's Amended Complaint contains two paragraphs numbered 30, 31, and 32. Defendants' citation to paragraphs 30(2), 31(2), and 32(2) refer respectively to the second paragraph number, sequentially.

damages for their alleged injuries, and for preliminary and permanent injunctions against Defendants. *Id.* at p. 13.

Defendants seek dismissal of this case against them for the following reasons: Defendants are entitled to dismissal of Plaintiff's Complaint based upon lack of proper service, lack of jurisdiction, and lack of any factual allegations against any Seventh Judicial District official or employee upon which relief may be granted. Further, all claims against Mercedes Murphy, Shannon-Murdock-Poff, Jason Jones, and Susan Rossignol should be dismissed because Defendants are entitled to qualified immunity. Plaintiff's complaint should also be dismissed as a sanction for spoliation of evidence and harassment of Defendants and defense counsel. Finally, because Plaintiff's federals claims fail, this Court should decline supplemental jurisdiction over Plaintiff's state law claim.

## LEGAL STANDARD

The Court must dismiss a complaint under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted." "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id. See also Mocek v. City of Albuquerque*, 813 F.3d 912, 921 (10th Cir. 2015) (stating that in reviewing a 12(b)(6) motion, courts should "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable"). A court is under no mandate to accept a plaintiff's conclusory allegations. *Id.* ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). Nor is it under a mandate to "accept as true a legal conclusion couched as a factual

allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal quotations omitted). Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When examining a complaint under Rule 12(b)(6), the Court must determine "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). In doing so, the Court should "consider the complaint as a whole, along with the documents incorporated by reference into the complaint." *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1146 (10th Cir. 2015). Thus, the question that confronts the court in a Rule 12(b)(6) motion is not whether the plaintiff will ultimately prevail but whether the allegations entitle the plaintiff to offer evidence to support his claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). However, the Court may also properly consider facts for which it may take judicial notice, such as those facts which are a matter of public record. *Harjo v. City of Albuquerque*, 307 F. Supp. 3d 1163, 1185 (D.N.M. 2018) (Browning, J.) (quoting *GFF Corp. v. Associated Wholesale Grocers*, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997)).

Rules 12(b)(4) and 12(b)(5) allow a defendant to defend against a claim on the grounds of insufficiency of process and insufficiency of service of process. *See id*. A failure to serve a defendant as prescribed by Fed. R. Civ. P. 4 is a grounds for dismissal under Fed. R. Civ. P. 12(b)(4) and 12(b)(5). *See Whitsell v. United States*, 198 F.3d 260 (10th Cir. 1999) (holding because Rule 4 was not met, the district court was correct in finding that service was insufficient under Rules 12(b)(4) and 12(b)(5).).

## FACTUAL BACKGROUND

1.      At the beginning of 2023, the State of New Mexico had a mask mandate in effect for its courtrooms.[3] *See* [Doc.67-1, ¶4]. *See also* Affidavit of Jason Jones, ¶3, which is attached hereto as **Exhibit A**; a copy of the mask requirement sign is attached to Exhibit A as **Exhibit A-A**.

2.      The Seventh Judicial District Courthouses has also posted signed notifying visitors that recording devices, including cell phones, are prohibited. A copy of the prohibited items sign is attached to Exhibit A as **Exhibit A-B**.

3.      On or about January 27, 2023, Plaintiff entered a courtroom at the Seventh Judicial District Court to observe a hearing before Hearing Officer Gordon Bennett ("HO Bennett"). *See* [Doc. 25-2, ¶ 4]. *See also* [Doc. 29, Ex. A[4]], [Doc. 29, Ex. B[5]], [Doc.67-1, ¶6]. At this hearing, HO Bennett asked Plaintiff to put on a mask, identify himself, and whether he was recording with a cell phone. [Doc. 29, Ex. A at 4:04-6:45] and [Doc. 38, p. 3-4]. Plaintiff refused to put on a mask, to identify himself, and confirm that he was recording with a cell phone. *Id*. HO Bennett warned Plaintiff that if he continued his misconduct, he may charge Plaintiff with contempt. *Id.* Plaintiff left the courtroom, stating that he would be back. *Id.*

---

[3]      See Supreme Court of the State of New Mexico, *In the Matter of the Amendment of the New Mexico Judiciary Public Health Emergency Protocols for the Safe and Effective Administration of the New Mexico Judiciary During the COVID-19 Public Health Emergency*, Order No. 21-8500-015, available at https://www.nmcourts.gov/wp-content/uploads/2021/06/Order-No_-21-8500-015-and-Amended-PHE-Protocols-29-Jun 21.pdf#:~:text=NEW%20MEXICO%20JUDICIARY%20PUBLIC%20HEALTH%20EMERGENCY%20 PROTOCOLS%20EMERGENCY,Face%20Mask%20Requirements.%20On-Site%20Employees%20and%20Telework%20Procedures.

[4]      Available at https://www.youtube.com/watch?v=KZ-EhXuOZNM (last accessed December 11, 2023).

[5]      Available at https://www.youtube.com/watch?v=uuUvl-P2WLo&list=PLEHv5tmOgVtWcbMJjll2psTeZSGZsMRs0 (last accessed December 11, 2023).

4.     Plaintiff posted videos of his interactions with HO Bennett on his YouTube channel. [Doc. 73, ¶ 14], [Doc. 25-4, ¶ 4], and [Doc. 38, p. 4].

5.     Plaintiff asked the Torrance County Sheriff's Office whether they would be enforcing the mask mandate, who responded, "We're not going to enforce a mask mandate in the courtroom or anywhere else, okay." . [Doc. 29, Ex. A at 0:01] and [Doc. 38, FN 6].

6.     On February 28, 2023, Chief Judge Murphy entered an Administrative Order ("Administrative Order") in the interest of the safety and security of its Judges, Special Commissioners, Hearing Officers, and other Court personnel. *See* [Doc. 73, Ex. 1]. The Administrative Order further explained that Plaintiff is an obstinate visitor, is banned from the Torrance County District Court unless appearing for a hearing or having specific Court business, and must be escorted by the Torrance County Sheriff's Office while in the building. *Id.* [Doc. 73, ¶¶ 16-18]

7.     On March 1, 2023, Plaintiff received a letter notifying him that court staff were being harassed on his behalf and provided him a copy of the Administrative Order. [Doc. 73, ¶ 15, 19]. *See* [Doc. 73, Ex. 2].

8.     When Plaintiff visited the Torrance County courthouse in March 2023, the Court Clerk, Ms. Rossignol, asked Plaintiff where his law enforcement escort was, pursuant to the Administrative Order. *See* [Doc. 25-2, ¶ 4[6]]. Plaintiff responded, "Yeah, I'm pretty sure prostitution is illegal in New Mexico. I don't know if you're trying to solicit me right now but I don't appreciate it. As a matter of fact, I think I'll head over to the Sheriff's Department right now and let them

---

[6]     Available at https://www.youtube.com/watch?v=d-lFYUWxXoA (last accessed December 11, 2023). The video Court Clerk Tries to Force an Escort on Me [Doc. 29, Ex. C.], available at https://www.youtube.com/watch?v=HAh-9kQpq6A (last accessed December 11,2023), has been marked private from public viewing.

know that you're trying to solicit me. Is that what you're doing?" *Id.* Ms. Rossignol gave a copy of the Administrative Order to Plaintiff, who remarked, "I don't know what sua sponte is. I don't know what that is. I think it's something to do with the hooker that they're trying to have walk around the courthouse with me." *Id*. at 5:16.

9.      Plaintiff also entered the Moriarty Magistrate Court for non-court business. Court staff and personnel reported he was being disruptive and threatening in the courthouse. [Doc. 73, ¶ 23]. Specifically, Plaintiff refused to identify himself or sign it, demanded that Judge Craig Davis ("Judge Davis")"get his bitch ass out here", and used expletives while addressing court staff. *See* [Doc.67-1, ¶9].

10.      The Court amended the Order to include the courthouses in Torrance County, Catron County, Socorro County, and Sierra County. [Doc. 73, ¶ 22]. *See* Doc. 73, Ex. 3].

11.      On April 24, 2034, Plaintiff submitted an Inspection of Public Records Act ("IPRA") request calling Judge Davis a "man in black dress" and Chief Judge Murphy a "cunt". Plaintiff provided his request for a sample IPRA request on his YouTube channel. *See* [Doc.67-1, ¶11].

12.      On May 18, 2023, Plaintiff was removed from hearing over which Chief Judge Murphy was presiding. [Doc. 1, ¶¶ 25-26]. Plaintiff was removed due to his previous harassment of court judges and staff, as well for recording court proceedings in violation of Rule 23-107 NMRA and reposting edited versions on his YouTube channel. *See* [Doc.67-1, ¶13].

13.      On May 24, 2023, Judge Murdock-Poff entered an Order Excluding Presence in Cause No. D-722-DV-2019-00050, citing that Mr. Springer was still banned from the Torrance County Courthouse and specifically banning him from the hearing. [Doc. 1, ¶ 27].

14.    Due to Plaintiff's continued refusal to follow Court rules orders, the Seventh Judicial District Court sent Plaintiff a Notice of Order to Show Cause Hearing set for June 16, 2023. A copy of the Notice is attached hereto as **Exhibit E**. A week before the hearing, Plaintiff filed the present Complaint. Because they were named as Defendants in this matter, Chief Judge Mercedes Murphy ("Chief Judge Murphy") and Judge Shannon Murdock-Poff ("Judge Murdock-Poff") recused themselves from the state court proceedings.

15.    On June 9, 2023, Plaintiff filed his Complaint. [Doc. 1]. On November 27, 2023, Plaintiff then filed his Amended Complaint [Doc. 73].

16.    Plaintiff's Complaint named the Seventh Judicial District Court, Chief Judge Mercedes Murphy, Ms. Rossignol, Judge Shannon-Murdock-Poff ("Judge Murdock-Poff"), and Jason Jones ("Mr. Jones") as defendants. [Doc. 1, ¶¶ 2-6], [Doc. 73, ¶¶ 2-6].

17.    This Court noted that "Plaintiff asserts that he provided notice through e-mail to the Seventh Judicial District Court's proposed text e-mail" [Doc. 2, p. 1], and ordered "Plaintiff shall *serve* the complaint and summons, the TRO motion, and this order on the appropriate Defendants." *Id*. at 2.

18.    Plaintiff filed *Summons Returns* for the Seventh Judicial District Court ("7th JDC") alleging service through Susan Rossignol on June 9, 2023. [Doc. 2]; *Summons Returns* for Jason Jones ("Mr. Jones") alleging personal service at the Seventh Judicial Court on June 9, 2023. [Doc. 4]; *Summons Returns* for Chief Judge Mercedes Murphy ("Chief Judge Murphy") alleging personal service at the Seventh Judicial Court on June 9, 2023. [Doc. 5]; *Summons Returns* for Judge Shannon-Murdock-Poff ("Judge Murdock-Poff") alleging personal service at the Seventh Judicial Court on June 9, 2023. [Doc.6]; and *Summons Returns* for Susan Rossignol ("Ms.

Rossignol") alleging personal service at the Seventh Judicial Court in Estancia, New Mexico on June 9, 2023. [Doc. 8].

19.     On July 19, 2023, Plaintiff filed a *Certificate of Service* stating the Order Directing Service and Setting Briefing Schedule was served via Chief Judge Murphy proposed text email on June 21, 2023. [Doc. 12, p. 1].

20.     The Affidavit of Service by Micheal Tinker stated that the Order Directing Service and Setting Briefing Schedule was served on the Court Clerk at the Seventh Judicial Court in Estancia, New Mexico on June 9, 2023. *Id*. at 2.

21.     Chief Judge Murphy, Judge Murdock-Poff, and Mr. Jones were not served the original Complaint. *See* [Doc. 67, Ex. A, ¶¶ 21-22] and Exhibit A, ¶¶ 15-16. *See also* Affidavit of Shannon Murdock-Poff, ¶¶ 8-9, which is attached hereto as **Exhibit B**.

22.     On August 8, 2023, Plaintiff filed a *Notice of Completion of Briefing* on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. [Doc. 25].

23.     In support of the Notice, Plaintiff attached his *Declaration of James* Springer. [Doc. 25-2]. Two of the videos[7] Plaintiff referenced in his Declaration are no longer available[8].

24.     On August 15, 2023, undersigned counsel filed an *Entry of Appearance* for Defendants Seventh Judicial District Court, Mercedes Murphy, Shannon-Murdock-Poff, Jason Jones, and Suan Rossignol. [Doc. 26].

---

[7]     The video links referenced in the Declaration are https://youtube/Kli3llfmuTE and https://www.youtube.com/watch?v=MzrvNNlYpQI, which undersigned counsel last attempted to access on December 11, 2023.

[8]     This Court also noted that two of the videos in Plaintiff's Declaration were no longer available. [Doc. 38, FN 15].

25.     On August 21, 2023, the Court entered a *Second Order Amending Briefing Schedule* permitting Defendants to file a Response to Plaintiff's Application for Temporary Restraining Order. [Doc. 27]

26.     On August 29, 2023, counsel for Defendants served Plaintiff's counsel a preservation letter asking Plaintiff to preserve all evidence related to this matter. *See* [Doc. 29, Ex. D].

27.     The day after service of the preservation letter, Plaintiff stated that he deleted evidence. [Doc. 29, Ex. E, 13:32-14:33[9]].

28.     Defendants filed their Response on September 5, 2023. [Doc. 29]. Plaintiff filed his Reply on September 19, 2023. [Doc. 31]. The Court entered its *Order Denying Plaintiff's Request for a Temporary Restraining Order/Preliminary Injunction* on September 21, 2023. [Doc. 34. Plaintiff filed a Motion for Reconsideration on September 21, 2023. [Doc. 36]. After granting the reconsideration motion in part, the Court later entered an *Amended Order Denying Plaintiff's Request for a Temporary Restraining Order/Preliminary Injunction* on September 22, 2023. [Doc. 38].

29.     Since entry of the Administrative Orders, Plaintiff has continued to have access the Seventh Judicial District courthouse and continues to video record his visits. *See* [Doc. 67, Ex. A, ¶ 23]. *See also* chart of Plaintiff's YouTube Videos Related to the Seventh Judicial District, which is attached hereto as **Exhibit C**.

---

[9]     Available at https://www.youtube.com/watch?v=Jn1lb58AFdA, last accessed December 11, 2023.

30.     On October 31, 2023, Plaintiff demanded law enforcement to arrest court staff, and specifically Ms. Rossignol. [Doc. 67, Ex. F at 1:45:28 and 1:48:01].[10] Plaintiff also offered to reveal Ms. Rossignol's home address on his YouTube livestream. *Id.*

31.     On November 23, 2023, Plaintiff posted a video harassing undersigned counsel. *See* Fake News Network, "There are lawless thugs among us, they are called judges", YouTube (November 23, 2023)[11], starting at 1:00:12, which is attached hereto as **Exhibit D**. Plaintiff accused Chief Judge Murphy of being a liar, and writing defense counsel's pleadings for undersigned counsel's signature. *Id.* at 1:00:39. Plaintiff called undersigned counsel a "bitch", *id.* at 1:09:18, and repeatedly called undersigned counsel a liar throughout the video. Plaintiff also posted undersigned counsel's contact information[12] continuously in the live chat, encouraging his viewers to harass undersigned counsel.

32.     On or around November 25, 2023, Plaintiff used Chief Judge Murphy's likeness as a thumbnail for his video, "Judge, Are You Under the Influence? CASE DISMISSED!"[13] even though Chief Judge Murphy was not the judge discussed in the video. *See* Video Thumbnail, which is attached hereto as **Exhibit E**.

## LEGAL ARGUMENT

## I.     INCORPATION BY REFERENCE WITH RESPECT TO LACK OF SERVICE.

---

[10]     Available at https://www.youtube.com/watch?v=krTXlwzlKbw, last accessed December 11, 2023.

[11]     Available at https://www.youtube.com/watch?v=ZcD0fFJ9lt8, last accessed December 11, 2023.

[12]     The information was for undersigned counsel's prior firm, which Plaintiff later corrected in his video.

[13]     Available at https://www.youtube.com/watch?v=DlWcmTUht3s,  last accessed December 11, 2023.

The basis for Plaintiff's Amended Complaint [Doc. 73] is the largely same as his original Complaint [Doc. 1]. Therefore, Defendants incorporate their arguments from their Motion to Dismiss [Doc. 57] with respect to service. In summary, Defendants are entitled to dismissal of Plaintiff's Amended Complaint because Plaintiff has not effected service nor properly served the attorney general as required under the rules of service. Chief Judge Murphy, Judge Murdock-Poff, and Mr. Jones further assert that they have not been served. *See also* [Doc. 67, Ex. A, ¶¶ 21-22]; Exhibit A, ¶¶ 8-9; and Exhibit B, ¶¶ 15-16.

### III.   DEFENDANTS MERCEDES MURPHY, SHANNON-MURDOCK-POFF, JASON JONES, AND SUSAN ROSSIGNOL ARE ENTITLED TO DISMISSAL OF ALL CLAIMS AGAINST THEM BECAUSE PLAINTIFF FAILS TO ALLEGE HOW THEY PERSONALLY PARTICIPATED IN THE ACTIONS GIVING RISE TO PLAINTIFF'S CLAIMS.

"It is axiomatic that, to prevail on a damages claim for a constitutional violation pursuant to §1983, the plaintiff must show that the defendant, acting under color of state law, 'personally participated in the alleged violation.'" *Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 185, 1193 (10th Cir.2007) (quoting *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir.1996)). "The plaintiff must show the defendant personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation." *Jenkins*, 81 F.3d at 994. *See also Porro v. Barnes*, 624 F.3d 1322, 1327–28 (10th Cir.2010) ("To establish a violation of §1983...the plaintiff must establish a *deliberate, intentional* act on the part of the defendant to violate the plaintiff's legal rights.") (further quotations omitted) (emphasis added); *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir.2010).

The Tenth Circuit is clear that claims regarding cumulative "defendants" do not establish individual capacity personal participation. In *Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011), the Court evaluated a claim where an inmate pled guilty to false imprisonment and served time in

the correctional facility. When he was released, his probation officer directed him to register as a sex offender. The plaintiff sued to be removed from the sex offender registry and the sex offender section of the probation department; he prevailed. He then brought suit against the Secretary of Corrections and the probation officer in both their official capacities and their individual capacities. Among other rulings, the district court denied the Secretary's motion to dismiss. On appeal, the Tenth Circuit found that broad claims stated against groups of "defendants" did not establish individual capacity claims against the Secretary. In reversing the district court, the Tenth Circuit relied on *Iqbal* for the proposition that "it is particularly important that the complaint *make clear exactly who is alleged to have done what to whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id*. at 1163 (quotation removed) (emphasis added).

A review of the complaint illustrates a lack of allegations regarding the type of participation required to establish individual capacity liability. The complaint makes general, conclusory assertions for relief against Chief Judge Murphy, Judge Murdock-Poff, Mr. Jones, and Ms. Rossignol, but does not assert any factual claims of liability. Plaintiff does not identify specific actions, beyond conclusory allegations without supporting factual averments, taken by particular defendants that could form the basis of a constitutional violation.

It is difficult to understand against whom Plaintiff alleges his claims or what factual allegations support those claims. In Count I, Plaintiff alleges a claim under 42 U.S.C. § 1983 predicated on violations of the First Amendment rights to freedom of the press and speech. Plaintiff alleges that Chief Judge Murphy and Judge Murdock-Poff Murphy "engaged in viewpoint discrimination by banning and excluding Plaintiff from a public places and hearings prohibiting him attending and reporting on public matters." [Doc. 73], ¶ 31(2). However, the remaining

Defendants are not named in the Count I heading and Plaintiff did not plead any facts to support any claims against them. Nor are there any factual allegations pled in the Complaint concerning any First Amendment violations committed, only conclusory statements.

Plaintiff also alleges retaliatory actions but similarly fails to plead any factual allegations concerning retaliatory actions. It is unclear what actions Chief Judge Murphy and Judge Murdock-Poff Murphy took that could be characterized as "viewpoint discrimination" or what conduct were "retaliatory actions", much less how Plaintiff was allegedly injured. The First Amendment is violated when a governmental actor precludes constitutionally protected speech because of the viewpoint expressed. *See Pahls v. Thomas*, 718 F.3d 1210, 1230 (10th Cir. 2013) (discussing *mens rea* requirement); *Monteiro v. City of Elizabeth*, 436 F.3d 397, 404-05 (3rd Cir. 2006). Plaintiff has not pled facts that demonstrate how what how Defendants have precluded Plaintiff's speech nor what viewpoint his is not allowed to express. Accordingly, Plaintiff's claim fails and should be dismissed. Despite the harassment Defendants have experienced from Plaintiff., none of the Defendants, nor anyone on their behalf, has taken reported Plaintiff's YouTube videos. *See* [Doc. 67-1, ¶24], Exhibit A, ¶17; Exhibit A, ¶10.

In Count II, Plaintiff alleges a claim under 42 U.S.C. § 1983 predicated on substantive due process violations. *Id*. ¶¶ 31(2)-35. The heading in Count II does not specify which Defendants Count II is asserted against, but alleges that "Defendants' actions constitute deprivations of those rights contrary to substantive due process." *Id*. ¶ 34. While Plaintiff claims he was afforded no due process, he omits that there was a hearing scheduled on June 16, 2023 to address his misconduct at the Seventh Judicial District courthouses. Similar to Count I, there are no factual allegations pled in the Complaint concerning any substantive due violations committed, only conclusory

statements, and it is unclear what actions any Defendant took that could be characterized as such. Because Plaintiff has failed to state a claim, Count II should be dismissed.

In Count III, Plaintiff alleges a claim under 42 U.S.C. § 1983 predicated on procedural due process violations. *Id*. ¶¶ 36-41. Again, the heading in Count III does not specify which Defendants Count III is asserted against, but Chief Judge Murphy, Judge Murdock-Poff, Mr. Jones, and Ms. Rossignol are the only Defendants named in Count III. Plaintiff states that Administrative "Orders issued by Defendants Murphy, Murdock-Poff, Jones and Rossignol deprive Plaintiff his fundamental liberty interests in speech, press and petitioning without due process of law, based solely upon discretion of the Defendants." *Id*. ¶ 40. Similar to Counts I and II, there are no factual allegations pled in the Complaint concerning any procedural due violations committed, only conclusory statements, and it is unclear what actions any Defendant took that could be characterized as such. Accordingly, Plaintiff's claim fails and Count III should be dismissed.

The Complaint, as in *Brown*, "fails to isolate the allegedly unconstitutional acts of" these named defendants. *Id*. at 1165. Accordingly, for the reasons expressed in *Brown*, Plaintiff's Complaint fails to state a plausible claim against the individual capacity defendants because it lacks any substantive allegations that the individual capacity defendants took any individual act which deprived plaintiff of a constitutional right. Further, the complaint contains no allegation which meets the Tenth Circuit's test for personal participation, including knowledge, policy making, deliberate indifference, and personal conduct. Because the Amended Complaint contains broad, conclusory allegations, the claims fail to state an individual capacity claim, and the claims against Mercedes Murphy, Shannon-Murdock-Poff, Jason Jones, and Susan Rossignol should be dismissed.

## IV.   PLAINTIFFS' FEDERAL CLAIMS ARE BARRED BY QUALIFIED IMMUNITY.

Given Plaintiff's failures to state any valid claim for relief, Plaintiffs' request for damages necessarily fails as well. Even if Plaintiff did assert a valid claim against Defendants, which Defendants argue he has not, his request for damages based on federal claims are barred by qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citations omitted).

"After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001). Accordingly, the plaintiff must meet the following two-part burden: "the first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question whether the right was clearly established must be considered…" *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The *Saucier* procedure is no longer mandatory, and courts may address either prong of the *Saucier* test first. *Pearson*, 555 U.S. at 236. If the plaintiff fails to satisfy either part of the heavy two-part burden, the Court must find that the defendant is protected by qualified immunity. *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10 Cir. 2001).

If the facts alleged do not establish a constitutional violation, there is no need to proceed to the second step of the qualified immunity analysis. *Saucier*, 533 U.S. at 201. As discussed above, Plaintiff has failed to plead factual allegations to establish any constitution violations. Assuming, *arguendo*, if this Court were to find that Defendants violated Plaintiff's constitutional rights, "[t]he plaintiff carries the burden of convincing the court that the law was clearly established." *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988).

To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right….[T]here must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020) (internal quotation marks and citations omitted).

The United States Supreme Court has repeatedly reiterated that the clearly established prong is a fact-intensive inquiry. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017); *Mullenix v. Luna*, 136 S. Ct. 305, 308-09 (2015). "[C]learly established law" should not be defined "at a high level of generality." *White*, 137 S. Ct. at 548 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.*

Plaintiff has not pointed to any binding precedent or weight of persuasive authority demonstrating that a reasonable court official in Chief Judge Murphy, Judge Murdock-Poff, Mr. Jones, and Ms. Rossignol's positions would know that limiting Plaintiff's access to the Seventh Judicial District Court in light of his persistent misconduct would violate Plaintiff's rights. Pursuant to § 34-1-2, N.M.S.A. 1978, a court may "preserve order and decorum, and for that purpose to punish contempts by reprimand, arrest, fine or imprisonment, being circumscribed by the usage of the courts of the United States." *State v. Clark*, 56 N.M. 123, 241 P.2d 328 (1952). As demonstrated in the record, Plaintiff engaged in conduct that clearly violated court rules and disrupted the courts[14]. Accordingly, Defendants are entitled to qualified immunity as to Counts I,

---

[14] *See* New Mexico Courts, *Courtroom Conduct, Security, and Attire*, https://www.nmcourts.gov/ccsa/ (last visited December 11, 2023).

II, and III, and Plaintiff' federal claim for damages fails regardless of the merits underlying their claims.

## V.    PLAINTIFF'S STATE CONSTITUTIONAL CLAIM SHOULD NOT BE SUBJECT TO SUPPLEMENTAL JURISDICTION.

Count IV alleges a violation of Article II, Sections 17, 18, and 23 of the New Mexico Constitution against Defendant Seventh Judicial District Court only. *Id*. ¶¶ 42-45. Plaintiff states that Defendant violated his constitutional rights of freedom of speech, freedom of press, freedom of assembly, and due process. *Id*., ¶ 43. Similar to Counts I, II, and III, there are no factual allegations pled in the Complaint concerning any constitutional violations committed, only conclusory statements, and it is unclear what actions Defendant took that could be characterized as such. Because Plaintiff has failed to state a viable federal claim in Counts I, II, and III, those claims should be dismissed. Counts I, II, and III should also be dismissed because the individual capacity defendants are entitled to qualified immunity. This leaves Plaintiff's state law claim in Count IV. Even leaving qualified immunity aside, the Court should decline supplemental jurisdiction over Plaintiff's state law claims given Plaintiff's failure to bring any viable federal claims. *See Merrifield v. Bd. of Cty. Comm'rs*, 654 F.3d 1073, 1085 (10th Cir. 2011) (stating that a district court may decline supplemental jurisdiction when it has "dismissed all claims over which it has original jurisdiction" (quoting 28 U.S.C. § 1367(c)(3)).

## VI.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE THIS COURT DOES NOT HAVE JURISDICTION OVER THIS MATTER.

The *Rooker-Feldman* doctrine provides that United States District Courts "do not have jurisdiction…over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486, 103 S. Ct. 1303, 75 L. Ed. 2d 206

(1983); *See Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415-16, 44 S. Ct. 149, 68 L. Ed. 362 (1923).

Under the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate

jurisdiction over final state-court judgments. *Lance v. Dennis*, 546 U.S. 459, 463, 126 S. Ct. 1198,

163 L. Ed. 2d 1059  [*817]  (2006) (per curiam). If the state-court decision was wrong, "that did

not make the judgment void, but merely left it open to reversal or modification in an appropriate

and timely appellate proceeding." *Rooker v. Fidelity Trust Co*., 263 U.S. 413, 415, 68 L. Ed. 362,

44 S. Ct. 149 (emphasis added). Federal district courts lack the requisite appellate authority, for

their jurisdiction was "strictly original." *Id*. at 416. The doctrine applies to federal cases "brought

by state-court losers complaining of injuries caused by state-court judgments rendered before the

district court proceedings commenced and inviting district court review and rejection of those

judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517,

161 L. Ed. 2d 454 (2005).

     Here, Plaintiff is disputing a state court decision, specifically, the Administrative Orders

limiting his access to the Seventh Judicial District courthouses. His claim therefore depends on

this court finding that the state courts erred in entering the Orders. *Rooker-Feldman* prohibits such

review. *See Exxon Mobil Corp.*, 544 U.S. at 284. Although Plaintiff alleges claims under § 1983

and the New Mexico Constitution, he ultimately fails to state a federal claim. The basis for

Plaintiff's Complaint originates from the Administrative Orders limiting Plaintiff's presence in the

Seventh Judicial District Courthouses to his own matters or specific court business, and with a law

enforcement escort. Procedurally, the Orders should be reviewed by the New Mexico Court

Appeals and New Mexico Supreme Court. *See* Rule 12-201(A)(1)b) NMRA. *See also State v.

Morris*, 1961-NMSC-120, ¶ 5, 69 N.M. 89, 90-91, 364 P.2d 348, 349 ("In the absence of an express

statute or rule, no appeal will lie from anything other than a formal written order or judgment

signed by the judge and filed in the case or entered upon the records of the court and signed by the judge thereof.") .Instead, Plaintiff is attempting to appeal what is fundamentally a state claim to this Court. *Rooker-Feldman* prohibits such review and Plaintiff's complaint should be dismissed for lack of subject-matter jurisdiction.

## VII.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AS SANCTION FOR INTENTIONAL SPOLIATION OF EVIDENCE.

It is well-established that "litigants are under an obligation to preserve evidence when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Browder v. City of Albuquerque*, 209 F. Supp. 3d 1236, 1243 (D.N.M. 2016) (citation and internal quotations omitted). "Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007)). Furthermore, the "court has discretion to fashion an appropriate remedy depending on the culpability of the responsible party and whether the evidence was relevant to proof of an issue at trial." *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 862 (10th Cir. 2005).

A federal court has the inherent power to sanction a party who has abused the judicial process. *Chambers v. NASCO*, 501 U.S. 32, 44, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). The spoliation of evidence is one such abuse. *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 611 (S.D. Tex. 2010). Spoliation is the "destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp*., 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999))

A.        **Plaintiff Has a Duty to Preserve Evidence.**

"[A] party's duty to preserve arises when it has notice that the [evidence] might be relevant to a reasonably-defined future litigation." *Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1164 (D. Colo. 2015). While the duty to preserve evidence is often triggered by the filing of a lawsuit, this duty may arise earlier if a party knows or should have known that the material may be relevant to future litigation. *OTO Software, Inc.*, 2010 U.S. Dist. LEXIS 101516, 2010 WL 3842434, at *7 (*citing Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (the obligation to preserve evidence arises when a party should have known) *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000)). In determining whether a party's duty to preserve has been triggered, courts evaluate facts such as the likelihood that a certain kind of incident will result in litigation. Ultimately, a party's duty to preserve arises when it has notice that the documents might be relevant to a reasonably-defined future litigation.

The court's decision as to when a party was on notice must be guided by the particular facts of each case. *Cache La Poudre*, 244 F.R.D. at 621. Once it is established that a party's duty to preserve has been triggered, the inquiry into whether a party has honored its obligation to preserve evidence turns on reasonableness, which must be considered in the context of whether "what was done or not done was *proportional* to that case and consistent with clearly established applicable standards." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010) (emphasis in original).

Here, Plaintiff had sufficient notice of potential litigation because he is the party who initiated this lawsuit. Plaintiff contemplated litigation against the Seventh Judicial District, and publicly announced his intentions to do so. *See* James Freeman, *Court Retaliated Against me for*

*YOU exercising Rights*, YouTube (March 1, 2023), 3:46.[15] Consequently, Plaintiff had a duty to preserve his raw videos, edited videos, notes, and other potential evidence. Defendants listed evidence Plaintiff should preserve from that time forward. Nonetheless, Plaintiff publicly admits to spoliation the day after his counsel is served a preservation letter. [Doc. 29, Exhibit D at 14:22].

**B.    Plaintiff's Deletion of Evidence Demonstrates Culpability and Intent.**

Culpability refers to the "degree of fault to be assigned to the offending party." *Baker v. Cmty. Health Sys., Inc.*, No. CIV. 05-279 WJ/ACT, 2012 U.S. Dist. LEXIS 146865, 2012 WL 12294413, at *12 (D.N.M. Aug. 31, 2012). Courts have not been uniform in defining the level of culpability—be it negligence, gross negligence, willfulness, or bad faith—that is required before sanctions are appropriate for evidence destruction. *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 800 (N.D. Tex. 2011). "Culpability can range along a continuum from destruction intended to make evidence unavailable in litigation to inadvertent loss of information for reasons unrelated to the litigation." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 611, 613 (S.D. Tex. 2010).

The Tenth Circuit requires bad faith for spoliation of evidence. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997). The general rule is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction. *See Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985). Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case. *Vick v. Tex. Emp't Com, 514 F.2d 734, 737 (5th Cir. 1975)* Conversely, willfulness is equivalent to intentional, purposeful, or deliberate conduct. *Buckley v. Mukasey,* 538 F.3d 306, 323 (4th Cir.

---

[15]    Available at https://www.youtube.com/watch?v=DkALoekXxWQ, last accessed December 11, 2023.

2008). "While bad faith requires destruction for the purpose of depriving the adversary of the evidence, for willfulness, it is sufficient that the actor intended to destroy the evidence. *Id.* (internal quotation and citations omitted). Here, Plaintiff's publicly declared that he deleted evidence just after receiving a spoliation letter. The near-immediate timing of Plaintiff's spoliation conduct demonstrates it was intentional, purposeful, and deliberate. Such culpability rises to bad faith and willfulness.

C.      **Plaintiff's Spoliation of Evidence Prejudices Defendants.**

The moving party carries the burden "to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to his cause." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 104 (D. Colo. 1996). "At the same time, courts must be careful that the application of this burden is not too onerous, otherwise the spoliating party might be allowed to profit from its own misconduct." *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 801 (N.D. Tex. 2011).

Plaintiff's blatant destruction of evidence immediately after the preserved has prejudiced Defendants. Given Plaintiff's documented misconduct in the Seventh Judicial District, it is reasonable to infer that Plaintiff took down videos and deleted evidence which demonstrate additional acts of misconduct. Such the spoliation is highly prejudicial to Defendants because the spoliation denies Defendants access to evidence from which they may adequately develop defenses. Accordingly, Plaintiff's complaint should be dismissed as a sanction for intentional spoliation of evidence.

**VIII.  PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AS SANCTION FOR HARASSING DEFENDANTS AND DEFENSE COUNSEL.**

The analysis for dismissal utilizes a five-factor test taken from the dismissal-as-a-sanction framework for discovery violations. This "non-exhaustive list of factors helps guide the

determination of whether dismissal is an appropriate sanction." *King v. Fleming*, 899 F.3d 1140, 1149 (10th Cir. 2018) (citation omitted). Those factors are (1) "the degree of actual prejudice to the defendant" caused by the misconduct; (2) "the amount of interference with the judicial process"; (3) "the culpability of the litigant"; (4) "whether the court warned the [litigant] in advance that dismissal of the action would be a likely sanction for noncompliance"; and (5) "the efficacy of lesser sanctions." *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005)). The non-exhaustive factors consider the damage done, the culpability for that damage, and the impact of dismissing with prejudice. *See Ehrenhaus*, 965 F.2d at 921 ("These factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction.").

### A.      Degree of Prejudice to the Defendant

The more the misconduct prejudiced the opposing party, the more appropriate dismissal becomes as a sanction. *See Ehrenhaus*, 965 F.2d at 921. Plaintiff's misconduct necessitated the Administrative Orders requiring Plaintiff have a law enforcement escort while at the Seventh Judicial courthouses. Since the filing of Plaintiff's Complaint, Defendants have been forced to litigate a case wherein Plaintiff makes mockery of court rules and decorum, and harasses court staff. Plaintiff further posted a video with a thumbnail insinuating Chief Judge Murphy was intoxicated at hearing. Upon review of the video, it is evident that the subject of the video is not Chief Judge Murphy. Nonetheless, Plaintiff using Chief Judge Murphy's likeness in this manner is prejudicial against Defendant. Plaintiff's continued harassment of Defendant undeniably prejudices Defendants:

### B.      Interference with the Judicial Process

"The second factor . . . is the amount of interference with the judicial process." *Jones v. Thompson*, 996 F.2d 261, 265 (10th Cir. 1993). Greater degrees of obstruction help justify a dismissal sanction. In his November 23, 2023 video, Plaintiff accused Chief Judge Murphy of writing defense counsel's pleadings for undersigned counsel's signature, undersigned counsel a "bitch", and repeatedly called Defendants and defense counsel liars. Plaintiff further posted undersigned counsel's contact information, encouraging his viewers to harass undersigned counsel[16]. Harassing defense counsel and inviting others to do the same interferes with the judicial process because counsel must turn attention to ensuring personal safety from the other party, in addition to litigation.

### C.        Culpability of the Litigants

"A litigant's culpability is the third factor"—the greater the culpability, the more appropriate a dismissal sanction becomes. *Jones*, 996 F.2d at 265. Here, Plaintiff has asked law enforcement to wrongfully arrest Ms. Rossignol; the officer declined to do so because Ms. Rossignol had not committed a crime. Plaintiff's video with a thumbnail insinuated that Chief Judge Murphy was intoxicated at hearing, when that was not true. Plaintiff has called Defendants, employees of the Seventh Judicial District, and defense counsel expletives unbefitting to the decorum of the Seventh Judicial District Court and of this Court. Since Plaintiff's refusal to wear

---

[16]         This kind of conduct is described as doxing. *Vangheluwe v. Got News, LLC* explained:

"[D]oxing" (sometimes spelled "doxxing") is short for "dropping documents." *See* Mat Honan, Wired, What is Doxing?, https://www.wired.com/2014/03/doxing/ (Mar. 6, 2014). The practice involves "using the Internet to source out and collect someone's personal and private information and then publicly releasing that information online." Beth Brindle, *HowStuffWorks: What is Doxxing?*, https://bit.ly/2RAb86E (last visited Jan. 19, 2019). The "goal of doxxing is typically retribution, harassment or humiliation."*Id.*

*Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 850, 858-59 (E.D. Mich. 2019)

a mask in at the January 2023 hearing before H.O. Gordan, Plaintiff's behavior has escalated to the point of doxing defense counsel. Therefore, dismissal would be an appropriate sanction.

### D.    Warning

"The fourth factor asks whether the litigant was warned in advance that dismissal was a likely sanction." *Xyngular v. Schenkel*, 890 F.3d 868, 874 (10th Cir. 2018) (internal quotes omitted). Where the court had warned of dismissal, a dismissal sanction is more appropriate. *See id*. at 874-75 (holding that dismissal for pre-litigation misconduct does not necessarily require prior warning). Defendants acknowledge that the Court has not yet issued a warning to Plaintiff but asserts that the remaining factors weigh in favor of dismissal.

### E.    Efficacy of a Lesser Sanction

Because "dismissal is a severe sanction and is not ordinarily warranted if lesser sanctions would be effective," courts must consider, as the fifth and final factor, the potential efficacy of lesser sanctions. *Jones*, 996 F.2d at 265 (citing *Ehrenhaus*, 965 F.2d at 922). Where lesser sanctions would be effective, a dismissal sanction is less likely to be justified. Given the escalation of Plaintiff's misconduct, a lesser sanction seems unlikely to deter further harassment. Therefore, dismissal would be justified.

### CONCLUSION

Plaintiff has not met his burden to show service on a designated registered agent, the chief executive officer, and/or any other person authorized by law to accept service of process, nor on the New Mexico Attorney General. Further, Plaintiff's complaint does not assert any factual allegations against any Seventh Judicial District official or employee upon which relief may be granted. Importantly, Defendants Mercedes Murphy, Shannon-Murdock-Poff, Jason Jones, and Susan Rossignol are also entitled to qualified immunity. Because Plaintiff's federals claims fail,

this Court should decline supplemental jurisdiction over Plaintiff's state law claim. The *Rooker-Feldman* also prohibits this Court from reviewing state decisions. Finally, Plaintiff has also intentionally spoliated evidence in bad faith, as well as harassed Defendants and defense counsel; Plaintiff should be sanctioned accordingly. For the reasons described above, Defendants are entitled to dismissal of Plaintiff's Complaint.

**WHEREFORE**, Defendants Seventh Judicial District Court, Mercedes Murphy, Shannon-Murdock-Poff, Jason Jones, and Suan Rossignol request that this Court dismiss Plaintiff's Complaint for Declaratory Judgment and Injunctive Relief for Civil Rights Violations Under 42 U.S.C.A. § Violation s of Rights Protected by the New Mexico Civil Rights Act;  award Defendants their costs and fees associated with responding to Plaintiffs' Complaint, and grant all other relief this Court deems just and proper.

Respectfully submitted,

**GARCIA LAW GROUP, LLC**

*/s/ Jade Delfin*
Bryan C. Garcia
Rodney L. Gabaldon
Jade Delfin
*Attorneys for Defendants*
6739 Academy Road NE, Suite 200
Albuquerque, NM 87109
(505) 629-1576 / (505) 652-1337 (fax)
bgarcia@garcialawgroupllc.com
rgabaldon@garcialawgroupllc.com
jdelfin@garcialawgroupllc.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CMECF on this the 11th December, 2023, which caused service to all counsel of record.

*/s/ Jade Delfin*
Jade Delfin