**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JAMES SPRINGER,

     Plaintiff,

v.

                                 Case 1:23-cv-0499-MIS-JMR

SEVENTH JUDICIAL
DISTRICT COURT,
MERCEDES MURPHY,
SHANNON MURDOCK-POFF,
JASON JONES, and
SUSAN ROSSIGNOL,

     Defendants.

## ORDER DENYING PLAINTIFF'S OPPOSED SECOND MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

THIS MATTER is before the Court on Plaintiff James Springer's Opposed Second Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 65, filed November 7, 2023. Defendants Seventh Judicial District Court, Mercedes Murphy, Shannon Murdock-Poff, Jason Jones, and Susan Rossignol filed a Response on November 21, 2023, ECF No. 67, to which Plaintiff filed a Reply on November 29, 2023, ECF No. 75. Upon review of the Parties' submissions, the record, and the relevant law, the Court **DENIES** the Motion.

### I.     Background

According to the Amended Complaint, "Plaintiff is an independent investigative journalist who produces content intended to expose to the general public cases of government fraud, waste,

and abuse." ECF No. 73 ¶ 8(2).[1]  Plaintiff displays the content on a YouTube channel he operates called James Freeman, which has approximately 440,000 subscribers.  Id. ¶¶ 11-12.

In February 2023, Plaintiff posted one or more videos featuring interactions with a domestic relations hearing officer in the Seventh Judicial District Court for Torrance County, as well as with court personnel and employees of the Torrance County Sheriff's Office.  Id. ¶ 14.

On February 28, 2023, the Chief Judge of the Seventh Judicial Circuit, Defendant Mercedes C. Murphy ("Chief Judge Murphy"), issued an Administrative Order "in the interest of the safety and security of Judges, Special Commissioners, Hearing Officers, and other Court personnel," barring Plaintiff from entering the Torrance County District Courthouse in Estancia, New Mexico, "unless appearing for a hearing or having specific Court business, in which cases [Plaintiff] shall be escorted and accompanied by the Torrance County Sheriff's Office, while in the building."  ECF No. 73-1 ("Administrative Order"); see also ECF No. 73 ¶ 19.  The Administrative Order requires that upon entering the Torrance County District Courthouse, Plaintiff shall enter the Sheriff's Office and identify himself "as being an obstinate visitor . . . alerting law enforcement that he must be escorted and accompanied pursuant to this Order, effective March 1, 2023."  ECF No. 73-1.

On March 1, 2023, two officers with the New Mexico State Police delivered a copy of the Administrative Order to Plaintiff.  ECF No. 73 ¶ 15.

On March 23, 2023, Chief Judge Murphy entered an Amended Administrative Order barring Plaintiff from entering other courthouses within the Seventh Judicial District, and specifically those in Torrance County, Catron County, Soccoro County, and Sierra County, "unless

---

[1]  The Amended Complaint contains two paragraphs numbered "8."  ECF No. 73.  The Court's citation to paragraph 8(2) refers to the second paragraph 8, sequentially.

appearing for a hearing or having specific Court business, in which cases [Plaintiff] shall be escorted and accompanied by the law enforcement, while in any of the buildings." ECF No. 73-3 ("Amended Administrative Order"); see also ECF No. 73 ¶ 21.

On May 18, 2023, Plaintiff attempted to attend a public hearing "as [a] member of the press to report on the case in a criminal matter before the Honorable Mercedes Murphy by way of a video conferencing platform." Id. ¶ 25. "After dialing in to the public hearing via the video conferencing platform, Judge Murphy summarily ejected Plaintiff from the video conferencing platform and from the public hearing without providing Plaintiff notice and an opportunity to be heard on the matter of whether he could attend the public hearing." Id. ¶ 26.

On May 24, 2023, "Judge Shannon Murdock-Poff issued an order . . . excluding Plaintiff from a hearing in a civil matter . . . that Plaintiff planned to attend as a member of the press and the public." Id. ¶ 27 (citing Order Excluding Presence, Luna v. Cooke-Lovato, Case No. D-722-DV-2019-00050 (7th Jud. Dist. Ct. (Torrance Cnty.) May 24, 2023), ECF No. 73-5).

On multiple dates, Defendant Susan Rossignol "has either refused service in the clerk's office or has required police presence to harass and intimidate Plaintiff when he entered the Estancia District Court house [sic] for the purpose of conducting court business associated to making records requests." Id. ¶ 28. On June 8, 2023, Ms. Rossignol had a Sheriff's Deputy remove Plaintiff from the courthouse. Id.

On June 9, 2023, Plaintiff filed the original Complaint in this matter which contains the allegations recited above. ECF No. 1 ¶¶ 8-28. The Complaint alleged violations of the First Amendment to the United States Constitution, violations of Plaintiff's constitutional rights to substantive and procedural due process, and violations of the New Mexico Constitution. ECF No. 1 ¶¶ 29-41. The Complaint requested a temporary restraining order and a preliminary and

permanent injunction prohibiting Defendants from enforcing the Administrative Orders, issuing

any further orders, or "taking any action to ban or exclude Plaintiff from any public space or

hearing or to deny him any service afforded to the public included but not limited to requesting

records." Id. at 10.   Plaintiff incorporated into his Complaint a Request for a Temporary

Restraining Order ("First Request for a Temporary Restraining Order/Preliminary Injunction").

Id. at 11-15.

On September 22, 2023, the Court issued an Amended Order Denying Plaintiff's First

Request for a Temporary Restraining Order/Preliminary Injunction.  ECF No. 38.  The Court found

> that Plaintiff failed to satisfy his burden of establishing a substantial likelihood of
> success on the merits of his claims.  Plaintiff's Motion wholly failed to identify the
> elements of his causes of action, much less demonstrate a substantial likelihood that
> the facts of this case satisfy those elements.  Nor did he cite any legal authority
> supporting his claims, which is grounds alone for denying the Motion.  D.N.M.LR-
> Civ. 7.3(a) ("A motion, response or reply must cite authority in support of the legal
> positions advanced."); Quarrie v. Wells, Civ. No. 17-350 MV/GBW, 2020 WL
> 2526629, at *4 (D.N.M. May 18, 2020) (denying motion for failure to cite any
> supporting authority in violation of Local Rule 7.3(a)); JL v. N.M. Dep't of Health,
> 165 F. Supp. 3d 1048, 1069 (D.N.M. Feb. 24, 2016) (same).  And at least one court
> addressing similar facts has determined that restricting an individual's access to a
> courthouse due to disruptive behavior did not constitute a violation of the
> individual's First and Fourteenth Amendment rights.  See Mead v. Gordon, 583 F.
> Supp. 2d 1231, 1238-43 (D. Or. 2008).  See also Huminski v. Corsones, 396 F.3d
> 53, 86-87 (2d Cir. 2005) ("[C]ourt administrative, judicial, and other officials must
> at least have the ability to close the courtroom door to any person whom they
> reasonably think may pose a threat to person, property, or decorum.  A potential
> spectator may be excluded from a courtroom on a simple issue of propriety:
> reasonably unacceptable dress, unruly behavior, efforts inappropriately to
> communicate views in the courtroom, possession of personal property banned from
> the court (e.g., cell phones, cameras, or recording devices), and the like.").
>
> In his Reply brief, Plaintiff argues—for the first time—that Defendants' actions
> constitute a "prior restraint" on the freedom of speech,[2] and he is substantially likely
> to succeed on the merits of his claims because "'[a]ny system of prior restraints of
> expression comes to th[e] Court bearing a heavy presumption against its

---

[2]        Neither the Complaint nor the Motion characterize Defendants' actions as a "prior restraint" on speech.

constitutional validity.'"  ECF No. 33 at 5 (quoting Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70 (1963)).  However, assuming arguendo that this argument is properly before the Court, see Reedy v. Werholtz, 660 F.3d 1270, 1274 (10th Cir. 2011) ("[A] party waives issues and arguments raised for the first time in a reply brief"), Plaintiff cites no authority supporting his argument that the Defendants' actions in this case constitute a prior restraint on speech or expression.  Neither the Administrative Order, the Amended Administrative Order, the Order Excluding Presence, Chief Judge Murphy's act of excluding Plaintiff from the video teleconference hearing, nor Ms. Rossignol's alleged [act] of refusing to serve Plaintiff in the Clerk's Office actually restrain Plaintiff's speech or expression.  Rather, they restrain his access to court hearings and files.  Plaintiff has cited no authority—binding or persuasive—holding that restricting an individual's access to court hearings and documents constitutes a prior restraint on speech or expression in violation of the First Amendment.  See Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 399 (1979) (Powell, J., concurring) (finding that an order excluding the press from a courtroom "differs substantially" from a "gag order" prohibiting the press from publishing information already in their possession, which is "a classic prior restraint"); Resnick v. Patton, 258 F. App'x 789, 792 (6th Cir. 2007) (finding that a judge's refusal to permit the press to access a case file while the case was pending did not constitute a prior restraint on speech) (citing Application of NBC, Inc., 828 F.2d 340, 343 (6th Cir. 1987) ("This is not a prior restraint case. NBC is not restrained by the district court's order from publishing or broadcasting documents or information in its possession.  Rather, the case concerns the right of the public and representatives of 'the media' to have access to documents filed in a district court at the preliminary stages of a criminal prosecution.")); United States v. Cianfrani, 573 F.2d 835, 861 (3d Cir. 1978) (finding that limiting the media's access to a pretrial suppression hearing did not constitute a prior restraint on speech and did not violate the First Amendment).

For these reasons, Plaintiff has failed to carry his burden of establishing a substantial likelihood of success on the merits of his claims.  See Van Dyke v. Retzlaff, Civil Action No. 4:18-CV-247, 2020 WL 1693023, at *3 (E.D. Tex. Apr. 7, 2020) (finding that the plaintiff failed to show a substantial likelihood of success on the merits where he offered only conclusory allegations and cited no case law in support of his claims); White v. Alcon Film Fund, LLC, 955 F. Supp. 2d 1381, 1383 (N.D. Ga. 2013) (finding that the plaintiff's conclusory statement that he had shown a substantial likelihood of success on the merits, "bereft of any legal support, is plainly insufficient to carry [his] burden of showing a substantial likelihood of success on the merits of his claims").

Because Plaintiff failed to establish a substantial likelihood of success on the merits, the Court must deny his Motion.

Id. at 11-13.  Plaintiff has appealed the Court's Amended Order Denying Plaintiff's First Request for a Temporary Restraining Order/Preliminary Injunction.  ECF No. 39.  That appeal is currently pending in the United States Court of Appeals for the Tenth Circuit.  See Springer v. Seventh Jud. Dist. Ct., et al., Case No. 23-2158 (10th Cir. filed Oct. 3, 2023).

On September 29, 2023, Plaintiff filed a Motion for Stay and Injunction Pending Appeal. ECF No. 42.  On October 30, 2023, the Court issued an Order Denying Plaintiff's Motion for Stay and Injunction Pending Appeal because the Motion "wholly fail[ed] to identify [the factors regulating the issuance of a stay and injunction pending appeal], much less apply them to the facts of this case (or otherwise address, analyze, or prove them)[,]" ECF No. 62 at 6, was "entirely devoid of legal or factual analysis[,]" id. and "cite[d] no supporting authority[,]" id. at 7.

On November 7, 2023, Plaintiff filed the instant Second Motion for Temporary Restraining Order and Preliminary Injunction.  ECF No. 65.

On November 27, 2023, Plaintiff filed an Amended Complaint alleging four causes of action:

- Count I alleges a claim under 42 U.S.C. § 1983 predicated on violations of the First Amendment rights to freedom of the press and speech (which Plaintiff characterizes as "Viewpoint Discrimination"[3]),[4] id. ¶¶ 33, 30-34;[5]

---

[3]     It is unclear from the Amended Complaint, the Motion, and Reply what "viewpoint" Defendants are allegedly discriminating against.

[4]     The Amended Complaint does not specify which Defendants Count I is asserted against, but Chief Judge Murphy and Judge Murdock-Poff are the only Defendants named in Count I.

[5]     Count I of the Amended Complaint contains five paragraphs, numbered 33, 30, 31, 32, and 34, in that order.  The "General Allegations" Section also contains paragraphs numbered 31 and 32 which are different than the Paragraphs numbered 31 and 32 in Count I.

- Count II alleges a claim under 42 U.S.C. § 1983 predicated on unidentified substantive due process violations,[6] id. ¶¶ 35-39;

- Count III alleges a claim under 42 U.S.C. § 1983 predicated on procedural due process violations,[7] id. ¶¶ 40-45;

- Count IV alleges a violation of Article II, Sections 17, 18, and 23 of the New Mexico Constitution against Defendant Seventh Judicial District Court only, id. ¶¶ 46-49.

ECF No. 73. The Amended Complaint generally contains the same allegations as the original Complaint, and also includes the following new allegations:

"On October 31, and November 1, 2023, Plaintiff entered the public areas of the Torrance County Courthouse facility in fully [sic] compliance with the 7th Judicial District Court's Administrative orders at issue in this matter and made several videos as part of his reporting and as expressive conduct." Id. ¶ 29 (citing James Freeman, Picking Up Papers, Court Still Retaliating Against Me For Exposing Gordon Bennet, YouTube (posted Nov. 1, 2023), available at https://www.youtube.com/watch?v=QUhGqPBXzF4&t=1s (last visited Dec. 11, 2023); James Freeman, District 7 Court is Out Of Control Still And Sheriff's "Open Door Policy" = Locked Door, YouTube (posted Oct. 31, 2023)). "In retaliation for Plaintiff's reporting and protected speech contained in the first video noted in the paragraph above, upon information and belief, the Defendants or employees of the Defendants acting at their direction conspired to have YouTube censor Plaintiff's video resulting in the following:

---

[6]     The Amended Complaint does not specify which Defendants Count II is asserted against, but alleges that "Defendants' actions constitute deprivations of those rights contrary to substantive due process." Id. ¶ 34. Thus, Count II appears to be asserted against all Defendants.

[7]     The Amended Complaint does not specify which Defendants Count III is asserted against, but Chief Judge Murphy, Judge Murdock-Poff, Mr. Jones, and Ms. Rossignol are the only Defendants named in Count III.



Hi James Freeman,

We wanted to let you know our team reviewed your content, and we think it violates our **spam, deceptive practices and scams policy**. We know you may not have realized this was a violation of our policies, so we're not applying a strike to your channel. However, we have removed the following content from YouTube:

**URL:** https://g.co/kgs/9s85dM
**Location where URL was found:** Picking Up Papers, Court Still Retaliating Against Me For Exposing Gordon Bennet

We realize this may be disappointing news, but it's our job to make sure that YouTube is a safe place for all. If you think we've made a mistake, you can appeal this decision - you'll find more details below.

## What our policy says

If an external link goes to a site that contains spam, scams, and other deceptive practices it's not allowed on YouTube.

Id. ¶ 30.  Plaintiff alleges that he "successfully appeal[ed]" YouTube's decision, "but upon information and belief, understand that that [sic] Defendants will continue to undertake these actions censor [sic] Plaintiff's reporting and speech unless enjoined by this Court." Id. ¶ 32.

Although the Amended Complaint does not specify how Defendants allegedly "conspired to have YouTube censor Plaintiff's video[,]" id. ¶ 30, Plaintiff attached a Declaration to the instant Motion asserting that, "[u]pon information and belief, the review that prompted action by YouTube to remove the video was initiated by Seventh Judicial District employees identifying as the same and coercing YouTube to take it down by falsely flagging the video I had made on the first of November that was critical of the actions of the Seventh Judicial District Court." ECF No. 65-1 ¶ 8.

Plaintiff's Second Motion for Temporary Restraining Order and Preliminary Injunction seeks an order enjoining enforcement of Chief Judge Murphy's Administrative Orders and, additionally, "prohibiting Defendants or any employee acting at their behest from communicating or seeking to have any social media platform moderate or remove Plaintiff's postings." ECF No. 65 at 11-12.

## II.    Legal Standard

"A preliminary injunction is an extraordinary remedy; it is the exception rather than the rule." GTE Corp. v. Williams, 731 F.2d 676, 678 (10th Cir. 1984).  As such, it "may only be awarded upon a clear showing that the [movant] is entitled to such relief." Winter v. Nat. Resources Def. Council, Inc., 555 U.S. 7, 22 (2008).  See also Planned Parenthood of Kan. v. Andersen, 882 F.3d 1205, 1223 (10th Cir. 2018) ("Preliminary injunctions are extraordinary remedies requiring that the movant's right to relief be clear and unequivocal.").

> To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

Gen. Motors Corp. v. Urban Gorilla, LLC, 500 F.3d 1222, 1226 (10th Cir. 2007).  A party seeking a preliminary injunction must demonstrate that "all four of the equitable factors weigh in its favor," Sierra Club, Inc. v. Bostick, 539 F. App'x 885, 888 (10th Cir. 2013), and a "plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted[,]" Vill. of Logan v. U.S. Dep't of Interior, 577 F. App'x 760, 766 (10th Cir. 2014). See also Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC, 562 F.3d 1067, 1070 (10th Cir. 2009) ("To prevail on a motion for a preliminary injunction, the movant must establish that four equitable factors weigh in its favor . . . .").

Moreover, three types of preliminary injunctions are disfavored and require a movant to satisfy a heightened standard.  Colorado v. U.S. Env't Prot. Agency, 989 F.3d 874, 883 (10th Cir. 2021) (citing N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior, 854 F.3d 1236, 1246 n.15 (10th Cir. 2017)).  "They are '(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.'" Id. at 883-84 (quoting N.M. Dep't of Game & Fish, 854 F.3d at 1246 n.15) (quoting Fish v. Kobach, 840 F.3d 710, 723-24 (10th Cir. 2016)).  "When seeking a disfavored injunction, the movant 'must make a strong showing' both on the likelihood of success on the merits and on the balance of the harms." Id. (quoting O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 976 (10th Cir. 2004)).

### III.    Discussion

Plaintiff argues that all four factors weigh in favor of a preliminary injunction.  ECF No. 65 at 7-11.  He seeks an order enjoining enforcement of Chief Judge Murphy's Administrative Orders and "prohibiting Defendants or any employee acting at their behest from communicating or seeking to have any social media platform moderate or remove Plaintiff's postings."  ECF No. 65 at 11-12.

In their Response, Defendants argue that: (1) the Court lacks jurisdiction to consider the instant Motion because Plaintiff's appeal of the Court's Amended Order Denying his First Request for a Temporary Restraining Order/Preliminary Injunction is currently on appeal, ECF No. 67 at 7-8; (2) the instant Motion is an improper motion for reconsideration, id. at 8-10; (3) Plaintiff has failed to meet the heightened standard for a disfavored injunction, id. at 10-12; (4) all four factors relevant to the Court's inquiry weigh against an injunction, id. at 12-15; and (5) the restrictions imposed by the Administrative Orders are reasonable, id. at 15-16.

In his Reply, Plaintiff argues that: (1) the Court has jurisdiction to consider the Motion because it is based upon new events that occurred after he filed the appeal, ECF No. 75 at 6; (2) the Motion is asking the Court to reconsider its prior decision based upon facts that had not occurred at the time the Court decided the First Request for a Temporary Restraining Order/Preliminary Injunction, id. at 6-7; (3) all four factors weigh in favor of an injunction, id. at 7-9; and (4) the reasonableness of the restrictions imposed by the Administrative Orders is irrelevant because restrictions on fundamental liberties are analyzed under strict scrutiny, id. at 9-10.

### a. Jurisdiction

Initially, the Court finds that it lacks jurisdiction to consider the instant Motion to the extent it challenges Chief Judge Murphy's Administrative Orders.  "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."[8]  Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982); see also Stewart v. Donges, 915 F.2d 572, 574 (10th Cir. 1990).

Plaintiff's First Request for a Temporary Restraining Order/Preliminary Injunction sought an order enjoining enforcement of the Administrative Orders barring him from the courthouses of the Seventh Judicial District Court, unless appearing for a hearing or having specific Court business.  See ECF No. 1 at 11 (seeking "a temporary restraining order to prohibit individual Defendants from enforcing the administrative orders at issue, issuing any further orders or taking any action to ban or exclude Plaintiff from any public space or hearing or to deny him any service afforded to the public included but not limited to requesting records"); see also id. (seeking "a preliminary and permanent injunction to prohibit Defendants from enforcing the administrative orders or promulgating new ones that prohibit Plaintiff from entering public spaces or attending public hearings without first affording him due process of law").  The Court issued an Amended Order denying the First Request for a Temporary Restraining Order/Preliminary Injunction, ECF No. 38, and Plaintiff has appealed that Order, ECF No. 39.  The appeal divested this Court of

---

[8]        In circumstances where an interlocutory appeal involves "the defendant's asserted right not to have to proceed to trial," and specifically, appeals from "the denial of a motion to dismiss an indictment based on double jeopardy or from the denial of a motion for summary judgment based on qualified immunity," an interlocutory appeal divests the district court of jurisdiction to proceed over anything but "peripheral matters unrelated to the disputed right not to have [to] defend the prosecution or action at trial."  Stewart v. Donges, 915 F.2d 572, 576 (10th Cir. 1990). This is not one of those circumstances.

jurisdiction over matters involved in the appeal, and therefore the Court lacks jurisdiction to consider the Second Motion for Temporary Restraining Order and Preliminary Injunction to the extent it seeks an order enjoining enforcement of the Administrative Orders. Int'l Bus. Mach. Corp. v. Johnson, 355 F. App'x 454, 455-56 (2d Cir. 2016) ("An interlocutory appeal from the denial of preliminary injunctive relief divests the court . . . of jurisdiction with regard to questions raised and decided upon the interlocutory order appealed from."); Pueblo of Pojoaque v. New Mexico, 214 F. Supp. 3d 1028, 1067 (D.N.M. 2016) ("[A] motion for a preliminary injunction which involves the same issues as those in a matter pending appeal is not a collateral matter and is beyond the district court's jurisdiction.").

However, the Court has jurisdiction to consider the Second Motion for Temporary Restraining Order and Preliminary Injunction to the extent it seeks an order "prohibiting Defendants or any employee acting at their behest from communicating or seeking to have any social media platform moderate or remove Plaintiff's postings[,]" ECF No. 65 at 11-12, because that issue was not raised in the original Complaint or the First Request for a Temporary Restraining Order/Preliminary Injunction.

**b.  Disfavored injunction**

Although Defendants appear to suggest that Plaintiff is seeking a "disfavored" injunction, see ECF No. 67 at 10-12, they do not identify which type of disfavored injunction they believe Plaintiff is seeking, see id.

An order prohibiting Defendants from seeking to have a social media platform moderate or remove Plaintiff's postings would not alter the status quo, is not a "mandatory preliminary

injunction,"[9] and would not afford Plaintiff all the relief that he could recover at the conclusion of a full trial on the merits.  Therefore, the Court finds that Plaintiff is not seeking a disfavored type of injunction.

### c.  Preliminary injunction factors

As previously stated, to obtain a preliminary injunction, Plaintiff must establish all four of the following equitable factors: (1) a substantial likelihood of success on the merits; (2) irreparable harm to Plaintiff if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause Defendants; and (4) the injunction, if issued, will not adversely affect the public interest.  Gen. Motors Corp., 500 F.3d at 1226.

### 1.  Substantial likelihood of success on the merits

First, Plaintiff must establish a substantial likelihood of success on the merits of at least one of his claims.  In the instant Motion, Plaintiff argues that there is a substantial likelihood he will succeed on the merits of Counts I, III, and IV, ECF No. 65 at 7-9, but he does not argue that there is a substantial likelihood that he will succeed on the merits of Count II, see id.

To show a substantial likelihood of success on the merits, Plaintiff must "make a prima facie case showing a reasonable probability that [he] will ultimately be entitled to the relief sought."  Harmon v. City of Norman, Okla., 981 F.3d 1141, 1146 (10th Cir. 2020) (quoting Automated Mktg. Sys., Inc. v. Martin, 467 F.2d 1181, 1183 (10th Cir. 1972)).

As relevant here, the Amended Complaint alleges that "[o]n October 31, and November 1, 2023, Plaintiff entered the public areas of the Torrance County Courthouse facility in fully [sic] compliance with the 7th Judicial District Court's Administrative orders at issue in this matter and

---

[9]       A mandatory preliminary injunction is "an injunction that requires the nonmoving party to take affirmative action . . . before a trial on the merits occurs."  RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1208 (10th Cir. 2009).

made several videos as part of his reporting and as expressive conduct." ECF No. 73 ¶ 29 (citing James Freeman, <u>Picking Up Papers, Court Still Retaliating Against Me For Exposing Gordon Bennet</u>, YouTube (posted Nov. 1, 2023), <u>available at</u> https://www.youtube.com/watch?v=QUhGqPBXzF4&t=1s (last visited Dec. 11, 2023); James Freeman, <u>District 7 Court is Out Of Control Still And Sheriff's "Open Door Policy" = Locked Door</u>, YouTube (posted Oct. 31, 2023)). "In retaliation for Plaintiff's reporting and protected speech contained in the first video noted in the paragraph above, upon information and belief, the Defendants or employees of the Defendants acting at their direction conspired to have YouTube censor Plaintiff's video[,]" which resulted in YouTube removing one of the videos as violative of YouTube's spam, deceptive practices, and scams policy. <u>Id.</u> ¶ 30. Although the Amended Complaint does not specify how Defendants allegedly "conspired to have YouTube censor Plaintiff's video[,]" <u>id.</u> ¶ 30, Plaintiff's Declaration asserts that, "[u]pon information and belief, the review that prompted action by YouTube to remove the video was initiated by Seventh Judicial District employees identifying as the same and coercing YouTube to take it down <u>by falsely flagging the video</u> I had made on the first of November that was critical of the actions of the Seventh Judicial District Court." ECF No. 65-1 ¶ 8 (emphasis added). The message from YouTube states that Plaintiff may appeal the decision, <u>id.</u>, and the Amended Complaint asserts that Plaintiff was able to "successfully appeal" YouTube's decision. <u>Id.</u> ¶ 32. However, "upon information and belief[,]" Plaintiff "understand[s]" that "Defendants will continue to undertake these actions censor [sic] Plaintiff's reporting and speech unless enjoined by this Court." <u>Id.</u>

These allegations do not fall within Counts I, III, and/or IV of the Amended Complaint. Count I alleges that Chief Judge Murphy and Judge Murdock-Poff violated Plaintiff's First Amendment rights by "excluding Plaintiff from a [sic] public places and hearings prohibiting him

attending and reporting on public matters." ECF No. 73 ¶ 31(2).[10]  Count III alleges "[t]he Orders issued by Defendants Murphy, Murdock-Poff, Jones and Rossignol deprive Plaintiff his fundamental liberty interests in speech, press and petitioning without due process of law, based solely upon discretion of the Defendants." Id. ¶ 44.  Count IV alleges that the Seventh Judicial District Court violated Plaintiff's rights under the New Mexico Constitution when it entered Chief Judge Murphy's Administrative Orders, and had those Orders served upon him, id. ¶ 47, and "eject[ed] him from the public hearing on May 18, 2023[,]" id. ¶ 48.  Even when construed in the light most favorable to Plaintiff, Counts I, III, and IV do not plausibly allege claims based upon the YouTube-related allegations.

Thus, the only claim that could possibly encompass the YouTube-related allegations is Count II, which alleges that Defendants' actions deprived Plaintiff of his (unidentified) substantive due process rights through conduct that "'shocks the conscious' [sic] or that interferes with fundamental liberty without narrowly tailoring such interference to achieve a compelling government interest. . . ." Id. ¶ 37.

"Substantive due process arises from the Fourteenth Amendment's protections against governmental deprivations 'without due process of law.'"  Williams v. Berney, 519 F.3d 1216, 1220 (10th Cir. 2008) (quoting U.S. Const. amend. XIV, § 1).  "Under this framework, due process protections are accorded primarily 'to matters relating to marriage, family, procreation, and the right to bodily integrity.'"  Id. (quoting Albright v. Oliver, 510 U.S. 266, 272 (1994)).  "And, moreover, in extending these concepts to further bar 'certain government actions regardless of the fairness of the procedures used to implement them,' the Supreme Court has emphasized 'that only

---

[10]        The Amended Complaint contains two paragraphs numbered "31."  The Court's citation to paragraph 31(2) refers to the second paragraph 31, sequentially.

the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" Id. (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 840 (1998)).

"What differentiates a constitutional transgression from an ordinary common law tort is a 'level of executive abuse of power . . . that . . . shocks the conscience.'" Id. (quoting Lewis, 523 U.S. at 846). See also Uhlrig v. Harder, 64 F.3d 567, 573 (10th Cir. 1995) ("[T]he standard for judging a substantive due process claim is whether the challenged government action would 'shock the conscience' of federal judges.") (some internal quotation marks omitted) (quoting Collins v. City of Harker Heights Tex., 503 U.S. 115, 126 (1992)). "In other words, the executive abuse represents 'arbitrary action of government' and requires a showing of government officials 'abusing their power, or employing it as an instrument of oppression.'" Williams, 519 F.3d at 1220 (quoting Lewis, 523 U.S. at 845-46). "What 'shocks [the conscience] in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstance before any abuse of power is condemned as conscience shocking." Id. (quoting Lewis, 523 U.S. at 850).

"Given the latitude [courts] ordinarily afford government actors operating in their official capacities, [courts] recognize constitutional torts only 'in the narrowest of circumstances[.]'" Id. (quoting Becker v. Kroll, 494 F.3d 904, 922 (10th Cir. 2007)). "The tortious conduct alleged 'must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power . . . . [It] must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.'" Id. (quoting Livsey v. Salt Lake Cnty., 275 F.3d 952, 957-58 (10th Cir. 2001)). "Not surprisingly, little governmental action is held unconstitutional under th[is] formulation[]." Id. (quoting 1

Martin A. Schwartz, <u>Section 1983 Litigation</u> § 3.05[D], at 3–116 (4th ed. 2006)) (internal quotation marks omitted).

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" <u>Albright</u>, 510 U.S. at 273 (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989)).   Stated differently, if a substantive due process claim falls within the ambit of a specific constitutional protection, the claim must be analyzed under the standards governing the specific constitutional protection, not under the "shocks the conscience" standard.   <u>See Dubbs v. Head Start, Inc.</u>, 336 F.3d 1194, 1203 (10th Cir. 2003) (finding that the plaintiffs' substantive due process claim was "more precisely addressed under the Fourth Amendment[,]" and therefore the "shocks the conscience" standard did not apply).

The Court finds that Plaintiff has failed to establish a substantial likelihood of success on the merits of Count II for at least two reasons.   First, Plaintiff's claim that Defendants retaliated against him for exercising his right to free speech is grounded in the First Amendment rights to free speech and press.   Plaintiff has failed to allege or argue an independent substantive due process challenge to Defendant's alleged retaliation.   For that reason alone, the Court finds that Plaintiff has failed to establish a substantial likelihood of success on the merits of Count II (to the extent it is premised upon the YouTube-related allegations).   <u>See Progeny v. City of Wichita, Kan.</u>, Case No. 6:21-CV-01100-EFM-ADM, 2022 WL 93406, at *15 (D. Kan. Jan. 10, 2022) (dismissing substantive due process claim implicating right to free association because it was more appropriately analyzed under the First Amendment); <u>Yazzie v. Bd. of Cnty. Comm'rs for Rio Arriba Cnty.</u>, No. CIV 15-109 JAP/SCY, 2015 WL 13651028, at *6 (D.N.M. Oct. 22, 2015)

(dismissing substantive due process claim because the "Plaintiff's claim of retaliation related to his loss of employment is grounded in First Amendment rights of free speech and association" and the plaintiff "failed to allege an independent substantive due process challenge to Defendants' employment decision"); see also McRoberts v. Rosas, Case No. 21-2470-DDC-TJJ, 2022 WL 4482481, at *11 (D. Kan. Sept. 27, 2022) (dismissing substantive due process claim because it fell under the Fourth Amendment); Hirt v. Unified Sch. Dist. No. 287, CASE NO. 2:17-CV-02279-HLT, 2018 WL 6326412, at *7 (D. Kan. Dec. 4, 2018) (finding that substantive due process claim based on a free speech violation was "subsume[d]" by a separate First Amendment claim).

Second, assuming arguendo that the YouTube-related allegations are (a) true and (b) subject to the shocks-the-conscience standard, the Court finds that Defendants' alleged conduct is not "truly conscience shocking." Williams, 519 F.3d at 1221. Although the Amended Complaint is silent as to what action(s) Defendants actually took to "conspire[] to have YouTube censor Plaintiff's video[,]" ECF No. 73 ¶ 30," Plaintiff's Declaration asserts that, "[u]pon information and belief[,]" employees of the Seventh Judicial District "falsely flagg[ed]" a video that was critical of the Seventh Judicial District Court, thereby prompting YouTube to review and remove the video, ECF No. 65-1 ¶ 8. The Court finds that Defendants' alleged flagging of Plaintiff's video as containing spam, scams, or other deceptive practices is not so egregious or outrageous as to be truly conscience shocking. See Keefe v. Adams, 840 F.3d 523, 533-34 (8th Cir. 2016) (finding that the defendants' decision to remove the plaintiff from a nursing program for engaging in constitutionally-protected speech made on social media was "far from conscience shocking"); Richard v. Perkins, 373 F. Supp. 2d 1211, 1220 (D. Kan. 2005) (finding that the defendant's decision to remove the plaintiff from the Kansas University track team in retaliation for plaintiff engaging in constitutionally-protected speech did not shock the conscience).

For at least these reasons, the Court finds that Plaintiff has failed to establish a substantial likelihood of success on the merits of Count II (to the extent it is premised upon the YouTube-related allegations).  Because Plaintiff failed to establish a substantial likelihood of success on the merits, the Court must deny his Motion.  See Vill. of Logan, 577 F. App'x at 766 ("[A] plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted."); Sierra Club, 539 F. App'x at 888 ("A party seeking a preliminary injunction must prove that all four of the equitable factors weigh in its favor . . . .").

However, even if Plaintiff could establish a substantial likelihood of success on the merits of Count II, the Court would deny the Motion for the reasons explained in the next subsection.

### 2.  Irreparable harm

Next, Plaintiff must establish that he will suffer irreparable harm if an injunction is not issued.  Gen. Motors Corp., 500 F.3d at 1226.

Plaintiff argues that "coercing YouTube to remove his posting under the false premise that they were [sic] spam, deceptive practices or a scam clearly denying [sic] Plaintiff his Constitutional freedoms."  ECF No. 65 at 9-10.  He argues that "[t]here is no adequate legal remedy for these 'intangible harms.'"  Id. at 10 (quoting Cmty. Television of Utah, LLC v. Aereo, Inc., 997 F. Supp. 2d 1191, 1210 (D. Utah 2014)).

Defendants argue that Plaintiff will not be irreparably harmed absent an injunction because he "continues to freely post his content on YouTube."  ECF No. 67 at 13.

To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'"  Heideman v. S. Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting Wisc. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985)).  "Irreparable harm is not harm that is 'merely serious or substantial.'"  Id. (quoting Prairie Band of Potawatomi Indians v. Pierce, 253

F.3d 1234, 1250 (10th Cir. 2001)).  "[T]he party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."  Id. (quoting Prairie Band, 253 F.3d at 1250) (internal quotation marks omitted).  "The question . . . is not just whether [Plaintiff] faces a concrete and imminent injury, but whether such an injury will be irreparable without the injunction."  Awad v. Ziriax, 670 F.3d 1111, 1131 (10th Cir. 2012).  "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain."  Dominion Video Satellite, Inc. v. EchoStar Satellite Corp., 269 F.3d 1149, 1156 (10th Cir. 2001).

The Tenth Circuit has recognized that "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."  Awad, 670 F.3d at 1131 (internal quotation marks and citation omitted).  Similarly, the Supreme Court has stated that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  Elrod v. Burns, 427 U.S. 347, 373 (1976).  However, where, as here, the plaintiff fails to establish a substantial likelihood of success on the merits of a claim, "he is not entitled to a presumption of irreparable injury."  Schrier v. Univ. of Colo., 427 F.3d 1253, 1266 (10th Cir. 2005).

Assuming arguendo that Plaintiff prevails on his substantive due process claim (to the extent it is premised upon the YouTube-related allegations), Plaintiff may be able to demonstrate past harm under Elrod.  However, "[t]he purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance."  Schrier, 427 F.3d at 1267.  To demonstrate irreparable harm supporting a request for a preliminary injunction, a plaintiff must show that his "First Amendment interests [are] either threatened or in

fact being impaired at the time relief [is] sought." <u>Elrod</u>, 427 U.S at 373.  "[T]o constitute irreparable harm, an injury must be imminent, certain, actual and not speculative." <u>Colorado v. U.S. Env't Prot. Agency</u>, 989 F.3d 874, 886 (10th Cir. 2021).  "[A] plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative." <u>Greater Yellowstone Coal. v. Flowers</u>, 321 F.3d 1250, 1258 (10th Cir. 2003).

Here, the Amended Complaint alleges that "Defendants or employees of the Defendants acting at their direction conspired to have YouTube censor Plaintiff's video[,]" ECF No. 73 ¶ 30, but Plaintiff was "able to successfully appeal" YouTube's decision to remove his video from the platform, <u>id.</u> ¶ 32.  Thus, Plaintiff's First Amendment interests are not "in fact being impaired[.]" <u>Elrod</u>, 427 U.S. at 373.

Although the Amended Complaint alleges that, "upon information and belief . . . Defendants will continue to undertake these actions . . . unless enjoined by this Court[,]" ECF No. 73 ¶ 32, this conclusory allegation is pure speculation unsupported by evidence or argument.  As such, the Court finds that Plaintiff has failed to establish a significant risk of irreparable harm. <u>Brunner v. Little</u>, 1:23-CV-00017-RAL, 2023 WL 3007372, at *2 (W.D. Pa. Mar. 29, 2023) (finding that the plaintiff's "conclusory allegations based solely on his personal beliefs" were insufficient to establish imminent irreparable harm), <u>report and recommendation adopted</u>, 2023 WL 3004852 (W.D. Pa. Apr. 19, 2023) (citing, inter alia, <u>Miller v. N.J. Dep't of Corrs.</u>, Civil Action No. 08–CV–03335 (DMC), 2010 WL 4810659, at *3 (D.N.J. Nov. 17, 2010) (finding conclusory claims of retaliation based on personal belief are insufficient to establish irreparable harm)); <u>Garza v. Barker</u>, CIVIL ACTION NO. 6:20cv331, 2021 WL 3730056, at *1 (E.D. Tex. Aug. 3, 2021) ("Mere speculation or conclusory allegations of an irreparable injury is insufficient."); <u>Begay-Platero v. Gallup McKinley Cnty. Sch. Dist.</u>, No. 18-cv-00861-PJK-SCY,

2019 WL 2008888, at *4 (D.N.M. May 7, 2019) ("[C]onclusory allegations cannot support a finding of irreparable injury absent a showing of a likely constitutional harm[.]").  See also RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1210 (10th Cir. 2009) (stating that "[p]urely speculative harm will not suffice" to establish a significant risk of irreparable harm).

Because Plaintiff failed to establish he will suffer irreparable harm absent a preliminary injunction, the instant Motion must be denied.  See Vill. of Logan, 577 F. App'x at 766 ("[A] plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted."); Sierra Club, 539 F. App'x at 888 ("A party seeking a preliminary injunction must prove that all four of the equitable factors weigh in its favor . . . .").

Having found that Plaintiff failed to establish (1) a substantial likelihood of success on the merits of a claim and (2) irreparable injury, the Court declines to consider whether he has established that (3) the threatened injury outweighs the harm that the preliminary injunction may cause the Defendants, or (4) the injunction, if issued, will not adversely affect the public interest. Gen. Motors Corp., 500 F.3d at 1226.

## IV.    Conclusion

Accordingly, it is **HEREBY ORDERED** that Plaintiff's Opposed Second Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 65, is **DENIED**.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE