IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JAMES SPRINGER,**

      **Plaintiff,**

v.

                                   **Civil Action No. 1:23-cv-00499-MIS-JMR**

**SEVENTH JUDICIAL DISTRICT COURT,**
**MERCEDES MURPHY,**
**SHANNON MURDOCK-POFF, JASON JONES,**
**and SUSAN ROSSIGNOL,**

      **Defendants.**

### RESPONSE TO MOTION TO DISMISS ECF DOC. NO. 77

COMES NOW, Plaintiff, through undersigned counsel, with his Response to the Motion to Dismiss, ECF Doc. No. 77, and for his reasons states:

### INTRODUCTION

As James Madison once said, "Our First Amendment freedoms give us the right to think what we like and **say what we please**. And if we the people are to govern ourselves, we must have these rights, *even if they are misused by a minority*." (Emphasis added). However, it remains clear that Defendants maintain the idea that, immune from public criticism or speech and the First Amendment as applied to the States under the Fourteenth Amendment, the First Amendment does not, in fact, apply to judiciary. But, as public elected official or employees, there simply is no basis for that assertion. Thus, it bears repeating for the sake of the Defendants - the First Amendment, which certainly applies to the states unequivocally, requires that "[judges for the Seventh Judicial District] shall make no [order] … ***abridging*** the freedom of speech, or of the press." U.S. Const. amend. I. (Emphasis added). Instead, Defendants' instant motion lays bare that they are entirely motivated by being offended by the content of Plaintiff's speech, which calls them names, mocks

1

them, satirizes them, calls into question their honesty and competency.

And that is the driving force behind the Defendants' actions to ***abridge*[1]** Plaintiff's rights to speech and press, without any pre or post deprivation procedural due process.[2] Thus, Plaintiff's complaint alleges facts (which must be construed in Plaintiff's favor, even if disputed or re-characterized by Defendants) that support claims associated with violations of the protections guaranteed under the First Amendment. Thus, because the majority of the Motion is a repeat of ECF Doc. No. 57, Plaintiff fully incorporates his previous Response, ECF Doc. No. 68, without restating it here, and addresses in this Response the portions added by the Defendants.

However, overarchingly between both of the Motions, in the Defendants' outrage over the content of what Plaintiff has said about them (in their official capacities as elected officials or government employees) obscures their ability to recognize the wisdom of Justice Brennan, writing in the landmark case of *New York Times Co. v. Sullivan,* that "we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270–71, 84 S. Ct. 710, 721, 11 L. Ed. 2d 686 (1964) *citing Terminiello v. Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131; *271 *De Jonge v. Oregon*, 299 U.S. 353, 365, 57 S.Ct. 255, 81 L.Ed. 278.

Quite simply, there is no special exclusion for the judiciary (outside of the powers of contempt to maintain decorum and judicial operation in the courtroom) that makes judges or court staff

---

[1] **abridge** *vb.* (14c) **1.** To reduce or diminish <abridge one's civil liberties>
ABRIDGE, Black's Law Dictionary (11th ed. 2019)

[2] Defendants make the absurd claim that the show cause hearing for criminal contempt for violating the Administrative Orders directly at issue for their constitutionality, which further purported to violate Plaintiffs' Fifth Amendment right against self-incrimination, was some sort of procedural due process to address the Administrative Orders. A more ludicrous argument remains hard to fathom unless viewed against the rest of the Motion.

immune from profane, caustic, demeaning, inflammatory or other sharp criticism by a citizen on social media or in correspondence sent to other government agencies. And again, the Defendants' instant motion quite literally boils down to asking this Court to punish Plaintiff with dismissal for calling them, in their capacity as public officials, names they don't like, or exposing their alleged incompetence/corruption to the public. The arrogance of such tyrannical assumptions as to believe themselves that far above the Constitution of the Nation and this state is staggering to say the least.

### ARGUMENT RELATING TO NEW MATERIAL

### THE FIRST AMENDMENT PROTECTS PLAINTIFF'S PUBLIC CRITICISMS OF ELECTED GOVERNMENT OFFICIALS AND GOVERNMENT EMPLOYEES, AND DEFENDANTS' ATTEMPT TO MISUSE DISMISSAL FOR DISCOVERY VIOLATIONS IS FURTHER EVIDENCE THAT SUPPORTS THE ASSERTION THAT ABRIDGEMENT OF PLAINTIFF'S RIGHTS WAS BASED UPON THE CONTENT OF HIS SPEECH

To be sure, public office or public service is not for everyone. It requires an individual with the capacity to take public criticisms no matter how sharp or caustic they be, and continue to perform their job to the best of their abilities. There is no recognized exception for individuals who are elected as state court judges, or hired to work in the state judiciary. True, inside of the Courtroom, judges enjoys special powers or privileges to moderate the conduct of the litigants and counsel appearing before them, and legal counsel is bound by special rules that dictate conduct of attorneys towards the judiciary, even outside of the courthouse.

But Mr. Springer wasn't a litigant before the Defendants any more than he is an attorney. And outside of one instance of videotaping without permission inside of a courtroom and failing to abide by a now discredited and defunct mask mandate, none of the complained of conduct by Defendants of Mr. Springer falls within the Defendant's authority to regulate as speech or press. Yet, the Defendants persist. And in so behaving, they continue to aggravate their situation with the public that is unhappy with them based upon Mr. Springer's reporting.

The instant motion is no different. It will be reported on and read by Mr. Springer to his nearly 500,000 subscribers, who will again be likely incensed, not in great part by his profanity or commentary about the motion, but rather by the audacity of Defendants and their counsel to remain so tone deaf regarding the ***abridgement*** and violations of freedom of speech, press and even petitioning for redress[3] that Defendants have perpetrated against Mr. Springer. Even this Court appears to have in some part been influenced by the external pressure to address Mr. Springer's actions as an affront to the judiciary (both state and federal) as a whole.

But the Supreme Court has been clear since at least the 1960's.  The concerns over the caustic speech or reporting must be decided in favor of public debate, instead of the public official's concerns. Again, the Supreme Court has not and is not likely, based upon its previous decisions, to find that Judicial Defendants here enjoy some special immunity from criticism. "[L]ike insurrection,[7] contempt,[8] advocacy of unlawful acts,[9] breach of the peace,[10] obscenity,[11] solicitation of legal business,[12] and the various other formulae for the repression of expression that have been challenged in this Court, libel can claim no talismanic immunity from constitutional limitations. It must be measured by standards that satisfy the First Amendment." *Id.* at 269.

Moreover, this case, as highlighted by the instant Motion, is one of the "[c]ases which [seek to] impose liability for erroneous reports of the political conduct of officials reflect the obsolete doctrine that the governed must not criticize their governors. * * * The interest of the public here outweighs the interest of appellant **722 or any other individual. The protection of the public requires not merely discussion, but information. Political conduct and views which some respectable people approve, and others condemn, are constantly imputed to Congressmen. Errors of fact, particularly in regard to a man's mental states and processes, are inevitable. * * *

---

[3] Defendants complain that Plaintiff should be punished by this Court for his petitioning the Sheriff's Department that Defendant Rossignol be arrest for the crime of filing false police reports.

4

Whatever is added to the field of libel is taken from the field of free debate." *Id.* at 272.

And so, we now find ourselves with the instant motion, which asks this Court to punish Plaintiff for the content of his speech, but which offers no explanation of why Plaintiff's speech and reporting is punishable (instead of protected) outside of the fact that it is directed towards government officials that are members of the judiciary. Thus, far from Plaintiff stating a claim upon which relief can be granted, Defendants' second attempt at the motion (which is largely the same as the first) falls well short on all fronts of the requisite showing for Rule 12 dismissal under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## CONCLUSION

For the foregoing reasons, and for the reasons stated in ECF Doc. No. 68, the Motion, ECF Doc. No. 77 should be denied and the Court should award Plaintiff any relief that the Court deems just and proper in responding to the Motion.

Respectfully submitted,

WESTERN AGRICULTURE, RESOURCE
AND BUSINESS ADVOCATES, LLP

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.
Jared R. Vander Dussen, Esq.
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
abdunn@ablairdunn-esq.com
warba.llp.jared@gmail.com


Zach Cook, LLC

*/s/ Zach Cook*
Zach Cook
1202 Sudderth # 425

5

Ruidoso, NM 88345<br>
(575) 937-7644<br>
zach@zachcook.com

CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2023, I filed the foregoing via the CM/ECF causing all parties of record to be served electronically.

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.