**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JAMES SPRINGER,

    Plaintiff,

v.

                                                    Case 1:23-cv-0499-MIS-JMR

SEVENTH JUDICIAL
DISTRICT COURT,
MERCEDES MURPHY,
SHANNON MURDOCK-POFF,
JASON JONES, and
SUSAN ROSSIGNOL,

    Defendants.

**ORDER TO SHOW CAUSE**

**THIS MATTER** is before the Court on a sua sponte review of the record. For the reasons that follow, Plaintiff shall have twenty-one days from the date of this Order to **SHOW CAUSE** why his claims should not be dismissed.

**I.**     **Background**

According to the Second Amended Complaint, on February 28, 2023, the Chief Judge of the Seventh Judicial District, Defendant Mercedes C. Murphy ("Chief Judge Murphy"), issued an Administrative Order "in the interest of the safety and security of Judges, Special Commissioners, Hearing Officers, and other Court personnel," barring Plaintiff from entering the Torrance County District Courthouse in Estancia, New Mexico, "unless appearing for a hearing or having specific Court business, in which cases [Plaintiff] shall be escorted and accompanied by the Torrance

County Sheriff's Office, while in the building." ECF No. 99-1 ("Administrative Order");[1] see also ECF No. 99 ¶¶ 15-17.

On March 1, 2023, two officers with the New Mexico State Police delivered a copy of the Administrative Order to Plaintiff. ECF No. 99 ¶ 15. At the same time, the officers delivered to Plaintiff a copy of a letter dated March 1, 2023, to Plaintiff from Defendant Jason Jones—the Court Executive Officer of the Seventh Judicial District Court. Id. ¶ 19. The Letter states:

> As the CEO of the Seventh Judicial District Court, it has been brought to my attention that court staff are being harassed on your behalf and has impacted court resources. The Court has issued an Administrative Order on March 1, 2023, that if you are required to be in court or have official court business you will check in with the Torrance County Sheriff's Office to be escorted and accompanied pursuant to the Administrative Order.

ECF No. 99-2 ("March 1st Letter").[2]

On March 23, 2023, Chief Judge Murphy entered an Amended Administrative Order barring Plaintiff from entering other courthouses within the Seventh Judicial District, "unless appearing for a hearing or having specific Court business, in which cases [Plaintiff] shall be escorted and accompanied by the [sic] law enforcement, while in any of the buildings." ECF No. 99-3 ("Amended Administrative Order");[3] see also ECF No. 99 ¶ 21. The same day, Defendant Jones signed a second letter to Plaintiff stating that Defendant entered the Moriarty Magistrate Court for non-court business and was being "disruptive and threatening" in the courthouse. ECF No. 99-4 ("March 23rd Letter").[4] The March 23rd Letter advises Plaintiff that Chief Judge Murphy

---

[1] The Administrative Order is attached as Exhibit 1 to the Second Amended Complaint. ECF No. 99-1

[2] The March 1st Letter is attached as Exhibit 2 to the Second Amended Complaint. ECF No. 99-2.

[3] The Amended Administrative Order is attached as Exhibit 3 to the Second Amended Complaint. ECF No. 99-3.

[4] The March 23rd Letter is attached as Exhibit 4 to the Second Amended Complaint. ECF No. 99-4.

amended the Administrative Order to require that Plaintiff be escorted and accompanied in any of the Seventh Judicial District's magistrate or district courthouses.  Id.

On May 18, 2023, Plaintiff attempted to attend a public hearing "as [a] member of the press to report on the case in a criminal matter before the Honorable Mercedes Murphy by way of a video conferencing platform."  ECF No. 99 ¶ 25.  "After dialing in to the public hearing via the video conferencing platform, Judge Murphy summarily ejected Plaintiff from the video conferencing platform and from the public hearing without providing Plaintiff notice and an opportunity to be heard on the matter of whether he could attend the public hearing."  Id. ¶ 26.

"On May 24, 2023, Judge Shannon Murdock-Poff issued an order . . . excluding Plaintiff from a hearing in a civil matter . . . that Plaintiff planned to attend as a member of the press and the public."  Id. ¶ 27 (citing "Order Excluding Presence," Luna v. Cooke-Lovato, Case No. D-722-DV-2019-00050 (7th Jud. Dist. Ct. (Torrance Cnty.) May 24, 2023), ECF No. 99-5).[5]

The Second Amended Complaint alleges that "[o]n multiple dates, Susan Rossignol has either refused Plaintiff's statutory right under New Mexico law to petition his government for redress by inspecting public records in the clerk's office."[6]  Id. ¶ 28.  It alleges that "Defendant Rossignol out of retaliation has required state police presence to harass and intimidate Plaintiff when he entered the Estancia District Court house for the purpose of conducting court business associated to making records requests."  Id. ¶ 29.  "This retaliation culminated in an outright refusal to accept protected petitioning activity to exercise his statutory right to request public records on

---

[5] The Order Excluding Presence is attached as Exhibit 5 to the Second Amended Complaint.  ECF No. 99-5.

[6] The Second Amended Complaint alleges that Defendant Rossignol is "a clerk of the Seventh Judicial District Court of New Mexico . . . ."  ECF No. 99 ¶ 6.

June 8, 2023 and Ms. Rossignol requiring that Torrance County Sheriff's Deputy Young chase Plaintiff from the building which he did." Id. ¶ 30(1).[7] It further alleges that

> Defendant Rossignol, upon information and belief, at the direction of Defendant Murphy, falsely reported to the New Mexico State Police that Plaintiff was an armed threat and proceeded to close her government office to the public during normal business hours in an effort to place Plaintiff' [sic] life in jeopardy and to deprive him of his statutory and constitutional rights to petition his government for redress.

Id. ¶ 35(1).[8]

On February 21, 2024, Plaintiff filed the operative Second Amended Complaint asserting four causes of action.

**Count I** alleges a claim under 42 U.S.C. § 1983 predicated on violations of the First Amendment rights to freedom of the press and speech, which Plaintiff characterizes as "viewpoint discrimination," against Chief Judge Murphy and Judge Murdock-Poff. ECF No. 99 at 36, 30(2)-37.[9] Specifically, it alleges that Chief Judge Murphy and Judge Murdock-Poff "engaged in viewpoint discrimination by banning and excluding Plaintiff from a public places [sic] and hearings prohibiting him attending and reporting on public matters." Id. ¶ 31(2).[10]

**Count II** alleges a claim under 42 U.S.C. § 1983 predicated on retaliation in violation of the First Amendment rights to freedom of the press and speech "including denial of the protected

---

[7] The Second Amended Complaint contains two paragraphs numbered "30." ECF No. 99. The Court's citation to paragraph 30(1) refers to the first paragraph 30, sequentially.

[8] The Second Amended Complaint contains two paragraphs numbered "35." ECF No. 99. The Court's citation to paragraph 35(1) refers to the first paragraph 35, sequentially.

[9] Count I of the Second Amended Complaint contains five paragraphs, numbered 36, 30, 31, 32, and 37, in that order. The "General Allegations" also contains paragraphs numbered 30, 31, and 32 which are different than the paragraphs numbered 30, 31, and 32 in Count I.

[10] The Second Amended Complaint contains two paragraphs numbered "31." ECF No. 99. The Court's citation to paragraph 31(2) refers to the second paragraph 31, sequentially.

liberty interest in petitioning the Government" against all Defendants. Id. ¶¶ 38-42. Specifically, it alleges that

> Defendants Jason Jones and Susan Rossignol have each undertaken retaliatory efforts (Jones to issue threatening letters designed to chill Plaintiff's exercise of speech, press and petitioning and Rossignol to refuse Plaintiff's statutory right to inspect public records, to give false reports to state police about Plaintiff being an armed threat endangering his life, and cutting off his ability to petition his government by closing the government office during normal business hours when Plaintiff was present.) Upon information, all retaliatory efforts, including excluding Plaintiff from Defendant Murdock-Poff's public hearing were undertaken at the direction and in agreement with Defendant Murphy.

Id. ¶ 40.

**Count III** alleges a claim under 42 U.S.C. § 1983 predicated on procedural due process violations (apparently against all four individual Defendants). Id. ¶¶ 43-48. Specifically, it alleges that "[t]he Orders issued by Defendants Murphy and Murdock-Poff and the actions taken by Jones and Rossignol deprive Plaintiff his fundamental liberty interests in speech, press and petitioning without due process of law, based solely upon discretion of the Defendants." Id. ¶ 47.

**Count IV** alleges a violation of Article II, Sections 17, 18, and 23 of the New Mexico Constitution against Defendant Seventh Judicial District Court only. Id. ¶¶ 49-52. It alleges that the Seventh Judicial District Court violated "Plaintiff's constitutional rights of freedom of speech, freedom of press, freedom of assembly, and due process when [it] entered the Administrative Order[,] Amended Administrative Order[,]" and Judge Murdock-Poff's Order Excluding Presence, and when it had those Orders and Defendant Jones's Letters "served on Plaintiff with no notice and opportunity to be heard." Id. ¶ 50. It further alleges that the Seventh Judicial District Court violated Plaintiff's right to free speech under Article II, section 17, when it "retaliated against Plaintiff by ejecting him from the public hearing on May 18, 2023, by denying him access as member [sic] of the press to Defendant Murdock-Poff's public hearing, denying him statutory

5

rights to access public records and harassing with unnecessary and chilling law enforcement presence." Id. ¶ 51.

The Second Amended Complaint is asserted against the individual Defendants in their individual capacities only. ECF No. 99 ¶¶ 3-6; see also id. at 1. Counts I, II, and III seek declaratory and injunctive relief only, id. ¶¶ 37, 42, 48, while Count IV seeks actual damages from the Seventh Judicial District Court, see id. ¶ 52.

On March 6, 2024, Defendants filed a Motion to Dismiss arguing that the Second Amended Complaint should be dismissed for failure to state a claim. ECF No. 105. Plaintiff filed a Response, ECF No. 108, to which Defendants filed a Reply, ECF No. 109. That Motion remains pending.

## II.   Discussion

Defendants' Motion to Dismiss does not assert judicial immunity, quasi-judicial immunity, or Eleventh Amendment immunity as bases for dismissal.[11] See ECF No. 105. However, the Court raises these issues sua sponte because it appears that Defendants may be immune. See Hennessey v. Univ. of Kan. Hosp. Auth., 53 F.4th 516, 531 (10th Cir. 2022) (observing that a district court may raise Eleventh Amendment sovereign immunity sua sponte); Andrews v. Heaton, 483 F.3d 1070, 1076 (10th Cir. 2007) (affirming district court's sua sponte dismissal of claims against judges based on absolute judicial immunity). Even if the individual Defendants are not immune, it appears that Counts I, II, and III fail to state a claim under Section 1983.

---

[11] Although Count I of the Second Amended Complaint alleges that "Judge Murphy and Judge Murdock-Poff do not enjoy judicial immunity here for their administrative orders[,]" ECF No. 99 ¶ 32(2), this is a legal conclusion that is not entitled to the presumption of truth at the pleading stage. See Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

### a. Absolute judicial immunity and quasi-judicial immunity

"Judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."[12] Stump v. Sparkman, 435 U.S. 349, 355-56 (1978). Indeed, "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." Id. at 359. Furthermore, "[b]y enacting the 1996 Federal Courts Improvement Act . . . Congress . . . expanded the ambit of judicial immunity by amending § 1983 so as to prohibit injunctive relief against a judicial officer." Coleman v. Governor of Mich., 413 F. App'x 866, 873 (6th Cir. 2011) (quotation marks and citation omitted); see also Lawrence v. Kuenhold, 271 F. App'x 763, 766 n.6 (10th Cir. 2008) ("Section 309(c) of the FCIA bars injunctive relief in any § 1983 action 'against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable.' Thus, the doctrine of judicial immunity now extends to suits against judges where a plaintiff seeks not only monetary relief, but injunctive relief as well."); 42 U.S.C. § 1983 (providing that injunctive relief shall not be granted in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity unless a declaratory decree was violated or declaratory relief was unavailable).

The Supreme Court has stated that "the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his

---

[12] Similarly, in New Mexico, judges have absolute judicial immunity "from liability for their actions taken in performance of their roles as integral parts of the judicial process." Hunnicutt v. Sewell, 219 P.3d 529, 533 (N.M. Ct. App. 2009) (quoting Collins ex rel. Collins v. Tabet, 806 P.2d 40, 45 (N.M. 1991)). To determine whether a defendant enjoys absolute judicial immunity, the Court applies "a functional test to determine whether the acts alleged by Plaintiff were judicial functions." Id. (citing Collins, 806 P.2d at 45).

judicial capacity." Stump, 435 U.S. at 362. However, the Supreme Court "has never undertaken to articulate a precise and general definition of the class of acts entitled to immunity." Forrester v. White, 484 U.S. 219, 227 (1988). Instead, it has explained that "immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." Id.

"Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." Mierles v. Waco, 502 U.S. 9, 11 (1991). "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." Id. Rather, judicial immunity is overcome in only two circumstances. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." Id. (citations omitted). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. (citations omitted).

"Just as judges acting in their judicial capacity are absolutely immune from liability under section 1983, 'official[s] charged with the duty of executing a facially valid court order enjoy[ ] absolute immunity from liability for damages in a suit challenging conduct prescribed by that order.'" Turney v. O'Toole, 898 F.2d 1470, 1472 (10th Cir. 1990) (citations omitted) (quoting Valdez v. City & Cnty. of Denver, 878 F.2d 1285, 1286 (10th Cir. 1989)). Additionally, "absolute judicial immunity has been extended to non-judicial officers where 'their duties had an integral relationship with the judicial process.'" Whitesel v. Sengenberger, 222 F.3d 861, 867 (10th Cir. 2000) (quoting Eades v. Sterlinske, 810 F.2d 723, 726 (10th Cir. 1987)). Like judicial immunity, "quasi-judicial immunity" is absolute immunity from suit. See Guttman v. Khalsa, 446 F.3d 1027, 1033 (10th Cir. 2006) (citing Horwitz v. State Bd. of Med. Exam'rs, 822 F.2d 1508, 1513 (10th Cir. 1987)).

Here, it appears that Counts I through IV are all predicated on the issuance and execution of: (1) Chief Judge Murphy's Administrative Order barring Plaintiff from entering the Torrance County District Courthouse in Estancia, New Mexico (unless appearing for a hearing or having specific Court business); (2) Chief Judge Murphy's Amended Administrative Order barring Plaintiff from all of the Seventh Judicial District's magistrate and district courthouses (unless appearing for a hearing or having specific Court business); (3) Chief Judge Murphy's decision to remove Plaintiff from a hearing being held virtually via video conference; and (4) Judge Murdock-Poff's Order Excluding Plaintiff's Presence at a hearing in a civil matter. See ECF No. 99 ¶¶ 30(2)-31(2), 40, 47, 50-51. Because "issuing administrative orders is a function normally performed by a chief judge[,]" Reynolds v. Flynn, Civil Action No. 21-cv-01154-RM-NYW, 2022 WL 20538911, at *3 (D. Colo. Mar. 31, 2022), it is a judicial act to which judicial immunity applies, id. "And to be sure, judicial control over who may appear before a judge is inherently a judicial act, not an administrative one." Kazarinoff v. Wilson, Civil Action No. 1:22-cv-02385-PAB-SKC, 2023 WL 9183661, at *5 (D. Colo. Nov. 21, 2023) (finding that judicial immunity protected chief judge who issued an administrative order preventing the plaintiffs from entering the courthouse). As such, an order (or other act) barring an individual from entering the courthouse or a courtroom is a judicial act to which judicial immunity applies. Stevens v. Osuna, 877 F.3d 1293, 1305 (11th Cir. 2017) (holding that a judge's order removing the plaintiff from the courthouse was a judicial function and observing that "[j]udges have an obligation to maintain control over the courthouse and over the conduct of persons in the courthouse; the issuance of an order removing persons from the courthouse in the interest of maintaining such control is an ordinary function performed by judges . . . ."); Cameron v. Seitz, 38 F.3d 264, 271 (6th Cir. 1994) (holding that a probate judge was entitled to judicial immunity because the act of barring the

plaintiff from entering the courtroom is a judicial act); Montana v. Connor, 817 F. Supp. 2d 440, 451 (D.N.J. 2011) (concluding that judge's act of barring the plaintiff from the courtroom was a judicial act subject to absolute judicial immunity); see also Orta v. Repp, Case No. 3:22-CV-00359-JGC, 2022 WL 17617308, at *5 (N.D. Ohio Dec. 13, 2022) (finding that "exercising control of the courtroom is . . . a judicial act").

Because all of Plaintiff's claims appear to be predicated on judicial acts to which judicial and quasi-judicial immunity apply, Plaintiff shall **SHOW CAUSE** why the Second Amended Complaint should not be dismissed for failure to state a claim. See Guiden v. Morrow, 92 F. App'x 663, 666 n.10 (10th Cir. 2004) (observing that absolute judicial immunity is analyzed under Federal Rule of Civil Procedure 12(b)(6)).

### b. Eleventh Amendment immunity

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." Williams v. Utah Dep't of Corr., 928 F.3d 1209, 1212 (10th Cir. 2019). "This immunity extends to arms of the state and to state officials who are sued for damages in their official capacity." Id. See also Colby v. Herrick, 849 F.3d 1273, 1276 (10th Cir. 2017) ("Eleventh Amendment immunity extends to governmental entities that are considered arms of the state."). Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction. Williams, 928 F.3d at 1212.

Thus, "[a] plaintiff . . . may not sue a governmental entity or its employees for a damage claim arising out of violations of rights under the New Mexico Constitution unless the NMTCA

[New Mexico Tort Claims Act] contains a waiver of immunity." Williams v. Bd. of Regents of Univ. of N.M., 20 F. Supp. 3d 1177, 1186 (D.N.M. 2014) (citing Chavez-Rodriguez v. City of Santa Fe, No. CIV 07–633 JB/DJS, 2008 WL 5992269, at *6-7 (D.N.M. Oct. 17, 2008); Barreras v. N.M. Corrs. Dep't, 62 P.3d 770, 776 (N.M. Ct. App. 2002) ("In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act."); Chavez v. City of Albuquerque, 952 P.2d 474, 477 (N.M. Ct. App. 1997) ("Plaintiff may not seek damages from the City for violation of state constitutional rights unless immunity is waived under the Tort Claims Act[.]"); Rubio v. Carlsbad Mun. Sch. Dist., 744 P.2d 919, 922 (N.M. Ct. App. 1987); Begay v. New Mexico, 723 P.2d 252, 255 (N.M. Ct. App. 1985)). "Thus, if no specific waiver can be found in the NMTCA, a plaintiff's complaint against the governmental entity or its employees must be dismissed." Id. (citing Begay, 723 P.2d at 255). See also N.M. Stat. Ann. § 41-4-4 ("A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by the New Mexico Religious Freedom Restoration Act and by Sections 41-4-5 through 41-4-12 NMSA 1978.").

In Count IV, Plaintiff has asserted a claim for damages against a governmental entity arising out of violations of rights under the New Mexico Constitution. ECF No. 99 ¶¶ 49-52. As such, it appears that Count IV is barred by sovereign immunity. See Gollomp v. Spitzer, 568 F.3d 355, 368 (2d Cir. 2009) (holding that the New York Unified Court System ("NYUCS") is an arm of the state and that plaintiff's claims for damages against the NYUCS were therefore barred by the Eleventh Amendment); Darcy v. Lippman, 356 F. App'x 434, 436 (2d Cir. 2009) (same); Johnson v. New Jersey, 869 F. Supp. 289, 296-97 (D.N.J. 1994) (finding that the "New Jersey

11

Superior Court is an 'arm' of the state entitled to share in the state's sovereign immunity" and dismissing claim for damages against the state court).

Accordingly, Plaintiff shall **SHOW CAUSE** why Count IV should not be dismissed for lack of subject matter jurisdiction as barred by the Eleventh Amendment.  See Dimas v. Pecos Indep. Sch. Dist. Bd. of Educ., No. 1:21-cv-00978-KWR-JFR, 2022 WL 816501, at *7 (D.N.M. Mar. 17, 2022) (dismissing the plaintiff's claim under Article II, Section 18 of the New Mexico Constitution because no specific waiver of immunity applied under the NMTCA).

### c. Individual capacity suits under Section 1983

"Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."  Brown v. Montoya, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (citing Hafer v. Melo, 502 U.S. 21, 27, 30 (1991)).

Here, Plaintiff is attempting to sue the individual Defendants in their individual capacities for injunctive relief only.  ECF No. 99 ¶¶ 37, 42, 48.  Accordingly, assuming arguendo that the individual Defendants are not immune, Plaintiff shall **SHOW CAUSE** why Counts I, II, and III should not be dismissed for failure to state a claim.  See Sgaggio v. Weiser, Civil Action No. 21–cv–00830–PAB–KMT, 2022 WL 252325, at *5 (D. Colo. Jan. 27, 2022) (recommending that the Court dismiss Section 1983 claim for injunctive relief against state actor in his individual capacity), report and recommendation adopted, 2022 WL 425240 (D. Colo. Feb. 8, 2022); Szopinski v. Williams, Civil Action No. 20-cv-02207-DDD-MEH, 2020 WL 13849174, at *3 (D. Colo. Nov. 20, 2020) (same), report and recommendation adopted, 2021 WL 11704694 (D. Colo. Aug. 11, 2021); Toles v. Okla. Dep't of Corr., Case No. CIV-17-150-D, 2017 WL 7734648, at *4 (W.D. Okla. July 27, 2017) (same).

12

### III. Conclusion

Therefore, it is **HEREBY ORDERED** that:

1. Plaintiff shall have **TWENTY-ONE DAYS** from the date of this Order to **SHOW CAUSE** why the claims asserted in the Second Amended Complaint should not be dismissed for failure to state a claim and/or lack of subject matter jurisdiction; and

2. Defendants shall have **FOURTEEN DAYS** from the date Plaintiff files his Response to this Order within which to file a Reply.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE