**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JAMES SPRINGER,

      Plaintiff,

v.                                No. 1:23-cv-00499-MIS-JMR

SEVENTH JUDICIAL DISTRICT COURT
MERCEDES MURPHY,
SHANNON MURDOCK-POFF,
JASON JONES, and SUSAN ROSSIGNOL,

      Defendants.

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

COMES NOW Defendants Seventh Judicial District Court, Mercedes Murphy, Shannon Murdock-Poff, Jason Jones, and Susan Rossignol (collectively "Defendants"), by and through their counsel of record, Garcia Law Group, LLC (Bryan C. Garcia, Rodney L. Gabaldon, and Jade Delfin), and state the following for their Reply to Plaintiff's Response to Order to Show Cause:

### INTRODUCTION

This action arises from an incident that occurred on January 27, 2023 at the Seventh Judicial District Torrance County courthouse. On that day, James Springer ("Plaintiff") interrupted a hearing already in progress, without a mask as required by state mandate, and snuck a cellphone into the courtroom to secretly record his visit. As result of Plaintiff's misconduct, Chief Judge Mercedes Murphy ("Chief Judge Murphy") entered an Administrative Order and Amended Administrative Order (collectively, "Administrative Orders") limiting Plaintiff's presence in the Seventh Judicial District Courthouses to his own matters or specific court business, and with a law enforcement escort.

On June 9, 2023, Plaintiff filed his original Complaint [Doc. 1]. Plaintiff filed his First Amended Complaint [Doc. 73] on November 27, 2023. Plaintiff then filed his *Second Amended Complaint for Declaratory Judgment and Injunctive Relief for Civil Rights Violations Under 42 U.S.C.A. § Violation s of Rights Protected by the New Mexico Civil Rights Act* ("Complaint") [Doc. 99] on February 21, 2024. In Plaintiff's Amended Complaint, Plaintiff alleges a claim under 42 U.S.C. § 1983 predicated on violations of the First Amendment rights for viewpoint discrimination, *id*. ¶¶ 36-37, a claim under 42 U.S.C. § 1983 predicated on First Amendment retaliation, *id*. ¶¶ 38-42; a claim under 42 U.S.C. § 1983 predicated on procedural due process violations, *id*. ¶¶ 43-48; and a violation of Article II, Sections 17, 18, and 23 of the New Mexico Constitution, *id*. ¶¶ 49-52. In his prayer for relief, Plaintiff requests a declaratory judgment that the Administrative Orders are unconstitutional and that employees of the Seventh Judicial District Court ("7th JDC") have violated Plaintiff's rights. *Id*. at p. 13-14. Plaintiffs also seek actual and punitive damages for their alleged injuries, and for preliminary and permanent injunctions against Defendants. *Id*. at p. 14.

At all times relevant to this suit, individually named Defendants Chief Judge Murphy, Shannon Murdock-Poff ("Judge Murdock-Poff"), Jason Jones ("Mr. Jones"), and Susan Rossignol ("Ms. Rossignol") were acting within the scope of their duties of the 7th JDC, including but not limited to enforcement of the Administrative Orders. Further, the 7th JDC has not consented to suit brought by Plaintiff. Finally, Plaintiff's request to amend his Complaint to name Chief Judge Murphy, Judge Murdock-Poff, Mr. Jones, and Ms. Rossignol in their official capacities is redundant of the claims he has brought against the 7th JDC, thus rendering his request futile. For these reasons, Plaintiff's Complaint should be dismissed with prejudice.

**LEGAL STANDARD**

An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity. The fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence at trial. *See Scheuer v. Rhodes*, 416 U.S. 232, 238-239 (1974); *Wood v. Strickland*, 420 U.S. 308, 320-322 (1975). "An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of immunity." *Benavidez v. Howard*, 931 F.3d 1225, 1229 (10th Cir. 2019). Public officials who seek absolute immunity, i.e., an absolute exemption from personal liability for allegedly unconstitutional conduct, bear the burden of showing that public policy requires an exemption of such broad scope. *Butz v. Economou*, 438 U.S. 478, 506, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978). In determining whether particular actions of government officials fit within a common-law tradition of absolute immunity, a functional approach looks to "the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 268 (citation omitted). The analysis concentrates "on the *conduct* for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful." *Id*. at 271 (emphasis added).

**LEGAL ARGUMENT**

**I.     DEFENDANTS ARE ENTITED TO IMMUNITY BECAUSE THEIR CONDUCT IS CLOSELY RELATED TO THE JUDICIAL PROCESS.**

Where a public official participating in the judicial process is sued in collateral proceedings, the focus on the effective functioning of the justice system does not arise from a generalized concern about interfering with the official's duties. Rather, the focus arises from a specific concern about interfering with "conduct closely related to the judicial process." *Burns v. Reed*, 500 U.S. 478, 493, 114 L. Ed. 2d 547, 111 S. Ct. 1934 (1991). The Supreme Court has

interpreted § 1983 to provide absolute immunity for the performance of certain functions "because any lesser degree of immunity could impair the judicial process itself." *Malley v. Briggs*, 475 U.S. 335, 342, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986). "[F]unctions that serve as an 'integral part of the judicial process' or that are 'intimately associated with the judicial process' are absolutely immune from civil suits." *Rogers v. O'Donnell*, 737 F.3d 1026, 1031 (6th Cir. 2013).

Judicial immunity has been created both by statute and by judicial decision î for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.ï *Pierson v. Ray*, 386 U.S. 547, 554, 18 L. Ed. 2d 288, 87 S. Ct. 1213 (1967) (citation and internal quotation marks omitted)

> As early as 1872, the Supreme Court recognized that it was a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, should be free to act upon his own convictions, without apprehension of personal consequences to himselfÜ Later we held that this doctrine of judicial immunity was applicable in suits under ®1 of the Civil Rights Act of 1871, 42 U.S.C. ® 1983, for the legislative record gave no indication that Congress intended to abolish this long-established principle.

*Stump v. Sparkman*, 435 U.S. 349, 355, 55 L. Ed. 2d 331, 98 S. Ct. 1099 (1978) (citation, internal quotation marks, and alterations omitted). î Imposing a burden [of exposure to liability] on judges would contribute not to principled and fearless decision-making but to intimidation.ï *Pierson*, 386 U.S. at 554. Judges, acting as judges, who are threatened with personal liability for those actions,

> may well be induced to act with an excess of caution or otherwise to skew their decisions in ways that result in less than full fidelity to the objective and independent criteria that ought to guide their conduct. In this way, exposing [judges] to the same legal hazards faced by other citizens may detract from the rule of law instead of contributing to it.

*Forrester v. White*, 484 U.S. 219, 223, 98 L. Ed. 2d 555, 108 S. Ct. 538 (1988).

In furtherance of these ends, "in any action brought against a judicial officer [pursuant to 42 U.S.C. ®1983] for an act or omission taken in such officer's judicial capacity, *injunctive relief shall not be granted* unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. ®1983; see also *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam) (discussing this statutory form of judicial immunity in the context of section 1983 actions). Absolute immunity "free[s] the judicial process from the harassment and intimidation associated with litigation." *Burns* 500 U.S. at 494.

Whether the doctrine is applicable depends on the function performed by the one seeking immunity. The focus is on the judicial process and the immunity-seeker's role in that process. *See Burns* at 493-94. Therefore, it is the nature and function of the act in question, not the act per se. *Mireles v. Waco*, 502 U.S. 9, 13, 116 L. Ed. 2d 9, 112 S. Ct. 286 (1991).

Courts have also extended the absolute judicial immunity afforded judges to individuals who perform functions closely associated with the judicial process. "The courtroom and courthouse premises are subject to the control of the court." *Sheppard v. Maxwell*, 384 U.S. 333, 358, 16 L. Ed. 2d 600, 86 S. Ct. 1507 (1966); *see also Martinez v. Winner*, 771 F.2d 424, 434 (10th Cir. 1985) (noting judge's responsibility for security during trial), *Snow v. Oklahoma*, 489 F.2d 278, 280 (10th Cir. 1973) (relegating type and necessity of security precautions to judge's discretion). Plaintiff had violated court rules and disrupted court business—he refused to wear a mask during a statewide mandate, snuck a phone into the courtroom, surreptitiously recorded a hearing, disrupted a court hearing, and verbally harassed court staff. Thus, the function of the Administrative Orders was to address Plaintiff's misconduct by limiting his access to the courthouse to appearing for a hearing or having specific Court business, and requiring that Plaintiff must be escorted by law enforcement while in the building. Maintaining the decorum of the

courtroom and courthouse premises, as well as enforcing statewide court rules and laws falls clearly within the general function normally performed by a judge.

### A.   Chief Judge Murphy and Judge Murdock-Poff are entitled to judicial immunity because issuing and enforcing the Administrative Orders are judicial acts.

ïImmunity analysis rests on functional categories, not on the status of the defendantï (citation and internal quotation marks omitted). *Cleavinger v. Saxner*, 474 U.S. 193, 201, 88 L. Ed. 2d 507, 106 S. Ct. 496 (1985). ï The factors determining whether an act by a judge is a íjudicialì one relate to the nature of the act itself, whether it is a function normally performed by a judge, and to the expectations of the parties, whether they dealt with the judge in his judicial capacity.ï *Stump*, 435 U.S. at 362; if the relevant action is judicial in nature, the judge is immune so long as it was not taken in the complete absence of jurisdiction. *See Mireles*, 502 U.S. at 11-12.

When Chief Judge Murphy issued the Administrative Orders, she engaged in a judicial act because the general nature and function of her actions were substantially judicial. *See generally*, Rule 23-109 NMRA. There was a nexus between the Administrative Orders and Plaintiffïs misconduct in the Seventh Judicial District Courthouses; the Administrative Orders were clearly designed to address Plaintiffïs misconduct, and directly related to Chief Judge Murphyìs role in the Seventh Judicial District.

The principles underlying judicial immunity suggest that Chief Judge Murphyìs actions should be protected. Exposing her to liability for her part in the decision to issue the Administrative Orders in response to Plaintiffïs misconduct would be inconsistent with the protection of the independence of her decision-making. A judge cannot be expected regularly and dispassionately to make decisions adverse to belligerent court visitors if subsequent actions to protect those in the courthouses from such contumacious behavior results in the rigors of defending against lengthy and costly litigation. Chief Judge Murphy had the authority to issue the Administrative Orders and

did so as part of her duties as Chief Judge of the Seventh Judicial District. Therefore, she is judicially immune from suit.

Further, judges have the authority to control their own courtrooms, and courts have held that a judge who orders an individual removed or barred from her courtroom is performing an act in her judicial capacity. *See, e.g., Sheppard v. Maxwell*, 384 U.S. 333, 358, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966) (ï[T]he courtroom and courthouse premises are subject to the control of the court.ï); *Stevens v. Osuna*, 877 F.3d 1293, 1305-06 (11th Cir. 2017) (finding judgeïs barring of an attorney from the courtroom and courthouse constituted a judicial act); *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994) (holding that barring admittance to the courtroom was a judicial act; *Montana v. Connor*, 817 F. Supp. 2d 440, 447-48 (D.N.J. 2011) (noting overwhelming authority holding that a judgeïs exercise of control over his or her courtroom falls within judicial immunity). When Chief Judge Murphy and Judge Murdock-Poff barred Plaintiff from their courtrooms, they were exercising their judicial authority to ban Plaintiff from their courtrooms and enforcing the Administrative Orders. Accordingly, Chief Judge Murphy and Judge Murdock-Poff are judicially immune from suit, and Plaintiff's Complaint should be dismissed with prejudice.

**B.      *Mr. Jones, and Ms. Rossignol are entitled to judicial immunity because they were enforcing the Administrative Orders.***

Absolute immunity is similarly available to court clerks who perform "quasi-judicial" duties. *See Henriksen v. Bentley*, 644 F.2d 852, 855 (10th Cir. 1981); *McKinney v. Oklahoma Dep't of Human Servs*., 925 F.2d 363, 365 (10th Cir. 1991) (recognizing judicial immunity for court clerk for alleged civil rights violations arising out of felony and juvenile proceedings). Several circuits have concluded that the same policies underlying immunity for judges also justify a similar grant of immunity to clerks for performance of tasks which are judicial in nature and an integral part of the judicial process. *See, e.g., Sindram v. Suda*, 300 U.S. App. D.C. 110, 986 F.2d 1459, 1460-61

(D.C. Cir. 1993)(citing cases); *see also Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996), cert. denied, 136 L. Ed. 2d 848, 117 S. Ct. 963 (1997)(clerk performed quasi-judicial functions for which he was entitled to absolute immunity); *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988) (judicial immunity extends to law clerks assisting judges performing judicial functions).

It is "the nature of the function performed, not the identity of the actor who performed it," that determines whether an individual is entitled to immunity. *Forrester*, 484 U.S. at 229. Even "when functions that are more administrative in character have been undertaken pursuant to the explicit direction of a judicial officer,…that officer's immunity is also available to the subordinate." *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir., cert. denied, 506 U.S. 1062, 113 S. Ct. 1002, 122 L. Ed. 2d 152 (1993). Thus, even if viewed as performing an administrative task, Mr. Jone and Ms. Rossignol are entitled to immunity for harms allegedly related to enforcing the Administrative Orders.

Mr. Jones, and Ms. Rossignol are court employees whose duties are closely associated with the judicial process. Because Chief Judge Murphy and Judge Murdock-Poff are entitled to judicial immunity, Mr. Jones and Ms. Rossignol are clothed with the same absolute immunity that would cloak the judge. *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000) ("Immunity which derives from judicial immunity may extend to persons other than a judge where performance of judicial acts or activity as an official aid of the judge is involved." (internal quotations and citations omitted); *see also Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (holding judges and support staff absolutely immune from acts associated with control of court docket). Accordingly, Mr. Jones and Ms. Rossignol are judicially immune from suit, and Plaintiff's Complaint should be dismissed with prejudice.

## II.    DEFENDANTS ARE ENTITLED TO ELEVENTH AMENDMENT IMMUNITY.

The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens, and extends to arms of the state and to state officials who are sued for damages in their official capacity. *See Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013). The Eleventh Amendment also precludes damages claims against state officers in their official capacities. *See Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017) "When a suit alleges a claim against a state official in his official capacity, the real party in interest…is the state, and the state may raise the defense of sovereign immunity under the Eleventh Amendment." *Callahan v. Poppell*, 471 F.3d 1155, 1158 (10th Cir. 2006) (quotations omitted). An Eleventh Amendment immunity defense challenges the district court's subject matter jurisdiction. *Harris v. Owens*, 264 F.3d 1282, 1288 (10th Cir. 2001). Absent a waiver of sovereign immunity or an effective congressional abrogation of it, the Eleventh Amendment shields state officials. *See Ross v. Bd. of Regents of Univ. of New Mexico*, 599 F.3d 1114, 1117 (10th Cir. 1998).

Here, the 7th JDC is a judicial state court. "Personnel of the district court are subject to all laws and regulations applicable to state offices and agencies and state officers and employees except where otherwise specifically provided by law." N.M. Stat. Ann. § 34-6-21. Therefore, the 7th JDC and its employees, the individually named defendants herein, are an arm of the state, and entitled to sovereign immunity. *See Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1195 (10th Cir. 1998). Because the 7th JDC has not consented to this suit and has not waived its immunity, Plaintiff's Complaint should be dismissed with prejudice.

## III.    PLAINTIFF'S REQUEST TO AMEND HIS COMPLAINT TO NAME DEFENDANTS IN THEIR OFFICIAL CAPACITY IS FUTILE BECAUSE SUCH CLAIMS WOULD BE DUPLICATIVE OF CLAIM BROUGHT AGAINST THE SEVENTH JUDICIAL DISTRICT

"An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir.1998). If a governmental entity is already a defendant in a lawsuit, then any official capacity claims against its employees are redundant and may be dismissed. *Bennett v. Johnson*, No. 09–CV–612–TCK–PJC, 2010 WL 2465499, at \*5 (N.D.Okla. June 11, 2010); *see also Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir.2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers...in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves."); *Bills v. City of Okla. City*, No. CIV–09–00974–D, 2010 WL 3604437, at \*2–3 (W.D.Okla. Sept.9, 2010) (dismissing official capacity claims against governmental employees that duplicated plaintiff's claims against the governmental entity); *Rubio v. Turner Unified Sch. Dist. No. 202*, 453 F.Supp.2d 1295, 1300 (D.Kan.2006) (dismissing duplicative official capacity claims).

"An official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1048 (10th Cir. 2022) (internal quotation marks omitted). In other words, official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. Consequently, when officials are sued in their official capacities, the lawsuit is treated as a suit against the governmental entity that employs the officials. *See Vialpando v. Ritter*, 52 F.3d 339 (10th Cir. 1995). "[A] §1983 action appropriately is pleaded against a [governmental entity] either by naming the [entity] itself or by naming [the entity's official] in his or her official capacity. Naming either is sufficient. *Naming both is redundant*." *Stump v. Gates*, 777 F.Supp. 808, 816 n.3 (D. Colo. 1991), aff'd, 986 F.2d 1429 (10th Cir. 1993) (citations omitted) (emphasis added). Further, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State*

*Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). They may be sued under § 1983 only for injunctive relief. *See id*. at 71 n.10; *Kentucky v. Graham*, 473 U.S. 159, 169 n.18, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). "[A] governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation." *Graham*, 473 U.S. at 166 (internal quotation marks omitted).

Plaintiff's Response to Order to Show Cause is to propose amending his complaint for a third time to name Chief Judge Murphy, Judge Murdock-Poff, Mr. Jones, and Ms. Rossignol in their official capacities. Any claims against proposed official capacity defendants in this suit would be redundant to any claims against the 7th JDC, rendering Plaintiff's amendment futile. Plaintiff fails to plead specific facts to show that the 7th JDC was a "moving force" behind his alleged First Amendment and due process violations. Moreover, if Plaintiff's real dispute is with individually named defendants, then he would be effectively abandoning his official-capacity § 1983 claims. Because Chief Judge Murphy, Judge Murdock-Poff, Mr. Jones, and Ms. Rossignol are absolutely immune from any liability to Plaintiff, amendment would be futile and his request for leave to amend should be denied. *See Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000). "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). Accordingly, Plaintiff's Complaint should be dismissed with prejudice.

## CONCLUSION

Defendants Chief Judge Murphy, Judge Murdock-Poff, Mr. Jones, and Ms. Rossignol were performing judicial actions, including but not limited to enforcement of the Administrative Orders, and are entitled to judicial immunity. Further, the 7th JDC is an arm of the has not consented to suit brought by Plaintiff nor waived its sovereign immunity. Finally, Plaintiff's request to amend

his Complaint to name Chief Judge Murphy, Judge Murdock-Poff, Mr. Jones, and Ms. Rossignol in their official capacities is redundant of the claims he has brought against the 7th JDC, thus rendering his request futile. For these reasons, Plaintiff's Complaint should be dismissed with prejudice.

**WHEREFORE**, Defendants Seventh Judicial District Court, Mercedes Murphy, Shannon Murdock-Poff, Jason Jones, and Susan Rossignol request that this Court dismiss Plaintiff's Second Complaint for Declaratory Judgment and Injunctive Relief for Civil Rights Violations Under 42 U.S.C.A. § Violation s of Rights Protected by the New Mexico Civil Rights Act; Emergency Request for a Temporary Restraining Order; Request for Preliminary Injunction, Permanent Injunctive Relief and Damages, award Defendants their costs and fees associated with responding to Plaintiffs' Complaint, and grant all other relief this Court deems just and proper.

Respectfully submitted,

**GARCIA LAW GROUP, LLC**
*/s/ Jade Delfin*
Bryan C. Garcia
Rodney L. Gabaldon
Jade Delfin
*Attorneys for Defendants*
6739 Academy Road NE, Suite 200
Albuquerque, NM 87109
(505) 629-1576 / (505) 652-1337 (fax)
bgarcia@garcialawgroupllc.com
rgabaldon@garcialawgroupllc.com
jdelfin@garcialawgroupllc.com

<u>**CERTIFICATE OF SERVICE**</u>
        I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CMECF on this the 20<u>th</u> day of May, 2024, which caused service to all counsel of record.

*/s/ Jade Delfin*
Jade Delfin