**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JAMES SPRINGER,

     Plaintiff,

v.

                             Case No. 1:23-cv-00499-MIS-JMR

SEVENTH JUDICIAL DISTRICT COURT,
MERCEDES MURPHY,
SHANNON MURDOCK-POFF,
JASON JONES, and
SUSAN ROSSIGNOL,

     Defendants.

**ORDER DISMISSING SECOND AMENDED COMPLAINT**

**THIS MATTER** is before the Court on Plaintiff's Response to the Court's Order to Show Cause, ECF No. 112, and Defendants' Reply thereto, ECF No. 113.

Upon review of the Parties' submissions, the record, and the relevant law, the Court will **DISMISS** Counts I, II, and III **with prejudice** to the extent they seek injunctive relief and retrospective declaratory relief, **DISMISS** Counts I, II, and III **without prejudice** to the extent they seek prospective declaratory relief, and **DISMISS** Count IV **without prejudice** for lack of subject matter jurisdiction.

## I.    Background

On February 28, 2023, the Chief Judge of the Seventh Judicial District Court, Defendant Mercedes C. Murphy ("Chief Judge Murphy"), issued an Administrative Order "in the interest of the safety and security of Judges, Special Commissioners, Hearing Officers, and other Court personnel," barring Plaintiff from entering the Torrance County District Courthouse in Estancia, New Mexico, "unless appearing for a hearing or having specific Court business, in which cases

[Plaintiff] shall be escorted and accompanied by the Torrance County Sheriff's Office, while in the building."  ECF No. 99-1 ("Administrative Order");[1] see also ECF No. 99 ¶¶ 15-18.

On March 1, 2023, two officers with the New Mexico State Police delivered a copy of the Administrative Order to Plaintiff.  ECF No. 99 ¶ 15.  At the same time, the officers delivered to Plaintiff a copy of a letter dated March 1, 2023, to Plaintiff from Defendant Jason Jones—the Court Executive Officer of the Seventh Judicial District Court.  Id. ¶ 19.  The Letter states:

> As the CEO of the Seventh Judicial District Court, it has been brought to my attention that court staff are being harassed on your behalf and has impacted court resources.  The Court has issued an Administrative Order on March 1, 2023, that if you are required to be in court or have official court business you will check in with the Torrance County Sheriff's Office to be escorted and accompanied pursuant to the Administrative Order.

ECF No. 99-2 ("March 1st Letter").[2]

On March 23, 2023, Chief Judge Murphy issued an Amended Administrative Order barring Plaintiff from entering other courthouses within the Seventh Judicial District, "unless appearing for a hearing or having specific Court business, in which cases [Plaintiff] shall be escorted and accompanied by the [sic] law enforcement, while in any of the buildings."  ECF No. 99-3 ("Amended Administrative Order");[3] see also ECF No. 99 ¶ 21.  The same day, Defendant Jones signed a second letter to Plaintiff stating that Defendant entered the Moriarty Magistrate Court for non-court business and was being "disruptive and threatening" in the courthouse.  ECF No. 99-4 ("March 23rd Letter").[4]  The March 23rd Letter advises Plaintiff that Chief Judge Murphy

---

[1]   The Administrative Order is attached as Exhibit 1 to the Second Amended Complaint.  ECF No. 99-1

[2]   The March 1st Letter is attached as Exhibit 2 to the Second Amended Complaint.  ECF No. 99-2.

[3]   The Amended Administrative Order is attached as Exhibit 3 to the Second Amended Complaint. ECF No. 99-3.

[4]   The March 23rd Letter is attached as Exhibit 4 to the Second Amended Complaint.  ECF No. 99-4.

amended the Administrative Order to require that Plaintiff be escorted and accompanied in any of the Seventh Judicial District's magistrate or district courthouses.  Id.

On May 18, 2023, Plaintiff attempted to attend a public hearing "as [a] member of the press to report on the case in a criminal matter before the Honorable Mercedes Murphy by way of a video conferencing platform."  ECF No. 99 ¶ 25.  "After dialing in to the public hearing via the video conferencing platform, Judge Murphy summarily ejected Plaintiff from the video conferencing platform and from the public hearing without providing Plaintiff notice and an opportunity to be heard on the matter of whether he could attend the public hearing."  Id. ¶ 26.

"On May 24, 2023, Judge Shannon Murdock-Poff issued an order . . . excluding Plaintiff from a hearing in a civil matter . . . that Plaintiff planned to attend as a member of the press and the public."  Id. ¶ 27 (citing "Order Excluding Presence," Luna v. Cooke-Lovato, Case No. D-722-DV-2019-00050 (7th Jud. Dist. Ct. (Torrance Cnty.) May 24, 2023), ECF No. 99-5).[5]

The Second Amended Complaint alleges that "[o]n multiple dates, Susan Rossignol has…refused Plaintiff's statutory right under New Mexico law to petition his government for redress by inspecting public records in the clerk's office."[6]  Id. ¶ 28.  It alleges that "Defendant Rossignol out of retaliation has required state police presence to harass and intimidate Plaintiff when he entered the Estancia District Court house for the purpose of conducting court business associated to making records requests."  Id. ¶ 29.  "This retaliation culminated in an outright refusal to accept protected petitioning activity to exercise his statutory right to request public records on

---

[5]     The Order Excluding Presence is attached as Exhibit 5 to the Second Amended Complaint.  ECF No. 99-5.

[6]     The Second Amended Complaint alleges that Defendant Rossignol is "a clerk of the Seventh Judicial District Court of New Mexico . . . ."  ECF No. 99 ¶ 6.

June 8, 2023 and Ms. Rossignol requiring that Torrance County Sheriff's Deputy Young chase

Plaintiff from the building which he did."  Id. ¶ 30(1).[7]  It further alleges that

> Defendant Rossignol, upon information and belief, at the direction of Defendant Murphy, falsely reported to the New Mexico State Police that Plaintiff was an armed threat and proceeded to close her government office to the public during normal business hours in an effort to place Plaintiff' [sic] life in jeopardy and to deprive him of his statutory and constitutional rights to petition his government for redress.

Id. ¶ 35(1).[8]

On June 9, 2023, Plaintiff initiated this action by filing a Complaint with an incorporated

Motion for Temporary Restraining Order and Preliminary Injunction.  See ECF No. 1.  On

September 22, 2023, the Court issued an Amended Order denying the Motion for Temporary

Restraining Order and Preliminary Injunction, finding that Plaintiff failed to establish a substantial

likelihood of success on the merits of his claims.  ECF No. 38.

On November 27, 2023, Plaintiff filed an Amended Complaint, ECF No. 73, which

Defendants moved to dismiss, ECF No. 77.  On February 9, 2024, the Court issued an Order

granting in part Defendants' Motion to Dismiss the Amended Complaint, finding that (1) the Court

lacked personal jurisdiction over Chief Judge Murphy, Judge Murdock-Poff, Defendant Jones, and

the Seventh Judicial District Court because Plaintiff failed to properly serve those Defendants,

ECF No. 97 at 21, and (2) the claims against Defendant Rossignol—Counts II and III—failed to

state a claim upon which relief can be granted, id. at 26-32.  The Court provided Plaintiff leave to

---

[7]    The Second Amended Complaint contains two paragraphs numbered "30."  ECF No. 99.  The Court's citation to paragraph 30(1) refers to the first paragraph 30, sequentially.

[8]    The Second Amended Complaint contains two paragraphs numbered "35."  ECF No. 99.  The Court's citation to paragraph 35(1) refers to the first paragraph 35, sequentially.

serve Chief Judge Murphy, Judge Murdock-Poff, Defendant Jones, and the Seventh Judicial

District Court and to file a Second Amended Complaint.  Id. at 33-34.

On February 21, 2024, Plaintiff filed the operative Second Amended Complaint asserting

four causes of action.

**Count I** alleges a claim under 42 U.S.C. § 1983 predicated on violations of the First

Amendment rights to freedom of the press and speech, which Plaintiff characterizes as "viewpoint

discrimination," against Chief Judge Murphy and Judge Murdock-Poff.  ECF No. 99 at 36, 30(2)-

37.[9]  Specifically, it alleges that Chief Judge Murphy and Judge Murdock-Poff "engaged in

viewpoint discrimination by banning and excluding Plaintiff from a public places [sic] and

hearings prohibiting him attending and reporting on public matters."  Id. ¶ 31(2).[10]

**Count II** alleges a claim under 42 U.S.C. § 1983 predicated on retaliation in violation of

the First Amendment rights to freedom of the press and speech "including denial of the protected

liberty interest in petitioning the Government" against all Defendants.  Id. ¶¶ 38-42.  Specifically,

it alleges that

> Defendants Jason Jones and Susan Rossignol have each undertaken retaliatory
> efforts (Jones to issue threatening letters designed to chill Plaintiff's exercise of
> speech, press and petitioning and Rossignol to refuse Plaintiff's statutory right to
> inspect public records, to give false reports to state police about Plaintiff being an
> armed threat endangering his life, and cutting off his ability to petition his
> government by closing the government office during normal business hours when
> Plaintiff was present.) Upon information, all retaliatory efforts, including excluding
> Plaintiff from Defendant Murdock-Poff's public hearing were undertaken at the
> direction and in agreement with Defendant Murphy.

---

[9]      Count I of the Second Amended Complaint contains five paragraphs, numbered 36, 30, 31, 32, and
37, in that order.  The "General Allegations" also contains paragraphs numbered 30, 31, and 32 which are different
than the paragraphs numbered 30, 31, and 32 in Count I.

[10]      The Second Amended Complaint contains two paragraphs numbered "31."  ECF No. 99.  The
Court's citation to paragraph 31(2) refers to the second paragraph 31, sequentially.

Id. ¶ 40.

**Count III** alleges a claim under 42 U.S.C. § 1983 predicated on procedural due process violations (apparently against all four individual Defendants). Id. ¶¶ 43-48. Specifically, it alleges that "[t]he Orders issued by Defendants Murphy and Murdock-Poff and the actions taken by Jones and Rossignol deprive Plaintiff his fundamental liberty interests in speech, press and petitioning without due process of law, based solely upon discretion of the Defendants." Id. ¶ 47.

**Count IV** alleges a violation of Article II, Sections 17, 18, and 23 of the New Mexico Constitution against Defendant Seventh Judicial District Court only. Id. ¶¶ 49-52. It alleges that the Seventh Judicial District Court violated "Plaintiff's constitutional rights of freedom of speech, freedom of press, freedom of assembly, and due process when [it] entered the Administrative Order[,] Amended Administrative Order[,]" and Judge Murdock-Poff's Order Excluding Presence, and when it had those Orders and Defendant Jones's Letters "served on Plaintiff with no notice and opportunity to be heard." Id. ¶ 50. It further alleges that the Seventh Judicial District Court violated Plaintiff's right to free speech under Article II, section 17, when it "retaliated against Plaintiff by ejecting him from the public hearing on May 18, 2023, by denying him access as member [sic] of the press to Defendant Murdock-Poff's public hearing, denying him statutory rights to access public records and harassing with unnecessary and chilling law enforcement presence." Id. ¶ 51.

The Second Amended Complaint is asserted against the individual Defendants in their individual capacities only. ECF No. 99 ¶¶ 3-6; see also id. at 1. Counts I, II, and III seek declaratory and injunctive relief only, id. ¶¶ 37, 42, 48, while Count IV seeks actual damages from the Seventh Judicial District Court, see id. ¶ 52.

On March 6, 2024, Defendants filed a Motion to Dismiss arguing that the Second Amended Complaint should be dismissed for failure to state a claim.  ECF No. 105.  Plaintiff filed a Response, ECF No. 108, to which Defendants filed a Reply, ECF No. 109.  That Motion remains pending.

On May 1, 2024, the Court issued an Order to Show Cause raising the issue of whether Defendants are entitled to judicial immunity, quasi-judicial immunity, and/or Eleventh Amendment immunity; and even if they are not immune, whether Counts I, II, and III fail to state a claim under Section 1983 because the Second Amended Complaint seeks only injunctive relief from Defendants in their individual capacities.[11]  ECF No. 111 at 6-12.

On May 13, 2024, Plaintiff filed a Response, ECF No. 112, to which Defendants filed a Reply, ECF No. 113.

## II.     Discussion

For the reasons that follow, the Court finds that Counts I, II, and III must be dismissed with prejudice in part and without prejudice in part, and that Count IV must be dismissed without prejudice for lack of subject matter jurisdiction.[12]

---

[11]      See Hennessey v. Univ. of Kan. Hosp. Auth., 53 F.4th 516, 531 (10th Cir. 2022) (observing that a district court may raise Eleventh Amendment sovereign immunity sua sponte); Andrews v. Heaton, 483 F.3d 1070, 1076 & n.2 (10th Cir. 2007) (affirming district court's sua sponte dismissal of claims against judges based on absolute judicial immunity).

[12]      On September 29, 2023, Plaintiff filed a Motion asking the Undersigned Judge to recuse or disqualify herself from this case.  ECF No. 40.  The Court denied the Motion.  ECF No. 61.
     Plaintiff begins his Response to the Court's Order to Show Cause by "renew[ing]" the concerns expressed in his Motion for recusal.  ECF No. 112 at 1.  The Court hereby adopts its prior Order denying Plaintiff's request for recusal and disqualification, finding no basis for recusal under 28 U.S.C. § 144, and finding disqualification improper under 28 U.S.C. § 455(a).

a. **Counts I, II, and III – Judicial Immunity, Quasi-Judicial Immunity, Declaratory Relief for Past Liability, and Individual Capacity Claims for Prospective Declaratory Relief**

As discussed below, the Court finds that to the extent the Counts I, II, and III seek injunctive relief, the individual Defendants are entitled to judicial and quasi-judicial immunity; and to the extent Counts I, II, and III seek (1) declaratory relief for past liability and (2) prospective declaratory relief against Defendants in their individual capacities, they fail to state claims upon which relief can be granted.

1. **Judicial and Quasi-Judicial Immunity**

"[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."[13]  Stump v. Sparkman, 435 U.S. 349, 355-56 (1978) (quotation marks and citation omitted).  Indeed, "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." Id. at 359.  Furthermore, "[b]y enacting the 1996 Federal Courts Improvement Act . . . Congress . . . expanded the ambit of judicial immunity by amending § 1983 so as to prohibit injunctive relief against a judicial officer." Coleman v. Governor of Mich., 413 F. App'x 866, 873 (6th Cir. 2011) (quotation marks and citation omitted); see also Lawrence v. Kuenhold, 271 F. App'x 763, 766 n.6 (10th Cir. 2008) ("Section 309(c) of the FCIA bars injunctive relief in any § 1983 action 'against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable.' Thus, the doctrine of

---

[13]       Similarly, in New Mexico, judges have absolute judicial immunity "from liability for their actions taken in performance of their roles as integral parts of the judicial process." Hunnicutt v. Sewell, 219 P.3d 529, 533 (N.M. Ct. App. 2009) (quoting Collins ex rel. Collins v. Tabet, 806 P.2d 40, 45 (N.M. 1991)).  To determine whether a defendant enjoys absolute judicial immunity, the Court applies "a functional test to determine whether the acts alleged by Plaintiff were judicial functions." Id. (citing Collins, 806 P.2d at 45).

judicial immunity now extends to suits against judges where a plaintiff seeks not only monetary relief, but injunctive relief as well."); 42 U.S.C. § 1983 (providing that injunctive relief shall not be granted in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity unless a declaratory decree was violated or declaratory relief was unavailable).

The Supreme Court has stated that "the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Stump, 435 U.S. at 362. However, the Supreme Court "has never undertaken to articulate a precise and general definition of the class of acts entitled to immunity." Forrester v. White, 484 U.S. 219, 227 (1988). Instead, it has explained that "immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." Id.

"Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." Mierles v. Waco, 502 U.S. 9, 11 (1991). "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." Id. Rather, judicial immunity is overcome in only two circumstances. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." Id. (citations omitted). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. at 12 (citations omitted).

"Just as judges acting in their judicial capacity are absolutely immune from liability under section 1983, 'official[s] charged with the duty of executing a facially valid court order enjoy[ ] absolute immunity from liability for damages in a suit challenging conduct prescribed by that

order.'"  Turney v. O'Toole, 898 F.2d 1470, 1472 (10th Cir. 1990) (citations omitted) (quoting

Valdez v. City & Cnty. of Denver, 878 F.2d 1285, 1286 (10th Cir. 1989)).  Additionally, "absolute

judicial immunity has been extended to non-judicial officers where 'their duties had an integral

relationship with the judicial process.'"  Whitesel v. Sengenberger, 222 F.3d 861, 867 (10th Cir.

2000) (quoting Eades v. Sterlinske, 810 F.2d 723, 726 (10th Cir. 1987)).  Like judicial immunity,

"quasi-judicial immunity" is absolute immunity from suit.  See Guttman v. Khalsa, 446 F.3d 1027,

1033 (10th Cir. 2006) (citing Horwitz v. State Bd. of Med. Exam'rs, 822 F.2d 1508, 1513 (10th

Cir. 1987)).

Here, the Court finds that Counts I through IV are all predicated on the issuance and

execution of: (1) Chief Judge Murphy's Administrative Order barring Plaintiff from entering the

Torrance County District Courthouse in Estancia, New Mexico (unless appearing for a hearing or

having specific Court business, and then only with a law enforcement escort); (2) Chief Judge

Murphy's Amended Administrative Order barring Plaintiff from all of the Seventh Judicial

District's magistrate and district courthouses (unless appearing for a hearing or having specific

Court business, and then only with a law enforcement escort); (3) Chief Judge Murphy's decision

to remove Plaintiff from a hearing being held virtually via video conference; and (4) Judge

Murdock-Poff's Order Excluding Plaintiff's Presence at a hearing in a civil matter.  See ECF No.

99 ¶¶ 30(2)-31(2), 40, 47, 50-51.  Because "issuing administrative orders is a function normally

performed by a chief judge[,]" Reynolds v. Flynn, Civil Action No. 21-cv-01154-RM-NYW, 2022

WL 20538911, at *3 (D. Colo. Mar. 31, 2022), it is a judicial act to which judicial immunity

applies, id.  "And to be sure, judicial control over who may appear before a judge is inherently a

judicial act, not an administrative one."  Kazarinoff v. Wilson, Civil Action No. 1:22-cv-02385-

PAB-SKC, 2023 WL 9183661, at *5 (D. Colo. Nov. 21, 2023) (finding that judicial immunity

protected chief judge who issued an administrative order preventing the plaintiffs from entering

the courthouse).  As such, an order (or other act) barring an individual from entering the courthouse

or a courtroom is a judicial act to which judicial immunity applies.   Stevens v. Osuna, 877 F.3d

1293, 1305 (11th Cir. 2017) (holding that a judge's order removing the plaintiff from the

courthouse was a judicial function and observing that "[j]udges have an obligation to maintain

control over the courthouse and over the conduct of persons in the courthouse; the issuance of an

order removing persons from the courthouse in the interest of maintaining such control is an

ordinary function performed by judges . . . ."); Cameron v. Seitz, 38 F.3d 264, 271 (6th Cir. 1994)

(holding that a probate judge was entitled to judicial immunity because the act of barring the

plaintiff from entering the courtroom is "clearly" a judicial act); Montana v. Connor, 817 F. Supp.

2d 440, 451 (D.N.J. 2011) (concluding that judge's act of barring the plaintiff from the courtroom

was a judicial act subject to absolute judicial immunity); see also Orta v. Repp, Case No. 3:22-

CV-00359-JGC, 2022 WL 17617308, at *5 (N.D. Ohio Dec. 13, 2022) (finding that "exercising

control of the courtroom is . . . a judicial act").   And because the Administrative Order and

Amended Administrative Order are facially valid, Defendants Jones and Rossignol's actions to

execute and enforce those Orders are subject to quasi-judicial immunity.  See generally Moss v.

Kopp, 559 F.3d 1155, 1165-67 (10th Cir. 2009); see also Smith v. Finch, 324 F. Supp. 3d 1012,

1020 (E.D. Mo. 2018) ("[A]bsolute quasi-judicial immunity may apply to court employees or other

government employees when they perform acts closely related to the judicial function, such as

carrying out a judge's order.") (citing Rogers v. Bruntrager, 841 F.2d 853, 856 (8th Cir. 1988)

("Clerks of court have absolute immunity from actions for damages arising from acts they are

specifically required to do under court order or at a judge's direction."))

Plaintiff argues that the Supreme Court's decision in Supreme Court of Virginia v. Consumers Union of the United States, Inc., 446 U.S. 719, 735-36 (1980) permits him to maintain an action against Defendants for declaratory and injunctive relief.  ECF No. 112 at 2-4.  Plaintiff is half-correct: "judicial immunity does not necessarily foreclose declaratory relief in the appropriate case[.]"  Ysais v. New Mexico, 373 F. App'x 863, 866 (10th Cir. 2010) (emphasis added).  However, "[t]he 1996 amendments to § 1983 superseded Consumers Union with respect to injunctive relief."  Perkins v. Sauvaine, C/A No. 6:12–1085–TMC–JDA, 2012 WL 2874043, at *3 (D.S.C. June 1, 2012) (emphasis added).  "Thus, the doctrine of judicial immunity now extends to suits against judges where a plaintiff seeks not only monetary relief, but injunctive relief as well."  Lawrence, 271 F. App'x at 766 n.6.

Accordingly, to the extent that Counts I, II, and III seek injunctive relief, the Court finds that they are barred by absolute judicial and quasi-judicial immunity.  See Hill v. Town of Valley Brook, 595 F. Supp. 3d 1030, 1040-41 (W.D. Okla. 2022) (finding that the defendant was entitled to judicial immunity from claims for injunctive relief); Flanders v. Snyder Bromley, Civil Action No. 09–cv–01623–CMA–KMT, 2010 WL 2650025, at *6 (D. Colo. Apr. 9, 2010) (recommending dismissal of claims for injunctive relief because the defendant was entitled to judicial immunity), report and recommendation adopted, 2010 WL 2650028 (D. Colo. June 30, 2010).  The claims for injunctive relief in Counts I, II, and III are therefore dismissed with prejudice.  See Mehdipour v. Matthews, 386 F. App'x 775, 778, 780 (10th Cir. 2010) (affirming dismissal with prejudice of Section 1983 claims barred by judicial immunity); Matios v. City of Loveland, No. 23-cv-01844-WPJ, 2024 WL 896758, at *4 (D. Colo. Mar. 1, 2024) (dismissing with prejudice claims barred by judicial immunity).

### 2.  Declaratory Relief Based on Past Liability

On the other hand, as mentioned above, "Section 1983 does not preclude declaratory relief against a judicial officer." Catanach v. Thomson, 718 F. App'x 595, 599 n.4 (10th Cir. 2017) (citing Lawrence, 271 F. App'x at 766 & n.6).  However, "not every plaintiff is entitled to this remedy." Lawrence, 271 F. App'x at 766.  Rather, the plaintiff must be seeking a declaration of future rights, and not simply a declaration of past liability.  Id.; see also Ysais, 373 F. App'x at 866 ("A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act.").

The Court finds that to the extent Counts I, II, and III seek a declaration regarding the constitutionality of (1) Chief Judge Murphy's decision to eject Plaintiff from a virtual hearing on May 18, 2023; (2) Judge Murdock-Poff's Order Excluding Plaintiff's Presence from a hearing on May 24, 2023; (3) Defendant Jones's Letters informing Plaintiff of the Administrative Orders; and (4) past actions of Defendant Rossignol, see ECF No. 99 ¶¶ 19-20, 22-23, 28-30(1), 30(2)-31(2), 40, 47, they must be dismissed because they are seeking a declaration of past liability.  See Lawrence, 271 F. App'x at 766-67 (holding that the district court properly dismissed the plaintiff's claim for a declaration that a judgment entered by a state court judge should be vacated as void because it was seeking a declaration of past liability, not of future rights between the plaintiffs and the judge); Stubbs v. Skrepenak, 1:22-CV-00940, 2022 WL 22738280, at *7 (M.D. Pa. Aug. 22, 2022) (recommending dismissal of a claim for declaratory relief against judicial defendants because the plaintiff was seeking to adjudicate alleged past unlawful activity), report and recommendation adopted, 2022 WL 22738282 (M.D. Pa. Nov. 10, 2022); Flanders, 2010 WL 2650025, at *7 (recommending dismissal of a claim for a declaration that a judge's order violated

13

the plaintiff's constitutional rights because the plaintiff was seeking a declaration of past liability),

report and recommendation adopted, 2010 WL 2650028 (D. Colo. June 30, 2010).

Because claims seeking a declaration of past liability are "not cognizable[,]" Lawton v. Bd.

of Regents of Univ. of Neb., 4:21CV3162, 2022 WL 2047600, at *9-10 (D. Neb. June 7, 2022),

they are dismissed with prejudice for failure to state a claim, id. at *9-10, 23 (dismissing with

prejudice claim for declaratory relief to adjudicate past liability because such claims are "not

cognizable").  See also Corbin v. French, CIVIL ACTION NO. 22-CV-3016, 2022 WL 17251756,

at *5 (E.D. Pa. Nov. 28, 2022) (dismissing with prejudice a claim seeking a declaration that the

defendants violated his constitutional rights because "[d]eclaratory relief is unavailable to

adjudicate past conduct").

### 3.  Individual Capacity Claims for Prospective Declaratory Relief

Although the Court finds that Counts I, II, and III also seek prospective declaratory relief

to the extent they seek a declaration that Chief Judge Murphy's Administrative Order and Amended

Administrative Order continue to violate his constitutional rights, they must be dismissed because

they are asserted against Chief Judge Murphy in her individual capacity only.

"Under § 1983, a plaintiff cannot sue an official in their individual capacity for injunctive

or declaratory relief."[14]  Chilcoat v. San Juan Cnty., 41 F.4th 1196, 1214 (10th Cir. 2022) (citing

Brown v. Montoya, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011)).  See also BEG Invs., LLC v.

Alberti, 34 F. Supp. 3d 68, 80 (D.D.C. 2014) ("Courts have concluded that 'there is no basis for

suing a government official for declaratory and injunctive relief in his or her individual or personal

---

[14]      Plaintiff appears to concede this point in his Response, see ECF No. 112 at 2, and requests leave to amend to name Defendants in their official capacity, id. at 2, 5.

capacity.'") (quoting <u>Hatfill v. Gonzales</u>, 519 F. Supp. 2d 13, 19 (D.D.C. 2007), and collecting cases).

Here, the Second Amended Complaint names Chief Judge Murphy in her individual capacity only. Accordingly, to the extent Counts I, II, and III seek prospective declaratory relief, they are dismissed without prejudice for failure to state a claim. <u>Id.</u> (dismissing claim for declaratory relief asserted against the defendants in their individual capacities).

In sum, Counts I, II, and III are: (1) dismissed <u>with</u> prejudice to the extent they seek injunctive relief because the individual Defendants are entitled to absolute judicial and quasi-judicial immunity from such claims; (2) dismissed <u>with</u> prejudice for failure to state a claim to the extent they seek a declaration of past liability; and (3) dismissed <u>without</u> prejudice for failure to state a claim to the extent they seek prospective declaratory relief against Chief Judge Murphy.

Because Counts I, II, and III seek <u>only</u> (1) injunctive relief and (2) a declaration of past liability as to Judge Murdock-Poff, Defendant Jones, and Defendant Rossignol, all claims asserted as to those Defendants are dismissed with prejudice and those Defendants shall be terminated from this action. The Court will grant Plaintiff leave to amend Counts I, II, and III to name Chief Judge Murphy in her official capacity.

### b. Count IV – Eleventh Amendment Immunity

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Eleventh Amendment [also] bars suits in federal court against a nonconsenting state brought by the state's own citizens." <u>Williams v. Utah Dep't of Corr.</u>, 928 F.3d 1209, 1212 (10th Cir. 2019). "This immunity extends to arms of the state and to state officials

who are sued for damages in their official capacity." Id. See also Colby v. Herrick, 849 F.3d

1273, 1276 (10th Cir. 2017) ("Eleventh Amendment immunity extends to governmental entities

that are considered arms of the state."). Eleventh Amendment immunity constitutes a bar to the

exercise of federal subject matter jurisdiction. Williams, 928 F.3d at 1212.

Thus, "[a] plaintiff . . . may not sue a governmental entity or its employees for a damage

claim arising out of violations of rights under the New Mexico Constitution unless the NMTCA

[New Mexico Tort Claims Act] contains a waiver of immunity." Williams v. Bd. of Regents of

Univ. of N.M., 20 F. Supp. 3d 1177, 1186 (D.N.M. 2014) (citing Chavez-Rodriguez v. City of

Santa Fe, No. CIV 07–633 JB/DJS, 2008 WL 5992269, at *6-7 (D.N.M. Oct. 17, 2008); Barreras

v. N.M. Corr. Dep't, 62 P.3d 770, 776 (N.M. Ct. App. 2002) ("In the absence of affirmative

legislation, the courts of this state have consistently declined to permit individuals to bring private

lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an

express waiver of immunity under the Tort Claims Act."); Chavez v. City of Albuquerque, 952

P.2d 474, 477 (N.M. Ct. App. 1997) ("Plaintiff may not seek damages from the City for violation

of state constitutional rights unless immunity is waived under the Tort Claims Act[.]"); Rubio v.

Carlsbad Mun. Sch. Dist., 744 P.2d 919, 922 (N.M. Ct. App. 1987); Begay v. New Mexico, 723

P.2d 252, 255 (N.M. Ct. App. 1985)). "Thus, if no specific waiver can be found in the NMTCA,

a plaintiff's complaint against the governmental entity or its employees must be dismissed." Id.

(citing Begay, 723 P.2d at 255). See also N.M. Stat. Ann. § 41-4-4 ("A governmental entity and

any public employee while acting within the scope of duty are granted immunity from liability for

any tort except as waived by the New Mexico Religious Freedom Restoration Act and by Sections

41-4-5 through 41-4-12 NMSA 1978.").

In Count IV, Plaintiff has asserted a claim for damages against a governmental entity arising out of violations of rights under the New Mexico Constitution.  ECF No. 99 ¶¶ 49-52.  As such, it is barred by sovereign immunity unless the NMTCA contains a waiver of immunity.  See Gollomp v. Spitzer, 568 F.3d 355, 368 (2d Cir. 2009) (holding that the New York Unified Court System ("NYUCS") is "unquestionably" an arm of the state and that plaintiff's claims for damages against the NYUCS were therefore barred by the Eleventh Amendment); Darcy v. Lippman, 356 F. App'x 434, 436 (2d Cir. 2009) (same); Johnson v. New Jersey, 869 F. Supp. 289, 296-97 (D.N.J. 1994) (finding that the "New Jersey Superior Court is an 'arm' of the state entitled to share in the state's sovereign immunity" and dismissing claim for damages against the state court).

Plaintiff argues that the NMTCA's waiver of immunity for violations of civil rights applies here.  ECF No. 112 at 4-5 (citing N.M. Stat. Ann. § 41-4A-3).  That waiver provides, in relevant part:

> A. A public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body shall not subject or cause to be subjected any resident of New Mexico or person within the state to deprivation of any rights, privileges or immunities secured pursuant to the bill of rights of the constitution of New Mexico.
>
> B. A person who claims to have suffered a deprivation of any rights, privileges or immunities pursuant to the bill of rights of the constitution of New Mexico due to acts or omissions of a public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body may maintain an action to establish liability and recover actual damages and equitable or injunctive relief in any New Mexico district court.

N.M. Stat. Ann. § 41-4A-3(A) & (B) (emphasis added).  By its own terms, this waiver is limited to actions commenced "in any New Mexico district court."  Id.

> The Tenth Circuit has interpreted analogous language in the New Mexico Tort Claims Act ("NMTCA") to mean that a plaintiff cannot "pursue [a] claim against [a state public body] and its employees acting within the scope of their employment

17

in the federal district court, but rather is relegated to the state district court to seek
relief consistent with the limited waiver of immunity under [the NMTCA]."

Valdez v. Grisham, 559 F. Supp. 3d 1161, 1181 (D.N.M. 2021) (quoting Bishop v. John Doe 1, 902

F.2d 809, 810 (10th Cir. 1990)).  The Valdez court further rejected the plaintiff's argument (which

Plaintiff also makes here) that the court had supplemental jurisdiction over the complaint's claims

under the New Mexico Civil Rights Act because "'immunity under the Eleventh Amendment is

not abrogated by 28 U.S.C. § 1367, and therefore, § 1367 does not authorize federal district courts

to exercise jurisdiction over claims against nonconsenting states.'"  Id. (quoting Quarrie v. N.M.

Inst. of Mining & Tech., No. 13-cv-0349 MV/SMV, 2014 WL 11456598, at *2 (D.N.M. Feb. 25,

2014) (citing Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 542 (2002))).  The Court agrees

with this analysis and adopts it.  Consequently, the Court finds that Count IV is barred by Eleventh

Amendment immunity.

Because Count IV is barred by Eleventh Amendment immunity, it must be dismissed

without prejudice for lack of subject matter jurisdiction.  See Colby, 849 F.3d at 1278 (holding that

a dismissal based on Eleventh Amendment immunity is without prejudice).

### III.    Conclusion

Accordingly, it is **HEREBY ORDERED** that:

1. Counts I, II, and III are **DISMISSED WITH PREJUDICE** to the extent they seek (1)
   injunctive relief and (2) a declaratory judgment regarding past liability;

2. Counts I, II, and III are **DISMISSED WITHOUT PREJUDICE** to the extent they seek
   prospective declaratory relief regarding the constitutionality of Chief Judge Murphy's
   Administrative Order and Amended Administrative Order;

3. Count IV is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction;

4. Defendants Motion to Dismiss Plaintiff's Second Amended Complaint for Declaratory and Injunctive Relief for Civil Rights Violations Under 42 U.S.C.A. § 1983; Violations of Rights Protected by the New Mexico Civil Rights Act, ECF No. 105, is **DENIED AS MOOT**;

5. Defendants Shannon Murdock-Poff, Jason Jones, Susan Rossignol, and the Seventh Judicial District Court are **TERMINATED** from this action; and

6. Plaintiff shall have **FOURTEEN DAYS** within which to file a Third Amended Complaint for prospective declaratory relief against Chief Judge Murphy in her official capacity. However, **<u>Plaintiff is advised that this may be the last amendment the Court permits him to make, so care should be taken to remedy all deficiencies, whether discussed in this Order or not</u>**.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE